# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| KELLY POGUE, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:20-cv-580 |
| | Jury Trial Demanded |
| v. | Collective Action (29 U.S.C. § 216(b)) |
| CHISHOLM ENERGY HOLDINGS, LLC | Class Action (Fed. R. Civ. P. 23) |

## ORIGINAL COMPLAINT

### SUMMARY

1. Kelly Pogue (Pogue) brings this lawsuit against Chisholm Energy Holdings, LLC (Chisholm) to recover unpaid overtime wages and other damages owed under the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* (NMMWA).

2. Chisholm suffered or permitted Pogue, and the other workers like him, to work far more than 40 hours each week.

3. But Chisholm did not pay these workers overtime.

4. Instead of paying overtime as required by state and federal law, Chisholm misclassified these workers as independent contractors and paid them a daily rate with no overtime pay.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. The Court has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

9. Pogue worked for Chisholm in this District in Eddy and Lea Counties, New Mexico.

## THE PARTIES

10. Pogue worked for Chisholm as a Drilling Consultant from approximately July of 2017 until December of 2019.

11. Throughout his time with Chisholm, Chisholm paid Pogue a day-rate with no overtime compensation.

12. Pogue's consent to be a party plaintiff is attached as Exhibit A.

13. Pogue represents two classes of similarly situated co-workers

14. First, Pogue brings this action on behalf of himself and all other similarly situated workers paid by Chisholm's day-rate system.

15. Chisholm paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

16. The FLSA class of similarly situated workers consists of:

**All oilfield workers employed by or performing work on behalf of Chisholm who were classified as independent contractors and paid a day-rate without overtime during the past three years.** (the Day-Rate Workers).

17. Second, Pogue represents a class of similarly situated oilfield workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

18. The NMMWA Class is defined as:

**All oilfield workers employed by or performing work on behalf of Chisholm in New Mexico who were classified as independent contractors and paid a day-rate without overtime during the past three years.** (the New Mexico Class).

19. The Day-Rate Workers and New Mexico Class will be referred to as the Putative Class Members.

20. Chisholm Energy Holdings, LLC is a company doing business primarily in the northern Delaware Basin. Chisholm may be served by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

21. For at least the past three years, Chisholm has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. For at least the past three years, Chisholm has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. For at least the past three years, Chisholm has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – including cell phones, hard hats, oil field equipment, and computers – that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

24. For at least the past three years, Pogue and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

25. Chisholm treated Pogue (and other oilfield workers it classified as independent contractors) as employees and uniformly dictated the pay practices to which Pogue and its other employees classified as independent contractors were subjected.

26. Chisholm's misclassification of Pogue as an independent contractor does not alter its status as his employer for purposes of this FLSA collective action

### FACTS

27. Chisholm is an oil and gas company focused on acquisition and development of petroleum properties in the Delaware Basin.



28. To complete its business objectives, Chisholm hires personnel to perform the necessary work.

29. Over the past three years, Chisholm employed dozens of individuals – including Pogue – in positions such as Rig Clerks, Completions Supervisors, Completions Consultants, Drilling Consultants, etc.

30. Even if the exact job titles and job duties may differ, the Putative Class Members are subjected to the same or similar illegal pay practices for similar work.

31. Specifically, Chisholm classified these workers as independent contractors and paid them a flat sum for each day worked (regardless of the number of hours worked in that workweek).

32. Chisholm uniformly failed to pay them overtime for hours worked in excess of 40 in a workweek.

33. For example, Pogue worked for Chisholm as a Completions Consultant from approximately July 2017 until December 2019.

34. Throughout this time, Chisholm paid him on a day-rate basis.

35. As a Completions Consultant, Pogue's primary job duties included observing drilling operations on the rig and ensuring that the team is following safety protocol.

36. Pogue worked well in excess of 40 hours each week while employed by Chisholm.

37. The work Pogue performed was an essential part of Chisholm's core business.

38. During Pogue's employment with Chisholm while he was classified as an independent contractor, Chisholm exercised control over all aspects of his job.

39. Chisholm did not require any substantial investment by Pogue for him to perform the work required of him.

40. Chisholm hired Pogue.

41. Pogue was required to use a staffing company to get paid.

42. Chisholm determined Pogue's opportunity for profit and loss.

43. Indeed, Chisholm controlled all the significant or meaningful aspects of the job duties performed by Pogue.

44. Chisholm ordered the hours and locations Pogue worked, owned and assigned the tools used, and determined the rates of pay he received.

45. Chisholm controlled all aspects of Pogue's job activities by enforcing mandatory compliance with Chisholm's policies and procedures.

46. No real investment was required of Pogue to perform his job.

47. He worked on Chisholm's well sites and utilized equipment and software provided by Chisholm to perform his job duties on Chisholm's behalf.

48. These workers carry out the hands-on, day-to-day production work of Chisholm.

49. Pogue did not provide the equipment he worked with on a daily basis.

50. Chisholm made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Pogue worked.

51. Pogue did not incur operating expenses like rent, payroll and marketing.

52. Pogue was economically dependent on Chisholm during his employment.

53. Chisholm set Pogue's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Chisholm.

54. Pogue's earning opportunity was based on the number of days Chisholm scheduled him to work.

55. Very little skill, training, or initiative was required of Pogue to perform his job duties.

56. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Chisholm.

57. Virtually every job function was pre-determined by Chisholm, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

58. Pogue and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

59. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

60. Pogue and the Putative Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties on Chisholm's behalf.

61.     For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

62.     Pogue and the Putative Class Members performed routine duties that were largely dictated by Chisholm.

63.     Chisholm did not employ Pogue on a project-by-project basis.

64.     In fact, while Pogue was classified as an independent contractor, he was regularly on call for Chisholm and was expected to drop everything and work whenever needed.

65.     Pogue was directly interviewed by Chisholm and hired by Chisholm's Completions Superintendent, Joel Hall.

66.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

67.     The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for weeks at a time.

68.     Instead of paying them overtime, Chisholm paid the Putative Class Members a day-rate.

69.     Chisholm denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

70.     Chisholm's policy of failing to pay its independent contractors, including Pogue, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

71.     It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

72. Because Pogue (and Chisholm's other independent contractors) was misclassified as an independent contractor by Chisholm, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

73. Chisholm did not pay Pogue or the Putative Class Members on a salary basis.

74. Chisholm paid Pogue and the Putative Class Members on a day-rate basis.

75. Despite knowing the FLSA and NMMWA's requirements, Chisholm failed to pay Pogue and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

76. Despite knowing the FLSA and NMMWA required overtime pay to Pogue and the Putative Class Members, Chisholm did not pay them overtime.

77. Chisholm knew, or showed reckless disregard for whether, its day-rate pay policy violated the FLSA and NMMWA.

## FLSA VIOLATIONS

78. Pogue incorporates the preceding paragraphs by reference.

79. As set forth herein, Chisholm violated the FLSA by failing to pay Pogue and the Day-Rate Workers overtime at 1 and ½ times their regular rate of pay for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

80. Chisholm's pay policy denied Pogue and the Day-Rate Workers overtime compensation at the legal overtime rates required by the FLSA.

81. Chisholm owes Pogue and the Day-Rate Workers overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

82. Chisholm knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Pogue and the Day-Rate Workers is willful.

83. Due to Chisholm's FLSA violations, Pogue and the Day-Rate Workers are entitled to recover from Chisholm for their unpaid overtime, liquidated damages, reasonable attorney fees, costs, and expenses of this action.

**NMMWA VIOLATIONS**

84. Pogue incorporates the preceding paragraphs by reference.

85. Pogue brings this claim under the NMMWA as a Rule 23 class action.

86. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

87. At all relevant times, Chisholm was subject to the requirements of the NMMWA.

88. At all relevant times, Chisholm employed Pogue and each member of the New Mexico Class as an "employee" within the meaning of the NMMWA.

89. The NMMWA required Chisholm to pay its employees at 1 and ½ times the regular rate of pay for hours worked in excess of 40 hours in any one week.

90. Pogue and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

91. Chisholm had a policy and practice of misclassifying Pogue and each member of the New Mexico Class and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

92. Pogue and each member of the New Mexico Class seek unpaid overtime in amount equal to 1 and ½ times their regular rates of pay for hours worked in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

93. Pogue and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Chisholm, as provided by the NMMWA.

94. The improper pay practices at issue were part of a continuing course of conduct, entitling Pogue and New Mexico Class Members to recover for all such violations, regardless of the date they occurred

### CLASS & COLLECTIVE ACTION ALLEGATIONS

95. Pogue incorporates all previous paragraphs and alleges that the illegal pay practices Chisholm imposed on them were likewise imposed on the Putative Class Members.

96. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

97. On information and belief, the New Mexico Class contains more than 50 members.

98. Numerous other individuals who worked with Pogue indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

99. Based on his experiences and tenure with Chisholm, Pogue is aware that Chisholm's illegal practices were imposed on the Putative Class Members.

100. Chisholm used day-rate contractors in New Mexico and Texas.

101. The Putative Class Members were all improperly classified as independent contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

102. Chisholm is the employer of Pogue and the Putative Class Members.

103. Chisholm's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

104. Pogue's experiences are therefore typical of the experiences of the Putative Class Members.

105. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

106. Pogue has no interest contrary to, or in conflict with, the Putative Class Members.

107. Like the Putative Class Members, Pogue has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

108. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

109. Absent this action, many members of the classes likely will not obtain redress of their injuries and Chisholm will reap the unjust benefits of violating the FLSA and the NMMWA.

110. Furthermore, even if some of the Putative Class Members of the classes could afford individual litigation against Chisholm, it would be unduly burdensome to the judicial system.

111. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

112. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

113. Among the common questions of law and fact are:

    (a) Whether Chisholm employed the Putative Class Members within the meaning of the FLSA and the NMMWA;

    (b) Whether the Putative Class Members were improperly misclassified as independent contractors;

    (c) Whether Chisholm's decision to classify Putative Class Members as independent contractors was made in good faith;

    (d) Whether Chisholm's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    (e) Whether Chisholm's violations of the FLSA was willful; and

    (f) Whether Chisholm's illegal pay practices were applied uniformly to all Putative Class Members.

114. Pogue's claims are typical of the claims of the Putative Class Members.

115. Pogue and the Putative Class Members sustained damages arising out of Chisholm's illegal and uniform employment policy.

116. Pogue knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or collective action.

117. Even if the issue of damages is somewhat individual in character, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

118. Pogue demands a trial by jury.

## RELIEF SOUGHT

119. Pogue therefore prays for judgment against Chisholm awarding:

   (a) Certifying a collective action and notifying the Day-Rate Workers of their opportunity to join the collective action;

   (b) All unpaid overtime and liquidated damages due to Pogue and the Day-Rate Workers under the FLSA;

   (c) Class certification of all New Mexico Class Members under Federal Rule of Civil Procedure 23;

   (d) Appointing Pogue's counsel as Class Counsel;

   (e) All unpaid overtime and treble damages due to Pogue and the New Mexico Class under the NMMWA;

   (f) All attorney's fees, expenses, and costs of this action;

   (g) Pre- and post-judgment interest at the highest rates allowed by law; and

   (h) All other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Rex Burch*
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    Michael A. Josephson
    State Bar No. 24014780
    Andrew W. Dunlap
    State Bar No. 24078444
    Richard M. Schreiber
    State Bar No. 24056278
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**