# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| KELLY POGUE, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-00580-KWR-KK |
| v. | FLSA Collective Action |
| CHISHOLM ENERGY OPERATING, LLC d/b/a CEH ENERGY OPERATING, LLC | |

## POGUE'S OPPOSITION TO
## CHISHOLM'S MOTION TO COMPEL ARBITRATION (DOC. 33)

Respectfully submitted,

Michael A. Josephson
Texas State Bar No. 24014780
Andrew W. Dunlap
Texas State Bar No. 24078444
Richard M. Schreiber
Texas State Bar No. 24056278
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
BRUCKNER BURCH PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Pogue**

A.   SUMMARY.

Chisholm does not have an arbitration agreement with Pogue. Instead, Chisholm wants to write itself into an agreement between Pogue and one of Chisholm's staffing providers, DTC. *See* Doc. 33; Doc. 32-1 at 6-11 (Pogue's Independent Contractor Agreement with DTC, the "Agreement"). Despite not being a party, Chisholm says it may enforce the Agreement's arbitration provision as a third-party beneficiary and under theories of equitable estoppel pursuant to New Mexico law. *See* Doc. 33. Chisholm ignores the fact the provision it seeks to enforce expressly provides it "**shall be construed** in accordance with **the laws of the State of Colorado, <u>without</u> giving effect to principles of conflict of laws** [Doc. 32-1 at 10, ¶ 15.3]." It also forgets "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986). And "parties may specify **with whom** they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasis added); *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002).

Chisholm is not a party to Pogue's Agreement with DTC. *See* Doc. 32-1 at 6-11. And while the Agreement contemplates Pogue would provide services to DTC's clients (*id.* at 6, ¶ 1), the arbitration provision does **not** extend to DTC's clients. *Id.* at 10, ¶ 15.3. And where Pogue and DTC intended to include DTC's clients within the scope of the Agreement, **they did so expressly**.[1]

Nor is Chisholm a third-party beneficiary to Pogue's Agreement with DTC. Nothing in the terms of the Agreement evince an intent to allow Chisholm to enforce the Agreement, let alone benefit from the Agreement's arbitration provision. *See* Doc. 32-1 at 6-11. The express terms of the

---

[1] *See* Doc. 32-1 at 6, ¶ 1 (noting Pogue would provide services to DTC's clients); 6, ¶ 3.3 (Pogue agreed to comply with DTC clients' policies); 7, ¶ 4.2.1 (Pogue agreed to submit invoices as required by DTC's clients); 7, ¶ 5 (Pogue agreed to hold certain information obtained from DTC clients as confidential); 7-8, ¶¶ 6-7 (Pogue agreed his work product belonged to DTC clients); 8, ¶ 8 (Pogue agreed to indemnify DTC clients under certain circumstances); 8, ¶ 9 (Pogue agreed to maintain insurance covering DTC clients); 9, ¶ 10 (DTC agreed to provide general liability insurance covering its clients). The portion of the Agreement containing the arbitration provision, Section 15, is devoid of any reference to DTC's clients. *Id.* at 10, ¶¶ 15.1-15.4.

Agreement, which "constitute[] the entire Agreement between [DTC] and [Pogue]" do not include Chisholm as a third-party beneficiary or provide it with the right to enforce the Agreement. *See* Doc. 32-1. Nor could the terms of Chisholm's Master Supply Agreement with DTC (Doc. 32-2 at 7-19, the MSA) require Pogue to arbitrate. Not only does the MSA not contain an arbitration provision, but Pogue is not a party to the MSA and there is no evidence he assented to the MSA's terms.

Chisholm also cannot invoke "equity" to rewrite someone else's agreement. Colorado law (which, again, is required by the choice of law clause) does not recognize New Mexico's theory of "substantial interdependence and concerted misconduct" estoppel. And Chisholm cannot show Pogue intended for his conduct to lead Chisholm to believe it was covered by the Agreement, that it lacked knowledge of the terms of the Agreement, or that Chisholm changed its position of detrimental reliance of Pogue's conduct as required to apply estoppel under Colorado law. The Court should deny Chisholm's attempt to compel arbitration based on someone else's agreement.

**B.    COLORADO LAW APPLIES–NOT NEW MEXICO LAW.**

Chisholm leads with its chin by asking the Court to apply New Mexico law to its attempt to glom onto Pogue's contract with DTC. In a footnote, Chisholm claims "the forum's [New Mexico's] law should apply, as all the alleged underlying conduct and alleged underlying conduct and alleged unlawful conduct occurred in New Mexico." Doc. 33 at 6 n. 3. But the contract Chisholm seeks to enforce as a non-party mandates application of **Colorado law**, notwithstanding conflict of laws principles. Doc. 32-1 at 10, ¶ 15.3 ("This Agreement shall be construed in accordance with the laws of the State of Colorado, without giving effect to principles of conflict of laws.").

New Mexico courts enforce such choice-of-law provisions. *See, e.g., Prestige Oilfield Servs., LLC v. Devon Energy Prod. Co., L.P.*, Civ. No. 18-1173 GBW/GJF, 2019 WL 764669, at *2-3 (D. N.M. Feb 21, 2019) ("[T]he Court finds that the choice-of-law provision contained in the Agreement should be enforced, and Oklahoma law [not New Mexico law] controls interpretation of the contract including the forum selection clause."); *see also United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 108

N.M. 467, 470 (1989) (enforcing contractual choice-of-law provision and applying Kentucky law). In fact, a choice-of-law provision must be enforced unless the "application of the law chosen by the parties offends New Mexico public policy[.]" *See Carl Kelley Const. LLC v. Danco Tech.*, 656 F.Supp.2d 1323, 1336 (D. N.M. 2009); *see also Flemma v. Halliburton Energy Servs.*, 303 P.3d 814, 820 (N.M. 2013) ("New Mexico ... has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals.").

Pogue and DTC expressly agreed Colorado law controlled their Agreement, including their agreement to arbitrate. Doc. 32-1 at 10, ¶ 15.3. Chisholm does not claim (let alone show) the choice of law provision offends New Mexico's public policy such that the Court can disregard the contracting parties' choice that Colorado law apply. *See* Doc. 33 at 6 n. 3. Nor does it claim the choice-of-law provision is unenforceable under New Mexico law. *Id.*; *see also Prestige Oilfield Servs.*, 2019 WL 764669, at *3 (rejecting an attempt to disregard a choice-of-law provision requiring the application of Oklahoma law in favor of New Mexico law where "neither party has argued that the choice-of-law provision is unenforceable under New Mexico law."). Instead, Chisholm claims only that New Mexico is the forum state and that much of the alleged unlawful conduct occurred here. *See* Doc. 33 at 6 n. 3. The Court should enforce the Agreement's choice-of-law provision and apply Colorado law to determine whether Pogue must arbitrate with Chisholm based on his Agreement with DTC.

## C.   THE COURT—NOT AN ARBITRATOR—DECIDES WHETHER CHISHOLM MUST ARBITRATE HIS CLAIMS (INCLUDING CLASS CLAIMS) AGAINST CHISHOLM.

Chisholm insists an arbitrator must decide whether there is even an agreement to arbitrate between Pogue and Chisholm. *See* Doc. 33 at 6-9. But issues of arbitrator delegation come into play only if the Court determines an agreement to arbitrate exists between Pogue and Chisholm. Supreme Court precedent on this point is emphatic: "**To be sure,** … **the court** determines whether a valid arbitration agreement exists." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (emphasis added) (citing 9 U.S.C. § 2). It is only if the Court determines "**if a valid agreement**

**exists**" that it considers whether "the agreement delegates the arbitrability issue to an arbitrator[.]" *Id.*

The trial court is the gatekeeper and whether a party has agreed to arbitrate with another is generally a threshold determination for the Court. *See Granite Rock Co. v. Int'l Broth. of Teamsters,* 561U.S. 287, 296 (2010); *Avedon Eng'g Inc. v. Seatex,* 126 F.3d 1279, 1287 (10th Cir. 1997); *Evangelical Lutheran Good Samaritan Society v. Moreno,* 277 F.Supp.3d 1191, 1212-13 (D. N.M. 2017). "[O]rdinary principles of state contract law determine whether there is a valid agreement to arbitrate." *See Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630 (2009). Colorado law governs here. Doc. 32-1 at 10, ¶ 15.3. And Colorado law recognizes "[i]n resolving a motion to compel arbitration, the court must first inquire whether there exists a valid agreement to arbitrate **between the parties to the action**." *Everett v. Dickinson & Co., Inc.,* 929 P.2d 10, 12 (Colo. App. 1996) (emphasis added); *see also City of Denver v. Dist. Ct. In and For City and Cnty. of Denver,* 939 P.2d 1353, 1363 (Colo. 1997) (en banc) (noting courts first determine whether the parties agreed to arbitrate before determining whether an arbitration agreement covers the scope of the dispute).

While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, ... this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.,* 157 F.3d 775, 779 (10th Cir. 1998) ("When the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."); *Evangelical Lutheran,* 277 F.Supp. 3d at 1214; *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 530 (5th Cir. 2019) (whether a non-signatory can compel arbitration questions the existence of a valid arbitration clause between specific parties); *see also Belnap v. Iasis Healthcare,* 844 F.3d 1272, 1281 (10th Cir. 2017) ("when courts decide whether a party has agreed that arbitrators should decide arbitrability…courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (internal quotations omitted)).

"An agreement to arbitrate a gateway issue [e.g., arbitrability] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other." *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 70 (2010).  So the fact remains that "before referring a dispute to an arbitrator, **the court** determines whether a valid arbitration agreement exists" requiring arbitration of those claims. *Henry Schein*, 139 S. Ct. at 530 (emphasis added). The question here is "who must arbitrate," rather than "what must be arbitrated." *Weckesser v. Knight Enterprises S.E., LLC*, 735 Fed. App'x 816, 821 (4th Cir. 2018). Under Colorado law, that question is for the Court. *See Everett*, 929 P.2d at 12.

Most courts agree a delegation clause does not clearly and unmistakably show a plaintiff agreed to arbitrate the arbitrability of claims against a non-party. *See, e.g., Belnap*, 844 F.3d at 1293-94 (noting the arbitrator should decide arbitrability as to the signatories to an arbitration agreement's claims against each other and simultaneously denying non-signatory defendant's motion to compel arbitration as a "principal" or "agent" of the signatory defendant under theories of equitable estoppel despite the delegation provision); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable."); *Republic of Iraq v. BNP Paribas USA*, 472 Fed. App'x 11, 13 (2d Cir. 2012) ("But evidence of intent to have an arbitrator determine its jurisdiction with regard to disputes 'referred by either Party,' does not clearly and unmistakably demonstrate their intent to have the arbitrator determine its jurisdiction with respect to any dispute raised by a non-party.").[2]

---

[2] *See also In re Paragon Offshore PLC*, 588 B.R. 735, 753-54 (Bankr. D. Del. 2018) (finding "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory" and "even where express contractual language exists to show an intent to arbitrate questions of arbitrability, the Court must consider whether the 'parties' at issue fall within the scope of the delegation language."); *Qpro v. RTD Quality Servs. USA, Inc.*, 761 F.Supp.2d 492, 497 (S.D. Tex. 2011) (finding whether a delegation clause applied to a signatory's claims with a

Where a contract is silent on the issue of non-signatory enforcement, it cannot speak to the matter with unmistakable clarity because generally "'a matter not covered is to be treated as not covered'—a principle 'so obvious that it seems absurd to recite it[.]'" *GE Energy Power Conversion France SAS, Corp., v. Outokumptu Stainless USA, LLC*, 140 S.Ct. 1637, 1645 (2020) (quoting A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012)). It is thus unsurprising that a non-signatory can invoke a delegation only under narrow circumstances, such as where the non-signatory stands in the shoes of a signatory. *National Oilwell Varco, L.P. v. Sadagopan*, Civ. A. No. H-16-2261, 2018 WL 276364, at *2 (S.D. Tex. Jan. 3, 2018) (citing *Apollo Computer, Inc., v. Berg*, 886 F.2d 469, 470-74 (1st Cir. 1989) and *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 207 (2d Cir. 2005)).

Chisholm incorrectly claims *Henry Schein* created a categorical rule that arbitrators must decide arbitrability whenever the movant cites a contract with a delegation clause. *See* Doc. 33 at 7. Appellate courts throughout the Country have rejected similar arguments. *See, e.g.*, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 n. 7 (3d Cir. 2020); *Gringas v. ThinkFin., Inc.*, 922 F.3d 112, 126 n. 3 (2d Cir. 2019); *Lloyd's Syndicate 457 V. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n. 4 (5th Cir. 2019). Nothing in *Henry Schein* permits the Court to cede the question of whether Pogue agreed to arbitrate (or to arbitrate arbitrability) with Chisholm to an arbitrator. *Henry Schein* confirms that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists" requiring Pogue to arbitrate with Chisholm. *Henry Schein*, 139 S. Ct at 530. The Court thus must find Pogue and Chisholm agreed to arbitrate something. *Id.* The mere existence of a delegation clause in Pogue's agreement with DTC does not require the Court to send his claims against Chisholm to arbitration. Nor does it mean Chisholm can enforce any part of that agreement, including but not limited to any delegation clause. The Court determines whether Pogue agreed to arbitrate with Chisholm.

non-signatory "[i]s a matter for the court to decide."); *First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F.Supp.2d 483, 485 (S.D.N.Y. 2008) (arbitrator could not decide whether a non-signatory defendant was covered by the arbitration agreement because "there is much to be said for determining who are the parties to the arbitration before the arbitrators hear the merits.").

### D.   POGUE AGREED TO ARBITRATE WITH DTC, NOT CHISHOLM.

Chisholm admits it does not have an arbitration agreement with Pogue. *See* Doc. 33 at 2. Instead, Chisholm wants to compel arbitration based on the Agreement between Pogue and DTC (Doc. 32-1 at 6-11). Chisholm further insinuates the terms of its "Master Supply Agreement" with DTC (Doc. 32-2 at 7-19) somehow require Pogue, a non-party to the MSA, to arbitrate his claims against Chisholm. Neither agreement obligates Pogue to arbitrate with Chisholm.

### 1.   The Presumption Favoring Arbitration Does Not Apply.

While Chisholm argues the Agreement's arbitration clause is broad, the question is not "what claims" must be arbitrated but rather "with whom" Pogue must arbitrate (i.e., whether Pogue agreed to arbitrate with Chisholm at all). Chisholm also invokes a "liberal federal policy favoring arbitration," but that policy does not apply to whether an agreement exists in the first place. "Although it is often said there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Rent-A-Ctr,* 561 U.S. at 67. "Arbitration is strictly a matter of consent." *Granite Rock,* 561 U.S. at 299. It "thus is a way to resolve those disputes—**but only those disputes—**that the parties have agreed to submit to arbitration." *Id.* (emphasis added); *Eychner v. Van Vleet,* 870 P.2d 486, 490 (Colo. App. 1993) (noting "public policy in favor of arbitration does not give courts license to compel arbitration when there has been no agreement to arbitrate [between the parties]."). Again, "[p]arties may specify with whom they choose to arbitrate their disputes." *Stolt-Nielsen*, 559 U.S. at 683; *EEOC,* 534 U.S. at 289.

And when "'the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.'" *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) (quoting *Riley Mfg.*, 157 F.3d at 779; *see also Everett*, 929 P.2d at 12 ("in resolving a motion to compel arbitration, the court must first inquire whether there exists a valid agreement to arbitrate between the parties to the action."); *City of Denver*, 939 P.2d at 1363 (the court must first determine whether the parties agrees to arbitrate before analyzing the scope of arbitrable disputes).

Rather, "[t]he presumption should be applied only where it reflects, and derives its legitimacy from, a judicial conclusion … that arbitration … is what the parties intended because their express agreement to arbitrate was validly formed, [and] is legally enforceable." *Granite Rock*, 561 U.S. at 289. The Supreme Court "has never held that the presumption [favoring arbitration] overrides the principle that a court may submit to arbitration 'only those disputes ... the parties have agreed to submit,' nor that courts may use policy considerations as a substitute for party agreement." *Id.* at 303. Consequently, Chisholm must show the arbitration agreement covers it as a non-signatory. *Jacks*, 856 F.3d at 1304 (citing *Hancock v. American Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)).

### 2. Pogue's Agreement with DTC Doesn't Require Him to Arbitrate with Chisholm.

Chisholm seeks the benefit of Pogue and DTC's Agreement while simultaneously disregarding its express language. *See* Doc. 32-1 at 6-11. Pogue and DTC's Agreement was "made by and between DTC… ('Company') and JKP Consulting LLC [Pogue]…('Contractor')." *Id.* at 6. Pogue agreed to provide services to DTC. *Id.* at 6 ¶ 1. The Agreement contemplates Pogue would provide these services to DTC's clients. *Id.* The Agreement defines DTC's clients as "Client Operators." *Id.* While the Agreement acknowledges Pogue would provide services related to DTC's obligations to its clients "as provided by separate contract," the Agreement does not specifically incorporate any terms provided by a separate contract, let alone the terms of the MSA between Chisholm and DTC specifically. *Id.* at 6-11; *see also* Doc. 32-2 at 7-19. Chisholm provides no evidence indicating either Chisholm or DTC presented Pogue with a copy of their MSA or otherwise provided the terms of their MSA to Pogue, or that Pogue ever agreed to arbitrate with DTC's customers based on the terms of the MSA. *See* Doc. 33. Moreover, the Agreement makes clear that the Agreement did not, in and of itself, provide Pogue with the right to work for Chisholm *See* Doc. 32-1 at 10, ¶ 15.2.

Critically, where Pogue and DTC intended to cover DTC's clients in their Agreement **they did so expressly**. *See, e.g., id.* at 6, ¶ 3.3 (Pogue agreed to comply with DTC clients' policies and procedures); 7, ¶ 4.2.1 (Pogue agreed to submit invoices as required by DTC's clients); 7, ¶ 5 (Pogue

agreed to hold certain information obtained from DTC clients as confidential); 7-8, ¶¶ 6-7 (Pogue agreed his work product belonged to DTC clients);  8,  ¶ 8 (Pogue agreed to indemnify DTC clients under certain circumstances); 8, ¶ 9 (Pogue agreed to maintain insurance covering DTC clients); 9, ¶ 10 (DTC agreed to provide general liability insurance covering its clients).

But Pogue and DTC did not include any third parties (much less Chisholm) in the Agreement's arbitration provision. *Id.* at 10, ¶ 15.3. Nor do the other provisions of Section 15 of the Agreement (the section containing the arbitration clause). *Id.* at 10, ¶¶ 15.1 ("The failure of either party [Pogue or DTC]…to insist upon strict performance…or to exercise any option…shall not be construed as a waiver…of the right to assert or rely upon such terms, provisions or options on any future occasion."); 15.2 ("This Agreement does not grant Contractor [Pogue] an exclusive privilege or right to supply Services to Company [DTC]."); 15.4 ("This Agreement…constitutes the entire Agreement between Company [DTC] and Contractor [Pogue] with respect to the subject matter of this Agreement.").

As it relates to arbitration, the arbitration clause states only that Colorado law governs and that "[a]ny dispute arising hereunder shall be resolved by way of confidential arbitration," in Denver, Colorado. *Id.* at ¶ 15.3. Again, the Agreement expressly defines exactly who is covered by its provisions when it reaches beyond the named parties (Pogue and DTC). Chisholm nevertheless asks the Court to believe the carefully worded definitions and provisions are superfluous since, according to Chisholm, the Agreement's arbitration provision (in a section which repeatedly references only Pogue and DTC) covers "everyone." In fact, the opposite is true. *See* Scalia & Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 36, at 225 ("Definition sections and interpretation clauses are to be carefully followed."). Read as a whole, the Agreement is clear as to exactly who must arbitrate: Pogue and DTC. *Id.* at ¶¶ 15.1-15.4. The parties' agreement to arbitrate claims with each other cannot reasonably be read to require them to arbitrate claims against "anyone." This is particularly true here because when the Agreement extends coverage to another person or entity, it does so expressly.

The Agreement's failure to include DTC's clients in its arbitration provision is also telling

given DTC's business. DTC knew it sent personnel to its clients, that the personnel might have claims against its clients, and could have covered it customers in its arbitration provision expressly. *See, e.g., Bock v. Salt Creek Midstream LLC*, Civ. No. 19-1163 WJ/GJF, 2020 WL 3989646, at *11 (D. N.M. July 15, 2020) (denying staffing company's motion to compel plaintiff to arbitrate against its customers because "with just a very few keystrokes, [DTC] could have added its *customers* to this list and accorded them the same protection, yet [DTC] for whatever reason chose not to do so," finding "this silence is thunderous given [DTC's] business model.") (emphasis in original); *Flynn v. Sanchez Oil & Gas Corp.*, SA-19-CV-00867-JKP, 2019 WL 6606530, at *5 (W.D. Tex. Dec. 5, 2019), *adopted* at 2020 WL 1082825 (W.D. Tex. Mar. 6, 2020) ("Cypress-TIR, the drafter of the Employment Agreement, could have explicitly required its employees to arbitrate any claims against its customers but it did not do so— neither in the arbitration provision nor in the provision of the Employment Agreement that specifically addresses employee claims against Cypress-TIR's customers."); *Shoals v. Owens & Minor Distribution, Inc.*, No. 2:18-CV-2355 WBS EFB, 2018 WL 5761764, at *10 (E.D. Cal. Oct. 31, 2018); *Diomande v. Toyota Motor Mfg., Kentucky, Inc.*, No. 14-CV-171-JMH, 2015 WL 1468091, at *4 (E.D. Ky. Mar. 30, 2015). Chisholm cannot write itself into someone else's arbitration provision.

### 3. Chisholm's MSA with DTC Does Not Obligate Pogue to Arbitrate with Chisholm.

In June 2017, nearly a year after Pogue agreed to arbitrate with DTC, Chisholm and DTC entered an MSA for DTC "from time to time to perform work for Company [Chisholm] in connection with Company's [Chisholm's] business of exploring for, developing and producing wells for oil, gas and other minerals." Doc. 32-2 at 7, ¶ 1.1. The MSA specified such work "may include the performance of services ('Services') or the supply of goods, equipment, materials, supplies, products or other tangible items ('Products')" as specified under separate work orders. *Id.*

Nothing in the MSA requires Pogue to arbitrate with Chisholm. *Id.* at 7-19. In fact, the MSA contains no arbitration provision at all. *Id.*; *see also Hartford Fire Ins., Co. v. Henry Bros. Const. Mgmt., Servs.*, No. 10-cv-4746, 2011 WL 3563138, at *8 (N.D. Ill. Aug. 10, 2011) ("To allow Defendant to

invoke an arbitration clause set forth in a contract to which it was not a party when the contract to which Defendant was a party specifically disclaims arbitration would lead to an unfair and unjust result."). To the contrary, the MSA expressly contemplates a court (not an arbitrator) must interpret the scope of any provision found in the MSA under Texas law. Doc. 32-2 at 16, ¶¶ 21.3 ("Should any provision of this Agreement require interpretation it is agreed that the court interpreting or considering the provision…"), 21.9 ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to conflict of law principles.").

To the extent Chisholm seeks to compel Pogue to arbitrate pursuant to its MSA with DTC, it cannot. Not only is Pogue not a party to the MSA, but **the MSA does not have an arbitration provision.** Doc. 32-2 at 7-19. And even if the MSA contemplated non-parties could somehow be bound to arbitrate claims against Chisholm, non-signatories may be compelled to arbitrate only if they have actual knowledge of the contract containing the arbitration clause. *See, e.g.*, *Jacks*, 856 F.3d. at 1305 (finding "unwitting third parties could not be bound to a contract without knowing its terms" and allowing otherwise would make "no sense."); *see also Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (a non-signatory was bound when it received a copy of the agreement with the arbitration clause).

Moreover, where a signatory to an arbitration agreement negotiates the waiver of a non-signatory's rights to bring statutory employment claims in a federal forum, the waiver must be "clearly and unmistakably" presented to the non-signatory whose rights are to be waived. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79 (1998) (finding union-negotiated collective bargaining agreement seeking to waive workers' rights to bring statutory employment discrimination claims in federal court must "clearly and unmistakably" describe the scope of the waiver to the workers). Outside of a general acknowledgment the services provided by Pogue to DTC would fulfill DTC's obligations to its clients "as provided by separate contract," there is no evidence showing anyone provided Pogue with a copy

of the MSA or informed him of the MSA's terms. *See* Doc. 33; *see also* Doc. 32-1 at 6, ¶ 1. This is especially problematic considering Pogue executed his Agreement with DTC on July 20, 2016 and the MSA was not executed until June 29, 2017. *See* Doc. 32-1 at 6; Doc. 32-2 at 7.

**E.    CHISHOLM IS NOT A THIRD-PARTY BENEFICIARY TO POGUE'S AGREEMENT WITH DTC.**

Chisholm seeks to compel arbitration as a non-signatory to Pogue's Agreement with DTC. *See* Doc. 33. Non-signatories can compel arbitration only if state contract law permits them to enforce the arbitration agreement. *Arthur Andersen*, 556 U.S. at 631. Again, Colorado law governs. Doc. 32-1 at 10, ¶ 15.3. In Colorado, "[g]enerally, when the requirement to arbitrate is created by an agreement, it can be invoked only by a signatory of the agreement, and only against another signatory." *N.A. Rugby Union LLC, v. U.S. Rugby Football Union*, 442 P.3d 859, 863 (Colo. 2019) (citing *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1272 (Colo. App. 2007)); *Everett*, 929 P.2d at 12 ("In general, only parties to an agreement containing an arbitration provision can compel or be subject to arbitration."); *Eychner*, 870 P.2d at 489 ("The right to compel arbitration is derived from contract. Therefore, one who is not party to the contract generally lacks standing to compel, or to be subject to, arbitration.").

Chisholm first contends it may compel Pogue to arbitrate as a third-party beneficiary to his Agreement with DTC. *See* Doc. 33 at 9-14. In Colorado, a party may enforce a contract as a third-party beneficiary only if it shows the parties to the contract intended to confer a benefit on it when contracting. *Bewley v. Semler*, 432 P.3d 582, 587 (Colo. 2018); *Everett*, 929 P.2d at 12. It is not enough that some benefit incidental to the performance of the contract may accrue to the third party. *Id.* In other words, the benefit claimed must be "direct and not merely an incidental benefit of the contract." *Bewley*, 432 P.3d at 587 (citing *E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985)). That is, the Court must determine the parties intended to provide the third-party with the right to sue to enforce the contract's terms. *Id.*; *Frontier Station, Inc. v. Klober Real Estate Holdings, LLC*, Civ. A. No. 18-cv-02028-REB-GPG, 2019 WL 4643683, at *4 (D. Colo. Aug. 12, 2019).

"Such an intent to benefit a third party must be apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a non-signatory is a third-party beneficiary entitled to enforce the agreement." *Everett*, 929 P.2d at 12. "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994).

Importantly, **where other provisions in the contract expressly refer to non-parties, but the arbitration provision itself does not, the omission is "regard[ed] as purposeful and from which we can reasonably infer that the parties did not intend that the [non-signatory] be a beneficiary of the arbitration clause."** *Everett*, 929 P.2d at 14 (emphasis added); *Flynn*, 2019 WL 6606530, at *4 ("The Court is not persuaded by Sanchez's argument that the Employment Agreement's references to 'customer' in another portion of the contract establishes the parties' intent to arbitrate employee claims against customers," finding "[s]uch language may demonstrate that Sanchez is an incidental beneficiary of the parties' contract but not that the parties intended to grant Sanchez the right to enforce Cypress-TIR's various agreements with its employees.); *see also Bock*, 2020 WL 3989646, at *14 ("To say now that the language is malleable enough to apply to lawsuits against its customers – whom Kestrel kept off the list and out of that section – would permit Kestrel to smuggle an elephant through a keyhole, a result that Court believes is not warranted[.]").

1.   **Chisholm is Not an Intended Third-Party Beneficiary.**

Chisholm says the language of the Agreement and the surrounding circumstances show it is an intended third-party beneficiary. *See* Doc. 33 at 11-13. But Chisholm repeatedly urges the Court to disregard evidence of who Pogue and DTC gave standing to enforce their Agreement, and instead consider the arbitration clause as if Chisholm had already shown it was a party to their Agreement. But Chisholm cannot skip the first step of the arbitration analysis (e.g., whether a valid agreement to arbitrate exists between Pogue and Chisholm). Moreover, general references to disputes like "every

dispute arising in connection with," or "all claims arising out of or relating to" a relationship or transaction, are insufficient to confer third-party beneficiary status to non-signatories. *See, e.g., Cortes-Ramos v. Martin-Morales*, 894 F.3d 55, 58 (1st Cir. 2018) (denying third-party beneficiary status to non-signatory covering suits "arising from, touching on, or relating to" the transaction); *Weckesser*, 2018 WL 2972665 at *4 (denying third-party beneficiary status to parent company where the clause referred to "any dispute" between the employee and the parent company doing business as the subsidiary)

Chisholm ignores the express language of the arbitration provision, which never mentions Chisholm (or any third party) and does not contain any language demonstrating Pogue and DTC intended to grant Chisholm the right to sue to enforce their Agreement. *See* Doc. 32-1 at 10, ¶ 15.3. Chisholm argues that because Agreement repeatedly references DTC's clients, Chisholm is necessarily a third-party beneficiary. This is flatly incorrect. *See Gorsuch, Ltd. v. Wells Fargo Nat'l Bank. Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) (the fact an agreement contemplates or references another party does not suffice to render that party a third-party beneficiary). Moreover, the fact the Agreement repeatedly references DTC's clients, while excluding them from the arbitration provision, only serves to damage Chisholm's argument. Because DTC's clients are included elsewhere, the Agreement's **exclusion** of DTC's clients from both Section 15 (generally) and the arbitration provision (specifically) was purposeful. *Id.* at 10 ¶¶ 15.1-15.4; *see Everrett*, 929 P.2d at 14; *Bock*, 2020 WL 3989646, at *14. Again, where Pogue and DTC intended to include DTC's clients within the scope of the Agreement, they did so expressly. The repeated exclusion of additional parties from Section 15 of the Agreement and the arbitration provision itself undercuts any claimed intent to make Chisholm a third-party beneficiary.

Chisholm cannot establish its right to enforce the Agreement by arguing the language *could be* read to encompass Pogue's claims against it. This is not enough to show either Pogue or DTC intended to confer upon Chisholm right to sue to enforce their Agreement. The fact Chisholm may benefit from the Agreement (or its MSA) for the provision of personnel like Pogue does not confer Chisholm

the right to enforce Pogue's Agreement with DTC. At best, Chisholm is an incidental beneficiary to the Agreement and incidental beneficiaries are without enforceable rights and cannot be third-party beneficiaries. *Bewley*, 432 P.3d at 587.

Chisholm relies primarily on *Great W. Sugar Co. v. N. Nat. Gas Co.*, 661 P.2d 684 (Colo. App. 1982) and *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297 (Colo. App. 2000) to support its claim it is a third-party beneficiary to the Agreement under Colorado law. Both are distinguishable. For one, *Great W. Sugar* has nothing to do with arbitration. Therein, a gas customer sued a natural gas pipeline company in connection with service interruptions for breach of contract and fraud. The court found the customer was a direct (not incidental) beneficiary of a service agreement between the defendant gas company and another gas company such that the defendant had to deliver gas to the customer unless it lacked the supply to do so. The Court relied on the gas companies' historical behavior in providing gas to their customers to explain how they interpreted interruptible service provisions in their contracts, as well as the terms of the service agreement which, unlike here, expressly referred to gas sold to customers in Goodland, Kansas, where the plaintiff lived. 661 P.2d at 692-93.

And in *Parker*, the plaintiff's employer and the defendant (CCL) entered into a service agreement for CCL to provide leadership training services to the employer's workers, which included the plaintiff. 15 P.3d at 298. The service agreement contained an arbitration clause requiring claims between the employer and CCL or between "one of the parties to this Agreement and the employees…of the other party" be arbitrated. *Id.* The plaintiff suffered injuries while attending a leadership workshop sponsored by its employer and conducted by CCL. *Id.* The plaintiff sued CCL for negligence, breach of contract, negligent misrepresentation, and intentional misrepresentation, claiming he was a third-party beneficiary to his employer's service agreement with CCL and CCL sought to enforce the arbitration clause contained in the service agreement. *Id.* The court compelled the plaintiff to arbitrate specifically because, unlike here: (1) the service agreement expressly provided that all claims between the parties **or an employee of one of the parties** (e.g., the plaintiff) must be

arbitrated which "demonstrated their intent to create enforceable rights in or duties to third parties, including the plaintiff"; and (2) the plaintiff sought to enforce CCL's duties and obligations under the agreement. *Id.* at 298-99 (emphasis added).

Despite Chisholm's claim, Pogue does not rely upon the terms of his Agreement with DTC to claim he was misclassified or improperly paid (or seek to enforce its terms). *See* Doc. 33 at 14; *see also* Doc. 22 (Pogue's First Amended Complaint). Pogue's FLSA claims against Chisholm do not arise from his Agreement with DTC (or Chisholm's MSA with DTC) – they arise under a federal statute (the FLSA). *See Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1060 (10th Cir. 2018) (finding it difficult to see that a claim was "'arising out of or relating to' the contract" where compliance with the contract would not impact the allegations); *Peck v. Encana Oil & Gas, Inc.*, 224 F.Supp.3d 1181, 1185 (D. Colo. 2016) (analyzing Colorado law and finding "[An FLSA] Plaintiff's claims do not depend on the contract and Plaintiff is not attempting to hold Encana liable for duties imposed by the contract.").[3]

## 2. Chisholm May Not Compel Arbitration Through Any Indemnity Provision.

Chisholm further claims that because under certain circumstances Pogue agreed to indemnify DTC's clients in the Agreement, that Pogue and DTC necessarily intended for Chisholm to benefit from their agreement to arbitrate. *See* Doc. 33 at 2-3, 14 n. 7. In other words, Chisholm claims because DTC may ultimately be picking up the bill, Chisholm should be allowed to invoke arbitration on

---

[3] *See also Hiser v. NZone Guidance, L.L.C.*, 799 Fed. App'x 247, 248 (5th Cir. 2020) ("The plaintiffs here are individual workers who signed agreements with RigUp and performed services for NZone. Their claims against NZone arise under the federal Fair Labor Standards Act… Because the plaintiffs' overtime claims are based on a right conferred by federal law, the plaintiffs do not seek a benefit from their agreements with RigUp[.]"); *Flynn*, 2019 WL 6606530, at *6 (finding FLSA claims are "statutory and arise under the FLSA, a federal law, and not the contract" and the determination of whether a plaintiff "is ultimately entitled to overtime compensation as an employee under the FLSA does not depend on the terms of [the plaintiff's] employment agreement. Rather it turns on the economic realities of [plaintiff's] relationship with [the defendant]…[b]ut ultimately, no matter what was promised or documented [in the agreement], what will be dispositive under the FLSA will be how the parties in reality behaved."); *Newman v. Plains All Am. Pipeline, L.P.*, No. 7:19-cv-00244-DC-RCG, Doc. 28, at *7-8 (W.D. Tex. May 12, 2020) (finding an FLSA "Plaintiff's claims are statutory and arise under the FLSA, a federal law, and not the Employment Agreement," thus "while Plaintiff's FLSA claims against Defendant relate to the contract with Cypress, they do not depend on the contract's existence.").

DTC's behalf. Chisholm provides no authority suggesting that the mere possibility that Chisholm will seek reimbursement from DTC allows Chisholm to enforce the arbitration provision in the Agreement. *Id.*; *cf. Salazar v. People's Choice Home Loan, Inc.*, No. 04-cv-0946 PJK/RLP, 2005 WL 8164260, at *4 (D. N.M. Feb. 4, 2005) (rejecting the notion that a claim for indemnity by a non-signatory defendant against a signatory constituted a direct benefit sufficient to compel arbitration as a third-party beneficiary where the agreement did not clearly state the parties' intention to allow the non-signatory to benefit from the arbitration provision); *BC Tech., Inc. v. Ensil Intern. Corp.*, No. 2:02-CV-700 TS, 2007 WL 2908282, at *4 (D. Utah Oct. 3, 2007) (the existence of an indemnity clause does not give rise to third party beneficiary status). Chisholm also fails to argue (let alone show) that DTC assigned Chisholm any rights under the Agreement such that Chisholm stands in DTC's shoes. *See* Doc. 33.

Nor does Chisholm show it may use its MSA with DTC as a backdoor into Pogue's Agreement with DTC or suggest an indemnity provision, standing alone, is enough to enlarge an arbitration clause which applies solely to the signatories. *See Flynn*, 2019 WL 6606530, at *5 (rejecting the proposition that the existence of an indemnification agreement between an employer and its customer necessarily established the intent to confer third-party beneficiary status on a customer who is sued by an employee). Chisholm offers the Court no authority showing it should be allowed to invoke DTC's right to arbitration for its own benefit. To the extent Pogue's claims against Chisholm suggest any breach of DTC's obligation to Chisholm under the MSA, Chisholm can still obtain the relief it bargained for without the compelling Pogue's claims to arbitration.

    **3.**    **Chisholm is Not a Third-Party Beneficiary Under New Mexico Law.**

Assuming New Mexico law applies (and it doesn't), the result would be the same. Indeed, for the same reasons set forth in detail above, Chisholm fails to show either Pogue or DTC intended for it to be a third-party beneficiary to their agreement to arbitrate.

Like Colorado law, "[u]nder New Mexico law, although not herself a signatory to a contract, a third-party beneficiary of a contract may be bound by, or seek to enforce, that contract." *THI of New Mexico at Vida Encantada, LLC v. Lovato*, 848 F.Supp.2d 1309, 1326-27 (citing *Fleet Mortg. Corp. v. Schuster*, 811 P.2d 81, 82 (N.M. 1991)). "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id.* (quoting *Fleet Mortg. Corp.*, 811 P.2d at 83). "Such intent must appear either from the contract itself or from some evidence that the [third party] is an intended beneficiary." *Id.* at 1326-27 (quoting *Fleet Mortg. Corp.*, 811 P.2d at 83. Much like Colorado law, only intended beneficiaries (as opposed to incidental beneficiaries) may seek to enforce a contract under New Mexico law. *Evangelical Luetheran*, 277 F.Supp.3d at 1215 (citing cases). Critically, "[t]he promisor must have had reason to know the benefit was contemplated by the promise as one of the motivating causes for entering the contract." *Tarin's Inc. v. Tinley*, 2000-NMCA-048, ¶ 13, 129 N.M. 185, 3 P.3d 680, 686.

Chisholm relies primarily on *Rivera v. Am. Gen. Fin. Servs., Inc.*, 242 P.3d 351 (N.M. Ct. App. 2010), *rev'd on other grounds*, 259 P.3d 803 (N.M. 2011) to support its position it is a third-party beneficiary to the Agreement under New Mexico law. *See* Doc. 33 at 10-11. But in *Rivera*, there was no question the non-signatory seeking to compel arbitration as a third-party beneficiary belonged to the group of entities ("all persons or entities who may be liable to either [Plaintiff] or [American General] regarding any…covered claim") granted rights under the arbitration provision. 242 P.3d at 358. Here, the arbitration provision does not "on its face" list DTC's clients (let alone Chisholm specifically) as a party granted rights under the arbitration provision. *See* Doc. 32-1 at 10, ¶ 15.3.

## F. CHISHOLM CANNOT INVOKE "EQUITY" TO REWRITE SOMEONE ELSE'S AGREEMENTS.

Because it has no arbitration agreement with Pogue, Chisholm invokes "equitable estoppel" to force Pogue to arbitrate. *See* Doc. 33 at 15-20. Such theories are disfavored under Colorado law. *Santich v. VCG Holdings*, 443 P.3d 62, 65 (Colo. 2019) ("Colorado law has never favored estoppel."). In Colorado, "equitable estoppel is generally understood as arising where one party induces another

to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *Id.* (citing *V Bar Ranch LLC v. Cotton*, 233 P.3d 1200, 1210 (Colo. 2010)). For a non-signatory to compel arbitration using equitable estoppel, it must make a "clear showing" of the "four traditionally defined elements of the doctrine." *Id.* at 65-66. Per the Colorado Supreme Court:

> The party against whom the estoppel is asserted [1] must know the relevant facts; [2] that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; [3] the party claiming estoppel must be ignorant of the true facts; and [4] the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Id.* at 65 (quoting *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992)). The party asserting estoppel must prove **all** elements of equitable estoppel. *Santich*, 443 P.3d at 65.

Thus, to compel arbitration as a non-signatory under theories of equitable estoppel, Chisholm must establish that: (1) Pogue knew: (a) Chisholm thought it was covered by the Agreement's arbitration provision; and (b) the Agreement's agreement actually excluded Chisholm; (2) Pogue intended for his conduct (e.g., working at a Chisholm jobsite) to lead Chisholm to believe it was covered within the scope of the Agreement; (3) Chisholm lacked knowledge of the contents of the arbitration provision of the Agreement; and (4) Chisholm detrimentally relied on Pogue's conduct. *Id.; see also Hirsch v. Amper Financial Services LLC*, 215 N.J. 174, 195 (N.J. 2013). Chisholm fails to establish any of the required elements. *See* Doc. 33 at 18-20.

### 1. Chisholm Fails to Show Pogue Knew Chisholm Believed It was Covered by the Arbitration Agreement or that Pogue Knew It Wasn't.

For Pogue to "dupe" Chisholm into believing it was entitled to enforce Pogue's Agreement with DTC (including the arbitration provision), Pogue would have to know Chisholm thought it was covered by Pogue's Agreement with DTC. As support, Chisholm refers to the breadth of the arbitration provision and states that "Pogue was plainly aware that his executed ICA with DTC Energy, which contained the Arbitration Provision, was for the benefit of providing services to, and thereby receiving payment from DTC Energy for those services to Chisholm." Doc. 33 at 18.

Nothing Chisholm cites suggests Pogue knew Chisholm thought it was covered by the Agreement's arbitration clause, or even that it considered itself a beneficiary of Pogue's Agreement with DTC. Chisholm does not even show Pogue knew the Agreement's arbitration clause excluded Chisholm (though it does). To the contrary, Chisholm argues the opposite—that Pogue should have known Chisholm was included in the scope of the arbitration provision. *Id.* That's not enough. Chisholm was required to show Pogue knew "the relevant facts" such that he could "induce [Chisholm] to detrimentally change position in reasonable reliance on [Pogue's] actions through words, conduct, or silence." *Santich*, 443 P.3d at 65. In the absence of such proof, Chisholm's "equitable estoppel" argument never gets past first base. *Id.*

### 2. Chisholm Fails to Show Pogue Intended for It to Believe It Was Covered By, or Could Enforce, His Agreement with DTC.

The doctrine of equitable estoppel focuses on one party's conduct or representations which induces another party, who does not know the true facts, to rely on the conduct or misrepresentations. *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991). To meet this element, Chisholm must show Pogue's conduct amounted to a false representation or concealment of material facts. *See City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 76 (Colo. 1996).

While Chisholm argues it relied on Pogue to comply with his Agreement with DTC (including the arbitration provision), Chisholm fails to show either that: (1) Pogue, by working on a Chisholm jobsite, somehow intended for Chisholm to believe he would arbitrate his claims against Chisholm; or (2) that Pogue engendered this belief in Chisholm. *See* Doc. 33 at 18-19. Chisholm does not allege, let alone establish, that it relied on anything Pogue did or said to suggest Chisholm was covered by the Agreement's arbitration provision when, in fact, it was not. *Id.* Nor does Chisholm show Pogue intended Chisholm to "change position" based on Pogue's actions, or that Pogue ever suggested to Chisholm that he agreed to arbitrate his claims against it. *Id.*

Instead, Chisholm simply claims Pogue's intention is evident "because the whole basis of the ICA was him seeking to provide professional services wherein he would fulfill DTC Energy's obligations to its clients, and Pogue would be paid." *Id.* The only "evidence" presented by Chisholm in support of this claim consists of: (1) statements found in the declaration of DTC's Operations Director, Andrew Meyers, claiming  Pogue provided services to Chisholm through DTC pursuant to the Agreement and the MSA (Doc. 32-1 at 2-3); (2) a provision in the Agreement stating only that Pogue acknowledged his work for DTC would fulfill DTC's obligations to its clients generally, not Chisholm specifically (*Id.* at 6, ¶ 1); and (3) portions of Pogue's Complaint stating only that Chisholm paid Pogue and the Putative Class Members a day-rate through staffing companies (Doc. 22, at ¶¶ 15, 4). *See* Doc. 33 at 19. But nothing about this "evidence" shows Pogue knew he was required to arbitrate his claims against Chisholm or that by working on a Chisholm jobsite he somehow intended for Chisholm to believe he would do so. To establish detrimental reliance, Chisholm must show Pogue intended it to believe it was a third-party beneficiary when he knew it was not, and that Chisholm, ignorant of the truth, only employed Pogue based on this (mis)representation. It failed to do so.

### 3. Chisholm Admits It Was <u>Not</u> Ignorant of the Agreement.

Chisholm further failed to show it lacked knowledge the Agreement's arbitration provision did not cover Chisholm. *See* Doc. 33 at 19. But the opposite is true. *See* Doc. 17 at 3, ¶¶ 10-12 (admitting Chisholm knew Pogue contracted with DTC to provide services to DTC's clients); Doc. 32-2 at 3, ¶¶ 6-8 (noting DTC marketed Pogue to and placed Pogue on Chisholm projects), 13 (admitting Chisholm new Pogue contracted with DTC). Despite this, Chisholm now claims – without citing to **any** supporting evidence – that it "did not discover the explicit terms of Pogue's ICA, and was otherwise ignorant of any intention by Pogue to flout his arbitration agreement by suing Chisholm." Doc. 33 at 19. So Chisholm effectively says it would not have accepted Pogue's services if it had known Pogue intended to avoid his arbitration commitment by suing Chisholm for claims related to his work on DTC's behalf. *Id.* But that's not the point. Nothing shows Chisholm "was

ignorant of the true facts," or that Chisholm was "ignorant" of the Agreement between West and Ally. *See Arenberg v. Central United Life Ins. Co.*, 18 F.Supp.2d 1167, 1181 (Colo. 1998) (rejecting use of equitable estoppel where the party had means to determine whether the contract extended coverage).

### 4. Chisholm Fails to Show It Detrimentally Relied on Pogue's Conduct.

The doctrine of equitable estoppel may be invoked when "one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *Santich*, 443 P.3d at 66. Reliance on the actions or statements of another party must be justified and reasonable under the circumstances of the case considered as a whole. *Committee for Better Health Care of All Col. Citizens by Schrier v. Meyer*, 830 P.2d 884, 892 (Colo. 1992).

Chisholm claims it "never would have permitted to Pogue to work on [DTC's] behalf if it had known Pogue would not honor the terms of his ICA, wherein he also acknowledged his independent contractor status, which was also set forth in the terms of the MSA between Chisholm and [DTC] (Chisholm's indemnitor)." Doc. 33 at 19. In support of this claim, Chisholm cites only to: (1) statements from its own Vice President of Operations, Brad Grandstaff, that had DTC not screened Pogue, ran his invoices, or insured him, he would have been ineligible to work for Chisholm (Doc. 32-2 at 4, ¶ 13) ; and (2) provisions in Chisholm's MSA with DTC wherein DTC (not Pogue) agreed to provide personnel to Chisholm who it would classify as independent contractors and to indemnify Chisholm for violations of the FLSA (*Id.* at 6, ¶¶ 3.1, 3.3; 17.1). Doc. 33 at 19.

None of this evidence shows Chisholm relied on **Pogue's** conduct. And even if it did, it would be unreasonable for Chisholm to assume it was a third-party beneficiary to Pogue's Agreement with DTC simply because Pogue worked on a Chisholm job site. Chisholm also fails to identify any change in position in reliance on Pogue's conduct. Chisholm simply insinuates (but does not prove) it would not have allowed Pogue to work for it had it known he would not honor his agreement to arbitrate with DTC. But this argument does not provide any support showing Chisholm relied on Pogue's

conduct to its determinant, nor does it demonstrate Chisholm changed any positions based on Pogue's conduct. Chisholm fails to meet any element required for equitable estoppel.

5. **Chisholm Fails to Show New Mexico Law Provides a Different Outcome.**

Even if New Mexico law applied (and it doesn't), Chisholm cannot compel Pogue to arbitrate his claims against it. In New Mexico, "[g]enerally, a non-signatory to an arbitration agreement cannot compel arbitration." *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.,* No. A-1-CA-35852, 2019 WL 1231408, at *6 (N.M. Ct. App. Feb. 4, 2019) (citing *Horanburg v. Felter*, 2004-NMCA-121, ¶ 16, 136 N.M. 435, 99 P.3d 685). The doctrine of equitable estoppel provides for two circumstances that allow enforcement by a non-signatory: "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Id.* (citing cases); *see also La Frontera Ctr., Inc. v. United Behavioral Health, Inc.,* 268 F.Supp.3d 1167, 1218 (D. N.M. 2017) ("The Court concludes that the Supreme Court of New Mexico would recognize that a nonsignatory to an arbitration agreement may successfully rely on the doctrine of equitable estoppel to compel arbitration.") (discussing cases).

a. **Pogue Need Not Rely on the Terms of the Agreement to Prevail.**

As discussed above, Chisholm is flat wrong that Pogue "must rely on the terms of the ICA in making his claims against Chisholm." Doc. 33 at 16. It claims that because Pogue's Agreement with DTC sets forth the scope of Pogue's services, his classification, and the method and amount of Pogue's compensation that his claims "necessarily depend on the ICA and he will not be able to establish his claims without reference to it." *Id.* Pogue's FLSA claims against Chisholm do not arise from his Agreement with DTC—they arise under a federal statute (the FLSA). *See Cavlovic*, 884 F.3d at 1060; *Peck*, 224 F.Supp.3d at 1185; *Hiser*, 799 Fed. App'x at 248; *Flynn*, 2019 WL 6606530, at *6; *see also Dole*, 845 F.2d at 804 (in determining a worker's employment status courts are not limited by any contract or the terminology used in the contract); *Powers v. Emcon Assoc., Inc.*, Civ. A. No. 14-cv-03006-

KMT, 2017 WL 4075766, at *5 (D. Colo. Sept. 14, 2017) (an agreement designating a worker's classification status does not control the economic realities of the working relationship).

While Pogue's First Amended Complaint references that Chisholm required workers like him to work for Chisholm through staffing companies, Pogue never references any staffing company by name or alleges any of these staffing companies violated the FLSA or is responsible for his damages. *See* Doc. 22. Pogue did not sue DTC, did not allege DTC is or was a joint employer with Chisholm, and did not make any allegations of misconduct by DTC. *Id.*; *see also Bock*, 2020 WL 3989646, at *19 (refusing to compel arbitration where the complaint was silent as to the specific staffing company and did not allege a theory of liability against the staffing company). "To date, neither the New Mexico Supreme Court nor the New Mexico Court of Appeals has considered the 'interdependent and concerted misconduct' variety of estoppel in a case in which a signatory to an [arbitration agreement] has made *no allegations* of such misconduct." *Bock*, 2020 WL 3989646, at *20 (refusing to extend New Mexico's equitable estoppel doctrine to compel arbitration where, as here, the plaintiff brings no claims against the non-signatory seeking to compel arbitration).

In analyzing a worker's employment status, "[c]ourts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of 'employee' or 'independent contractor.'" *Dole v. Snell*, 845 F.2d 802, 804 (10th Cir. 1989). An employee can have multiple "employers" under the FLSA. *See Walling v. Rutherford Food Corp.*, 156 F.2d 513, 516 (10th Cir. 1946). The Tenth Circuit applies the same 6-factor test to determine whether an employment relationship exists **regardless** of whether there is one putative "employer" or many. *See, e.g., Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1160 (10th Cir. 2018) (single putative employer); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (multiple putative employers); *cf. Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F.Supp.3d 152, 159 (D. Mass. 2019) ("the employment relationship test [under the FLSA] is the same whether there is one putative employer or multiple."). These factors examine each alleged employer's actions to determine whether an employment

relationship exists **with that alleged employer**. *Acosta*, 905 F.3d at 1160; *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). The fact a plaintiff has an "admitted employer" does not mean another entity cannot also be that plaintiff's "employer." *Falk v. Brennan*, 414 U.S. 190, 195, (1973) ("it is clear that the maintenance workers are employees of the building owners" but it is "unquestionably correct" that another entity was "also an 'employer' of the … workers").

Chisholm relies almost entirely on two easily distinguishable cases. In *Goldsborough v. Newpark Drilling Fluids, LLC*, No. 2:19-cv-00309 KWR/GBW, 2020 WL 619211, at *1 (D. N.M. Feb. 10, 2020), an oilfield worker signed an independent contractor agreement with a third-party staffing company. Unlike here, that agreement expressly included the engineer's promise to arbitrate any wage claims against the staffing company **or its clients.** *Id.* (emphasis added). The defendant, one of the staffing company's clients, then successfully moved as a non-signatory to compel the plaintiff to arbitrate his claims against it. *Id.* And in *Rock Roofing, LLC v. Travelers Cas. and Surety Co. of Am.*, 413 F.Supp.3d 1122 (D. N.M. 2019), the plaintiff brought a breach of contract claim against a non-signatory defendant to recover monies allegedly due under a payment bond under the terms of a subcontract containing an arbitration provision. 413 F.Supp.3d at 1130-31. The court compelled the plaintiff to arbitrate his claims because, unlike here, he could not seek to enforce the contract by bringing breach of contract claims and subsequently disavow the language requiring arbitration. *Id.* at 1131.

        b.      **Pogue Did Not Allege Substantial Interdependence and Concerted Misconduct by DTC.**

Chisholm summarily argues it meets the second prong of New Mexico's equitable estoppel test because Pogue acknowledges DTC staffed Pogue to Chisholm and paid Pogue. *See* Doc. 33 at 17. As discussed above, this is insufficient to establish Pogue alleged "substantial interdependence and concerted" misconduct under New Mexico law. *Bock*, 2020 WL 3989646, at *19-20. Again, Pogue did not sue DTC, did not allege DTC is a joint employer, and did not allege misconduct by DTC. *See* Doc. 22; *see also Bock*, 2020 WL 3989646, at *24.

Although the *La Frontera* court applied the exception to allow a non-signatory to compel arbitration, it did so because the plaintiff's complaint "asserted nine claims, and each claim refers to each entity associated with the joint venture – United Behavioral Health [signatory defendant], United Healthcare Insurance [non-signatory defendant], and Optumhealth [non-signatory defendant] – as 'United.'" *La Frontera*, 268 F.Supp.3d at 1218. "In light of the corporate relationship between the United Health entities and the intertwined nature of La Frontera's claims against each, the Court prevents La Frontera from avoiding arbitration with United Healthcare Insurance and Optumhealth. The claims that La Frontera asserts against United Behavioral Health are inseparable from the claims that La Frontera asserts against United Healthcare Insurance and Optumhealth." *Id.* For these reasons, the *La Frontera* court allowed the non-signatory United Health entities to compel arbitration of the claims against them. *Id.* None of these factors exist here. Pogue makes no allegations against DTC. Moreover, DTC and Chisholm do not have the type of close joint venture/subsidiary relationship as did the defendants in *La Frontera*. *See* Doc. 32-2 at 8, ¶ 3.1 (disclaiming any such relationship).

Finally, in *Mulqueen*, the plaintiff sued the radiology practice she worked for and six of its shareholders for breach of contract (among other counts). 2020 WL 3989646, at *22. The plaintiff's employment agreement with the radiology practice included an arbitration agreement and the defendant shareholders moved as non-signatories to compel arbitration. *Id.* The court found arbitration was warranted because the plaintiff specifically alleged in her complaint that the non-signatory defendants conspired with the practice group to remove her ownership interests in the practice group and prevent her from acquiring further interest in the group. *Id.* Here, Pogue has not sued DTC and has not alleged any misconduct on its behalf, unlike in *Mulqueen*.

## G.   POGUE CAN BRING CLASS CLAIMS AGAINST CHISHOLM.

Lastly, Chisholm claims: (1) an arbitrator, not the court, must determine whether Pogue can bring class claims against it; and (2) Pogue is precluded from bringing class claims against it by the Supreme Court's ruling *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019). *See* Doc. 33 at 23-24. Both

arguments fail. Chisholm's claim an arbitrator must determine whether Pogue may bring class claims against it pursuant to a delegation clause contained in his Agreement with DTC fail for the same reasons set forth in Section C, *supra*. Moreover, Pogue never agreed to arbitrate with Chisholm at all. Thus, while *Lamps Plus* could theoretically preclude Pogue from bringing class claims in arbitration against DTC (the only entity Pogue agreed to arbitrate with), it does not prohibit him from bringing class claims against Chisholm, a non-party to Pogue's agreement to arbitrate.

**H.    CONCLUSION.**

For these reasons, Pogue respectfully requests the Court deny Chisholm's Motion.

Respectfully submitted,

By: */s/ Richard M. Schreiber*
　　　**Michael A. Josephson**
　　　Texas State Bar No. 24014780
　　　**Andrew W. Dunlap**
　　　Texas State Bar No. 24078444
　　　**Richard M. Schreiber**
　　　Texas State Bar No. 24056278
　　　**JOSEPHSON DUNLAP, LLP**
　　　11 Greenway Plaza, Suite 3050
　　　Houston, Texas 77046
　　　713-352-1100 – Telephone
　　　713-352-3300 – Facsimile
　　　mjosephson@mybackwages.com
　　　adunlap@mybackwages.com
　　　rschreiber@mybackwages.com

　　　**AND**

　　　**Richard J. (Rex) Burch**
　　　Texas Bar No. 24001807
　　　**BRUCKNER BURCH PLLC**
　　　8 Greenway Plaza, Suite 1500
　　　Houston, Texas 77046
　　　713-877-8788 – Telephone
　　　713-877-8065 – Facsimile
　　　rburch@brucknerburch.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on this the 8th day of September 2020.

/s/ Richard M. Schreiber
Richard M. Schreiber