UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| KELLY POGUE, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Case No. 2:20-cv-00580-KWR-KK |
| v. | § § | |
| CHISHOLM ENERGY OPERATING, LLC d/b/a CEH ENERGY OPERATING, LLC | § § § | |
| Defendant. | § | |

## CHISHOLM ENERGY OPERATING, LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS JUDICIAL PROCEEDINGS

Defendant Chisholm Energy Operating, LLC ("**Chisholm**") files this Reply in Support of its Motion to Compel Arbitration and Dismiss Judicial Proceedings (Doc. No. 20 ("**Chisholm's Motion**")) and would respectfully show the Court as follows:

## INTRODUCTION

Pogue concedes all relevant facts necessary to require this Court to compel his case to arbitration. First, Pogue does not dispute that he entered into a valid arbitration agreement with DTC Energy. Nor does Pogue dispute that the Arbitration Agreement he had with DTC Energy would cover disputes that arise under his Independent Contract Agreement (the "**ICA**") with DTC Energy, more broadly. Therefore, a legitimate arbitration agreement exists, and the question of Chisholm's ability, as a non-signatory, to enforce the Arbitration Agreement is a question for the arbitrator.

But, even if the Court were to decide itself whether Chisholm can compel arbitration, it must conclude that Chisholm is an intended third-party beneficiary entitled to enforce Pogue's Arbitration Agreement because Pogue admits that: (1) his ICA governed his services to DTC Energy's clients (referred to as "Client Operator" in the ICA) on DTC Energy's behalf; (2) Chisholm is the specific "Client Operator" referenced in his ICA; and (3) he provided his services to Chisholm under the ICA,

1

for which he now seeks overtime in the instant lawsuit.  For all of these same reasons, Pogue is equitably estopped from arguing otherwise.

A.    **BECAUSE THERE IS NO DISPUTE ABOUT THE EXISTENCE OF POGUE'S AGREEMENT TO ARBITRATE, THE ARBITRATOR MUST DECIDE IF CHISHOLM CAN ENFORCE THE ARBITRATION AGREEMENT, AS THERE IS A PRESUMPTION IN FAVOR OF ARBITRATION.**

Pogue argues that Chisholm's attempt to enforce the arbitration agreement as a non-signatory raises a question of contractual validity, for the Court to decide—as opposed to a question of arbitrability, for the arbitrator to decide.  But Pogue <u>concedes</u> that he entered into a valid arbitration agreement with DTC Energy.  (Doc. No. 35 at 1, 4, 7.)  He similarly does not argue that the agreement is unenforceable, unconscionable, or invalid, and he does not dispute that his work for Chisholm was performed solely and exclusively through the ICA with DTC Energy.  In fact, Pogue concedes that his ICA "contemplates Pogue would provide services to DTC[ Energy's] clients," – in this case, Chisholm.  (*Id.* at 1, 8.)  As a result, the validity of his arbitration agreement is not at issue.  Indeed, "courts repeatedly conclude that ***whether a non-party to an arbitration agreement can compel arbitration presents a question of an agreement's scope, not its existence.***" *O.N. Equity Sales Co. v. Rahner*, 526 F. Supp. 2d 1195, 1198 n.4 (D. Colo. 2007) (emphasis added) (collecting cases).  Thus, once the court determines that a valid contract exists and that it contains a clear and unmistakable delegation clause (such as the agreement here), then the remaining question of a non-signatory's ability to enforce the agreement is quite clearly a question of arbitrability for the arbitrator.[1]

Pogue incorrectly argues that there is no presumption in favor of arbitrability when the parties dispute the existence of a valid arbitration agreement.  In so arguing, Pogue again concedes the

---

[1] Doc. No. 33 at 6–9 (citing cases); *O'Connor v. BMW of N. Am.*, No. 18-cv-03190-CMA-STV, 2020 U.S. Dist. LEXIS 162920, at *8–9 (D. Colo. July 22, 2020) ("[T]hat question should be resolved by an arbitrator because whether a third-party falls within the scope of a valid arbitration agreement is fundamentally a question of arbitrability."); *De Angelis v. Icon Entm't Group Inc.*, 364 F. Supp. 3d 787, 796–97 (S.D. Ohio 2019); *Robertson v. Enbridge*, No. 19-1080, 2020 U.S. Dist. LEXIS 137375, at *8–9 (W.D. Pa. July 31, 2020).

existence of a valid arbitration agreement – which is the only question that is reserved to this Court. When a party contests an arbitration agreement's scope, as Pogue does here, there is a clearly-stated presumption favoring arbitration of that issue. (*See* Doc. No. 33 at 20–23 (addressing same)); *see also Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (citing authorities); *City & County of Denver v. Dist. Court In & For City & County of Denver*, 939 P.2d 1353, 1363 (Colo. 1997).

Notwithstanding the foregoing, even assuming *arguendo* that the Court should decide whether Chisholm can compel arbitration pursuant to the Arbitration Agreement he should do so because: (1) Chisholm is a third party beneficiary under both New Mexico and Colorado law and (2) the theory of equitable estoppel also applies here.

## B.   CHISHOLM IS A THIRD PARTY BENEFICIARY AND MAY COMPEL ARBITRATION.[2]

### 1.   Chisholm is a Third Party Beneficiary under Colorado Law.

If the Court were to find that Colorado law applies, Chisholm may enforce the Arbitration Agreement because it is an intended third party beneficiary.  Third party beneficiaries may enforce an arbitration agreement under Colorado law when the contracting parties intend to do so—intent "***need not be expressly recited in the contract***" but may be apparent from the agreement's terms,

---

[2] The parties dispute whether Colorado or New Mexico law applies, and while Colorado and New Mexico laws do not conflict for purposes of compelling this case to arbitration, it is Chisholm's position that New Mexico law applies.  First, there are no connections between Pogue and Colorado.  Pogue's basis for his lawsuit is his work in New Mexico, not Colorado. (Doc. No. 22, First Am. Compl. ¶¶ 1, 9, 18, 88, 97.)  He chose to file suit before this Court and brings a claim for alleged violations of the NMMWA. (*Id.* ¶¶ 1, 84–94.) Second, even if the Court finds that the parties have sufficient connections to Colorado, Pogue is suing under the FLSA and NMMWA—not Colorado law.  Thus, New Mexico has a dominant interest in this dispute.  By contrast, Colorado has no cognizable interest whatsoever.  The resolution of the dispute will have no impact on Colorado or its citizens.  On the other hand, New Mexico has a strong and well-recognized public policy with respect to the NMMWA and ensuring its workers' rights are vindicated under its statutes, pursuant to its precedent.  Thus, if the Court were to conduct a choice-of-law analysis, New Mexico law would apply. *Bock v. Salt Creek Midstream LLC*, No. 19-1163 WJ/GJF, 2020 U.S. Dist. LEXIS 124531, at *48–53 (D.N.M. July 15, 2020) (Report and Recommendation, objections pending); *see also Henry v. CNX Res. Corp.*, No. 20-553, 2020 U.S. Dist. LEXIS 154186, at *10–14 (W.D. Pa. Aug. 24, 2020) (Report and Recommendation, objections pending).

the surrounding circumstances, or both. *E.B. Roberts Const. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985) (emphasis added)).

In arguing such intent is not evident from the Arbitration Agreement's terms, Pogue relies almost entirely on *Everett v. Dickinson & Co., Inc.*, 929 P.2d 10 (Colo. App. 1996), which does not support his position. <u>First</u>, Pogue incorrectly suggests *Everett* stands for the proposition that "where other provisions in the contract expressly refer to non-parties, but the arbitration provision itself does not, the omission 'is regard[ed] as purposeful and from which we can reasonably infer that the parties did not intend that the [non-signatory] be a beneficiary of the arbitration clause.'" (Doc. No. 35 at 13.) In fact, in *Everett*, the arbitration provision at issue was expressly limited to claims <u>between the contracting parties</u>: "all controversies which may arise ***between us*** concerning any transaction of the construction, performance or breach of this or any other agreement ***between us*** . . . shall be determined by arbitration." 929 P.2d at 14 (emphasis added). Thus, given this very explicit language, the Court considered the omission of the non-signatory to have been purposeful. *Id.*[3] In the instant case, however, the arbitration provision is neither qualified nor limited. (Doc. No. 32-1, Ex. A, Meyers Decl., Ex. 1 ¶

---

[3] Indeed, other cases cited by Pogue are equally as distinguishable. Aside from the fact that those cases may not have applied Colorado or New Mexico law, the arbitration provisions also referenced certain parties or class of parties. For example, in *Bock*, the arbitration agreement was expressly limited as to applying between the parties, and the signatory company's subsidiaries or affiliated entities, officers, directors, employees, agents, benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or all successors and assigns. 2020 U.S. Dist. LEXIS 124531 at *26–27. Thus, because the provision was silent on the topic on the signatory company's customers, but not silent on its application to other entities and individuals, the Court recommended that the provision did not apply to plaintiff's claims against the non-signatory defendant. *Id.* at *29–30. Likewise, the other cases to which Pogue cites fair no better. *See Shoals v. Owens & Minor Distribution, Inc.*, No. 2:18-CV-2355 WBS EFB, 2018 U.S. Dist. LEXIS 186729, at *26 (E.D. Cal. Oct. 31, 2018) (arbitration agreement covered "*any Employment claims the Employee may have against the Company's officers, directors, employees, agents or any of the Company's affiliated or related entities*") (emphasis added); *Flynn v. Sanchez Oil & Gas Corp.*, No. SA-19-CV-00867-JKP, 2019 U.S. Dist. LEXIS 210098, at *4 (W.D. Tex. Dec. 5, 2019) ("*The parties* agree that any dispute . . . arising out of or related to in any way *to the parties' employment relationship or termination of that relationship* . . . .") (emphasis added).

15.3 ("Any dispute arising hereunder shall be resolved by way of confidential arbitration . . . .")).

Second, in *Everett* the defendant "presented no other evidence that would show the parties' intent to confer a benefit upon [the defendant]." 929 P.2d at 13.  By contrast, in this case, Chisholm has presented voluminous, undisputed evidence that the contracting parties intended Chisholm, as DTC Energy's Client Operator, to be a third-party beneficiary of the Arbitration Agreement.  (*See* Doc. No. 33 at 9–14.)  Third, in *Everett*, "the trial court's finding that plaintiff ***never sought a relationship with defendant*** . . . can reasonably support the inference that plaintiff did not intend to confer a benefit on defendant as a third-party beneficiary." 929 P.2d at 14 (emphasis added).  However, these facts are not replicated in the instant case.

Here, it is significant that the ICA expressly references and recites an intention to benefit Chisholm. (*See* Doc. No. 33 at 9–14.)  Indeed, the ICA's entire purpose was to directly benefit Chisholm, and its language is reflective of that purpose.  The ICA clearly states that Pogue's "[s]ervices are required to fulfill [DTC Energy's] obligations to its client ('Client Operator')."  (Doc. No. 32-1, Ex. A., Meyers Decl., Ex. 1 ¶ 1 (Scope of Agreement).)  Chisholm, as a Client Operator, is repeatedly referenced throughout the ICA, and Pogue concedes this fact. (*See* Doc. No. 35 at 1 n.1.)  Relatedly, Pogue also concedes that his ICA "contemplates Pogue would provide services to DTC[ Energy's] clients."  (Doc. No. 35 at 1, 8; *see also* Doc. No. 22, First Am. Compl. ¶¶ 15, 41.)  This language all serves to establish that Chisholm was intended to directly benefit from the ICA, and is a third-party beneficiary thereto, particularly when contrasted with the absence of such language in *Everett*.

Pogue also argues that Chisholm's reliance on *Great W. Sugar Co. v. N. Nat. Gas Co.*, 661 P.2d 684 (Colo. App. 1982) is distinguishable.  But, Pogue's attempt to distinguish this case from *Great W. Sugar Co.* is misplaced for several reasons.  First, it is not relevant that the case does not involve a motion to compel arbitration because the case is based on the application of third-party

beneficiary principles.  Second, the contract at issue in *Great W. Sugar Co.* referred generally to

gas sold to customers as set forth in the service agreement:

> WHEREAS, Seller is the owner of a system of pipelines and is engaged in the production, purchase, transportation and sale of natural gas; and
>
> WHEREAS, Buyer owns and operates distribution systems for the distribution and sale of natural gas in the Cities of Goodland and Kanorado, Kansas and for such operations desires a dependable supply of natural gas.

*Id.* at 693.  Based on those terms of the service agreement, the Court found:

> *From the express terms of the service agreement, it is obvious that the parties entered into the agreement to benefit Northern's customers* in Goodland, Kansas, by providing a dependable supply of natural gas. *GW, as a customer in Goodland, was one of the class of persons who were intended beneficiaries of the service agreement.*

*Id.* (emphasis added).  Similarly, here, the ICA repeatedly references the Client Operator, Chisholm,

with far greater frequency and detail than the service agreement in *Great W. Sugar Co.*  Again, the

entire purpose of the ICA was because Pogue's "[s]ervices are required to fulfill [DTC Energy's]

obligations to its client ('Client Operator')."  (Doc. No. 32-1, Ex. A., Meyers Decl., Ex. 1 ¶ 1 (Scope

of Agreement).)  Pogue concedes this fact. (Doc. No. 35 at 1, 8 (the ICA "contemplates Pogue would

provide services to DTC[ Energy's] clients,"); *see also* Doc. No. 22, First Am. Compl. ¶¶ 15, 41.)

Accordingly, contrary to Plaintiff's suggestion, the principles set forth in *Great W. Sugar* are

applicable to the case at bar, and further illustrate that the case must be compelled to arbitration.

   Pogue also argues that Chisholm's reliance on *Parker v. Center for Creative Leadership*, 15

P.3d 297 (Colo. App. 2000) is misplaced.  However, Pogue's argument fails to take into consideration

that, setting aside the express terms of the arbitration agreement at issue, the Court also considered the

***surrounding circumstances*** of the Service Agreement between defendant and plaintiff's employer in

finding the non-signatory employee a third-party beneficiary.  *Id.* at 298–99.[4]  The Court found that

---

[4] It bears repeating that third party beneficiaries may enforce an arbitration agreement when the contracting parties so intended, and those parties' intent "***need not be expressly recited in the***

"the Service Agreement was entered into so that [defendant] could provide leadership training services for *the benefit of* employer and its employees." *Id.* at 298 (emphasis added). Moreover, the claims plaintiff brought were based on the alleged responsibilities under the Service Agreement. *Id.* Thus, the Court concluded that "plaintiff may not, while seeking to enforce [defendant's] duties and obligations under the agreement, at the same time argue that the provisions of that contract do not apply to him." *Id.* Thus, Chisolm's status as an intended third part beneficiary should be based not only on the terms of the ICA, but also the surrounding circumstances. (Doc. No. 33 at 14 n.7.)[5]

The ICA entered into between Pogue and DTC Energy was entered into expressly so that Pogue could provide professional services for the benefit of DTC Energy and its clients, which in this case was Chisolm. Moreover, Pogue relies specifically upon the terms of the ICA with DTC Energy to claim that he was misclassified as an independent contractor and was improperly paid a flat amount per day by Chisolm (through DTC Energy). Pogue alleges he was paid a day rate. (*See* Doc. No. 22, First Am. Compl. ¶¶ 11, 15.) Pogue further alleges he was paid through DTC Energy (*id.* ¶ 15), and that this arrangement was required in order for Pogue to provide services to Chisolm through DTC Energy. (*Id.* ¶ 41.) Again, the entire purpose of the ICA was "to fulfill [DTC Energy's] obligations to its client ('Client Operator')." (Doc. No. 32-1, Ex. A., Meyers Decl., Ex. 1 ¶ 1 (Scope of Agreement).) Pogue once again concedes this point. (Doc. No. 35 at 1, 8 (ICA "contemplates Pogue would provide services to DTC[ Energy's] clients,"); *see also* Doc. No. 22, First Am. Compl.

---

*contract*" but may be apparent from the agreement's terms, ***the surrounding circumstances, or both***. *E.B. Roberts Const. Co*, 704 P.2d at 865 (emphasis added).

[5] Pogue attempts to reframe the issue that Chisolm is somehow trying to compel Pogue to arbitrate his claims under the Master Supply Agreement ("**MSA**") between DTC Energy and Chisolm or the indemnity agreement therein. (*See* Doc. No. 35 at 10–12, 16–17.) Pogue misunderstands Chisolm's argument. The nature of the industry and DTC Energy's business, the MSA, and its indemnification provision are all part of the *surrounding circumstances* showing Chisolm was an intended beneficiary of the Arbitration Agreement and thus require that arbitration be compelled.

¶¶ 15, 41.)  Thus, the mechanism by which Pogue alleges he was paid "by Chisholm" – i.e. through DTC Energy – was all structured pursuant to his ICA with DTC Energy.  Pogue therefore relies heavily upon the ICA to bring his claim against Chisholm, as it is the ICA, and only the ICA, which sets forth how and how much he would be paid.  Pogue, while utilizing the ICA with DTC Energy to bring his claims against Chisholm, cannot at the same time argue that the provisions of the ICA, including the Arbitration Agreement, do not apply to his relationship with Chisholm.  Accordingly, the principles of fairness invoked in *Parker* are equally at issue in the instant case, where Pogue seeks to avoid the ICA's Arbitration Agreement while, at the same time, using the ICA to his benefit to argue that he was improperly misclassified as an independent contractor and paid a day rate.  Pogue cannot have it both ways.  He must accept the obligations along with the benefits.[6]

### 2.    Chisholm is a Third Party Beneficiary under New Mexico Law.

If the Court were to find that New Mexico law applies, Chisholm may likewise enforce Pogue's Arbitration Agreement because it is an intended third-party beneficiary under New Mexico

---

[6] Pogue incorrectly argues that he does not rely upon the terms of his ICA to claim he was misclassified or improperly paid, but rather that his claims "arise under the FLSA".  However, District Courts in the Tenth Circuit have explicitly rejected Pogue's misplaced argument that FLSA claims are not arbitrable on the notion that they arise under federal law and do "not arise out [of] the agreement." *Daniels v. Encana Oil & Gas (USA) Inc.*, 16-CV-01851-CBS, 2017 U.S. Dist. LEXIS 120618, at *6 (D. Colo. Aug. 1, 2017).  Indeed, because the FLSA is not "a statute that entitle[s] employees to additional compensation regardless of whether the employees have a contract with their employer, and regardless of the contract's terms," a plaintiff making an FLSA claim must invariably rely on any agreements that exist. *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1175 (D. Colo. 2016); *see also Randle v. Metro. Transit Auth. of Harris Cty.*, No. H-18-1770, 2018 U.S. Dist. LEXIS 169033, at *31 (S.D. Tex. Oct. 1, 2018) ("Randle's FLSA claims are related to and arise out of the Agreements."); *Melendez v. Hoque & Mumith, Inc.*, No. 3:12-CV-01332-L, 2012 U.S. Dist. LEXIS 92864, at *10 (N.D. Tex. July 3, 2012) (FLSA claims "related to" employment contract).  Moreover, Pogue's reliance on *Peck v. Encana Oil & Gas, Inc.*, 224 F.Supp.3d 1181 (D. Colo. 2016) is misplaced and distinguishable. In *Peck*, a well operator (Encana) tried to enforce an arbitration clause in an agreement between it and a staffing company who had furnished plaintiff's services to Encana against the plaintiff. *Id.* at 1182.  The court found that plaintiff's FLSA claims did not arise out of the agreement and, therefore, plaintiff, as a non-signatory to the agreement, could not be bound by its arbitration clause. *Id.* at 1183–84.  But here, ***Pogue is a signatory to the agreement containing the arbitration clause***, and is thus properly bound.

law, as well.  As in Colorado, third-party beneficiaries may enforce an arbitration agreement under New Mexico law when the contracting parties so intended, and the "***third party beneficiary does not have to be named in the contract.***"  *Stotlar v. Hester*, 1978-NMCA-067, ¶ 18, 92 N.M. 26, 582 P.2d 403 (emphasis added).  Moreover, as is the case under Colorado law, a prospective third party beneficiary may prove the intent of the parties to an agreement by relying on the language of the agreement itself, *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987), or, in the absence of such language, on extrinsic evidence such as the circumstances surrounding the execution of the agreement. *Permian Basin Inv. Corp. v. Lloyd*, 63 N.M. 1, 7, 312 P.2d 533, 537 (1957).  Thus, as set forth above, and more fully in Chisholm's Motion, the terms, express purpose and surrounding circumstances of Pogue's agreement with DTC Energy show that the agreement was intended to directly benefit Chisholm under the law of either forum.  *See Goldsborough v. Newpark Drilling Fluids, LLC*, No. 2:19-cv-00309 KWR/GBW, 2020 U.S. Dist. LEXIS 24090, at *4–13 (D.N.M. Feb. 10, 2020) (Riggs, J.) (finding non-signatory defendant a third-party beneficiary to the independent contractor agreement between plaintiff and staffing company).[7]

Accordingly, the terms, express purpose and surrounding circumstances of Pogue's agreement with DTC Energy show that the agreement was intended to directly benefit Chisholm under either Colorado or New Mexico law.

## C.   POGUE IS EQUITABLY ESTOPPED FROM DENYING CHISHOLM'S ENFORCEMENT OF HIS AGREEMENT TO ARBITRATE.

### 1.   Pogue is Equitably Estopped under Colorado Law.

Alternatively, even if the Court were to conclude that Chisholm is not an intended third-party beneficiary of the ICA, despite substantial evidence to the contrary, Pogue nevertheless

---

[7] While the agreement in *Goldsborough* provided plaintiff would arbitrate claims against the staffing company and its clients, this Court read the agreement as a whole and additionally analyzed the surrounding circumstances in concluding that non-signatory defendant was a third-party beneficiary.

would be equitably estopped from evading his arbitration agreement under Colorado law. Chisholm has made "a clear showing of each of the . . . four elements: the party against whom the estoppel is asserted must know the relevant facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct." *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992); *accord Santich v. VCG Holding Corp.*, 443 P.3d 62, 65 (Colo. 2019).

First, and as explained more fully in Chisholm's Motion, Pogue was aware of the relevant facts. Pogue knew he was signing and did sign the ICA, containing the Arbitration Agreement, he knew the ICA governed work for DTC Energy's client (i.e. Chisholm), he admits he worked on DTC Energy's behalf for Chisholm, and thereby receiving payment from DTC Energy for those services to Chisholm. (Doc. No. 33 at 18; *see also* Doc. No. 22, First Am. Compl. ¶ 15 ("Chisholm through various staffing companies [i.e. DTC Energy] paid each of these workers . . ."; *id.* ¶ 41 ("Pogue was required to use a staffing company [DTC Energy] to get paid."; Doc. No. 35 (ICA "contemplates Pogue would provide services to DTC[ Energy's] client's [i.e. Chisholm].") Second, Pogue intended his conduct to be acted upon; he signed the ICA to secure work on DTC Energy's behalf for its client, Chisholm. Indeed, Pogue's actions—providing services to Chisholm under the ICA and accepting payment for those services through DTC Energy as set forth by the ICA—rationally led Chisholm to believe that the ICA was for its benefit. (*Id.*) Third, Chisholm did not know the exact contents of the ICA but rather reasonably relied on DTC Energy to contract with and supply independent contractors to perform work provided for in the MSA for Chisholm's benefit. Chisholm was clearly unaware of Pogue's intent to flout his arbitration obligation – a fact which Pogue does not dispute. (Doc. No. 33 at 18.) Finally, Chisholm thus reasonably believed that the ICA was for

its benefit, including the forum selection or arbitration clauses.  <u>Fourth</u>, Chisholm detrimentally relied on Pogue's ICA; Chisholm never would have permitted Pogue to work on DTC Energy's behalf if it had known Pogue would not honor the terms of his ICA, wherein he both acknowledged his independent contractor status and agreed to arbitrate any disputes regarding his status.  (Doc. No. 32 at 19.)  Chisholm relied on this belief to its detriment, by permitting Pogue to work on Chisholm projects, and suffering being hailed into this lawsuit as a result.[8]

### 2. Pogue Is Equitably Estopped Under New Mexico Law.

Similarly, if the Court were to find that New Mexico law applies, Pogue is also equitably estopped from evading his Arbitration Agreement.  Under New Mexico's doctrine of equitable estoppel, a non-signatory can compel arbitration: "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.*, No. A-1-CA-35852, 2019 WL 1231408, 2019 N.M. App. Unpub. LEXIS 46, at *17 (N.M. Ct. App. Feb. 4, 2019).  As set forth fully in Chisholm's Motion, both prongs of the estoppel test are met.

With respect to the first prong, Pogue argues that Chisholm's reliance on *Goldsborough v. Newpark Drilling Fluids, LLC*, No. 2:19-cv-00309 KWR/GBW, 2020 U.S. Dist. LEXIS 24090 (D.N.M. Feb. 10, 2020) (Riggs, J.) is distinguishable.  However, contrary to Pogue's assertion, this

---

[8] Pogue further argues that Chisholm cannot establish the elements of estoppel because Chisholm cannot show that it was unaware of the contents of the ICA, and it was unreasonable for Chisholm to assume that it was a third party beneficiary. (Doc. No. 35 at 21–22.) The test for equitable estoppel is the four-prong test described above. Where a party establishes the four prongs, it has shown "reasonable reliance." *See Santich*, 443 P.3d at 66 ("an equitable estoppel argument raised by a nonsignatory to a contract who seeks to enforce an arbitration provision must be supported by all four traditionally defined elements of equitable estoppel."). Pogue's insistence that Chisholm is required to submit some sort of additional "proof" that its reliance was reasonable is simply incorrect. But even assuming *arguendo* that Chisholm was required to make a separate showing of reasonableness, the facts illustrate that Chisholm's reliance was reasonable under the circumstances.

case is on all fours with *Goldsborough*. (*See* Doc. No. 33 at 17 (discussing same).)  Pogue distinguishes *Goldsborough* on the grounds that the plaintiff explicitly agreed to arbitrate his claims against the staffing company or its clients (defendant).  However, in *Goldsborough*, this fact was only one factor in this Court's determination that defendant was a third party beneficiary, rather than a consideration on the issue of estoppel.  Indeed, this Court found that plaintiff was estopped from denying defendant's enforcement of the agreement to arbitrate because the agreement was the basis for plaintiff's work for defendant, and was the main document governing the relationship between plaintiff, staffing company, and defendant. 2020 U.S. Dist. LEXIS 24090 at *12–13.  As set forth herein and more fully in Chisholm's Motion, Pogue must rely on the terms of the ICA in making his claim against Chisholm.  Thus, Pogue is estopped under the first prong of New Mexico's estoppel test. *Id.*; *Rock Roofing, LLC v. Travelers Cas. & Surety Co. of Am.*, 413 F.Supp.3d 1122, 1130–31 (D. N.M. 2019).

Likewise, with respect to the second prong, while the First Amended Complaint does not make explicit reference to "DTC Energy" by name, it cannot be said that the First Amended Complaint is silent as to DTC Energy's important and unavoidable role in the instant case.  As addressed more fully in Chisholm's Motion, the First Amended Complaint explicitly and repeatedly acknowledges the relationship between Pogue, Chisholm, *and DTC Energy*. (Doc. No. 33 at 15, 17–18; *see also* Doc. No. 35 at 1, 8).[9]  Thus, under the second prong of New Mexico's estoppel test, and as a whole, Pogue should also be estopped from evading the requirements of his Arbitration Agreement.

---

[9] This case is thus distinguishable from *Bock,* wherein the Court found the second prong of New Mexico's estoppel test inapplicable because "the Complaint was silent on Kestrel [the non-defendant signatory staffing company]." 2020 U.S. Dist. LEXIS 124531 at *55, *71–72.

Respectfully submitted this 22nd day of September, 2020.

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & AUGHTRY**

By:  */s/ Annette A. Idalski*
Annette A. Idalski
Kaitlin K. Lammers
Raed "Ray" Abilmouna
191 Peachtree Street, N.E., 46th floor
Atlanta, GA  30303-1747
Telephone: (404) 658-5386
Facsimile: (404) 658-5387
Annette.Idalski@chamberlainlaw.com
Kaitlin.Lammers@chamberlainlaw.com
Ray.Abilmouna@chamberlainlaw.com

**RODEY, DICKASON, SLOAN, AKIN &**
**ROBB, P.A.**

By:  */s/ Jeffrey L. Lowry*
Jeffrey L. Lowry
201 Third Street NW, Suite 2200
Albuquerque, New Mexico 87102
Telephone: (505) 766-7541
Facsimile: (505) 768-7395
jlowry@rodey.com

***Attorneys for Defendant Chisholm Energy***
***Operating, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of September, 2020, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

**CHAMBERLAIN HRDLICKA WHITE WILLIAMS & AUGHTRY**

By: _____*/s/ Raed Abilmouna*_____
Raed "Ray" Abilmouna