## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

KELLY POGUE,
*Individually and on Behalf of all others*
*Similarly situated,*
            Plaintiff,

v.                                                    No. 2:20-cv-00580-KWR-KK

CHISHOLM ENERGY OPERATING, LLC,

            Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon Defendant's Motion to Dismiss **(Doc. 31)**

and Motion to Compel Arbitration **(Doc. 33)**.  Having reviewed the parties' pleadings and the

applicable law, the Court finds that Defendant's motions are not **well-taken** and, therefore, are

**DENIED**.

### BACKGROUND

This is a putative class action under the Fair Labor Standards Act ("FLSA") and New

Mexico Minimum Wage Act ("NMMWA").  Plaintiff alleges that Defendant failed to pay him and

others similarly situated overtime.

Plaintiff signed an independent contractor agreement with third-party DTC Energy Group,

Inc. ("DTC"), to perform services for DTC's clients.  DTC is an oilfield consulting firm.  One of

those clients was Defendant.  Plaintiff now alleges that Defendant violated the FLSA and New

Mexico Minimum Wage Act by failing to pay him and others overtime.  Plaintiff was a well site

supervisor for Defendant from July 2017 to December 2019.

On July 20, 2016, Plaintiff through his limited liability company entered into an Independent Contractor Agreement ("ICA") with DTC Energy.   It provided that "[t]his Independent Contractor Agreement ("Agreement") effective July 20, 2016… is made by and between DTC Energy Group, Inc…. and JKP Consulting, LLC…"). **Doc. 32-1 at 6.** "[Plaintiff] acknowledges said Services are required to fulfill [DTC's] obligations to its client ("Client Operator") as provided by separate contract." *Id.* The agreement also required Plaintiff to carry certain insurance and required DTC to provide commercial generally liability insurance per the requirements of any contracts with the clients.

Finally, the Independent Contractor Agreement provided that it would be construed "in accordance with the laws of the State of Colorado, without giving effect to principles of conflict of laws.  Any dispute arising hereunder shall be resolved by way of confidential arbitration, in accordance with the Uniform Arbitration Act, C.R.S. 13-22-201, et *seq.* , said arbitration to be conducted in the City and County of Denver, Colorado by a single arbitrator, any award to be enforceable in any court of competent jurisdiction." **Doc. 32-1 at 10.**

DTC and Defendant entered into a Master Supply Agreement and work order on or around June 29, 2017.  The Master Supply Agreement is silent on arbitration and provides that Texas law would apply.  The work order between DTC and Defendant provided that DTC, as contractor, would "consult with, advise, and provide supervisory and support services to Company's VP of operations." **Doc. 32-2 at 21.**  It provided that DTC would provide Plaintiff "for purposes of well site supervision." ***Id.***  It provided that Contractor (DTC) would be paid $1700 per 12-hour shift, and that contractor would be expected to work 14 consecutive days consisting of 12-hour shifts. Contractor would be scheduled 2 weeks on and 2 weeks off.  It also provided that if contractor was required to work longer than 12 hours per shift, Contractor would be paid at a rate of $142 per

hour.  **Doc. 32-2 at 22.**  It finally provided that contractor would provide all equipment, service, and supplies necessary to perform the work in a professional, diligent and efficient manner. *Id.*

In turn, DTC completed a "new hire request form" for Plaintiff.  It provided that he would serve as an independent contractor for Chisholm Energy as a "Completions Supervisor."  It also provided he would be paid at a rate of $1585 but invoiced at $1700 by DTC. It also provided he would be paid $132 per hour of time over 12 hours per day, and would be invoiced at $142.  **Doc. 32-1 at 13.**

Plaintiff was paid through DTC.  DTC charged Defendant a $1,700 day rate, and Defendant received $1,585 per day.  Plaintiff received an additional $132 per hour for hours worked over twelve.  Plaintiff received payment from DTC through is limited liability company, JP Consulting LLC.  Plaintiff received a 1099-MISC from DTC in 2017 and 2018 from DTC.  **Doc. 32-1 at 15-16.**

## DISCUSSION

Defendant seeks to dismiss the complaint for (1) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or alternatively (2) failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendant also seeks to enforce the ICA arbitration clause against Plaintiff.  At issue is whether Defendant, a non-signatory to the ICA, can enforce the arbitration clause under the theories of (1) third-party beneficiary and (2) equitable estoppel.

## I.      Motion To Dismiss.

Defendant argues that this case should be dismissed because it is not an employer under the FLSA.  The FLSA provides that "[a]n action to recover . . . may be maintained against any *employer* . . . in any . . . court of competent jurisdiction by any one or more *employees* . . . ." 29 U.S.C. § 216(b) (emphasis added).

### A.        This is not a jurisdictional issue.

Defendant argues that the language in 29 U.S.C. § 216(b) shows that the employment relationship is a jurisdictional issue.  The FLSA provides that "[a]n action to recover . . . may be maintained against any **employer** . . . in any . . . court of competent jurisdiction by any one or more **employees** . . . ." 29 U.S.C. § 216(b) (emphasis added).

This language does not clearly state that the employer/employee relationship is jurisdictional rather than an element of the claim.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 1245, 163 L. Ed. 2d 1097 (2006)("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue…when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character. Applying that readily administrable bright line to this case, we hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."); *Montes v. Janitorial Partners, Inc*., 859 F.3d 1079, 1084 (D.C. Cir. 2017) (the "language [of 29 U.S.C. § 216(b)] confirms our conclusion in that it assumes a grant of jurisdiction elsewhere. And, here, there is such a grant. 28 U.S.C. § 1331 assigns the federal district court original jurisdiction over all civil actions arising under the ... laws ... of the United States.").

The Court believes that the "the existence of an employee/employer relationship under the FLSA is an element of the plaintiff's meritorious FLSA claim and does not implicate this Court's threshold subject matter jurisdiction."  *Fuentes v. Compadres, Inc.*, No. 17-CV-01180-CMA-MEH, 2018 WL 1444209, at *4 (D. Colo. Mar. 23, 2018) ("the Court concludes that the existence of an employee-employer relationship is non-jurisdictional and, thus, properly assessed under Rule 12(b)(6), not Rule 12(b)(1).").  Therefore, the Court will apply Rule 12(b)(6) standards.  Moreover,

the Court will not consider Defendant's documents because they were not attached to the complaint or incorporated into it, and Plaintiff does not rely upon them to state his claim.

## B. Plaintiff adequately stated a plausible claim under Fed. R. Civ. P. 12(b)(6).

Defendant alternatively argues that Plaintiff does not state a claim for relief under the FLSA.  The Court disagrees.

Defendant largely argues that Plaintiff failed to allege sufficient facts to plausibly state that it was an employer. However, as Plaintiff argues, he need not provide hyper-detailed facts to adequately state a plausible claim.

To plead an FLSA claim, a plaintiff need only allege: (1) he was employed by the defendant; (2) he worked more than 40 hours in a week; and (3) he was not paid overtime for those hours in excess of 40 hours. *See Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1109 (10th Cir. 2019), *cert. denied,* 141 S. Ct. 241, 208 L. Ed. 2d 19 (2020).

Plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief" to state plausible FLSA allegations.  Fed. R. Civ. P. 8(a)(2); *Rayfield v. Sandbox Logistics, LLC*, 217 F. Supp. 3d 1299, 1300 (D. Colo. 2016) (denying motion to dismiss FLSA collective action because plaintiff alleged he was an employee of defendant, that he worked in excess of 40 hours per week, and that he was not paid overtime); *see also McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2009 WL 1125830, at *2 (D. Kan. April 27, 2009) (FLSA claim adequately plead where "plaintiffs have alleged that defendant has violated the FLSA through its policy and practice of refusing to pay employees, including plaintiffs, the appropriate rate for hours worked in excess of forty per week"); *Renteria-Camacho v. DIRECTV, Inc*., No. 14-2529, 2015 WL 1399707, at *3 (D. Kan. Mar. 26, 2015) (complaint adequate where plaintiff "alleges his pay was unlawful over the entire course of his employment.").

Whether Plaintiff was employed by Defendant is not determined by contract, but the economic realities test. *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018); *Baker*, 137 F.3d at 1440. The economic realities analysis uses six factors: (1) the degree of control exercised by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Id.* No single factor is determinative. *Acosta*, 884 F.3d at 1235.

Plaintiff asserts that the following are sufficient to allege that Plaintiff was employed by Defendant:

- For at least the past three years, Chisholm has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d). Doc. 22 at ¶ 21.

- To complete its business objectives, Chisholm hires personnel to perform the necessary work. Over the past three years, Chisholm employed dozens of individuals – including Pogue – in positions such as Rig Clerks, Completions Supervisors, Completions Consultants, Drilling Consultants, etc. Even if the exact job titles and job duties may differ, the Putative Class Members are subjected to the same or similar illegal pay practices for similar work. *Id.* at ¶¶ 28-30.

- Specifically, Chisholm classified these workers as independent contractors and they were paid a flat sum for each day worked (regardless of the number of hours worked (regardless of the number of hours worked in that workweek). *Id.* at ¶ 31. Chisholm uniformly failed to pay them overtime for hours worked in excess of 40 in a workweek. *Id.* at ¶ 32.

- Chisholm suffered or permitted Pogue, and the other workers like him, to work far more than 40 hours each week. *Id.* at ¶ 2. Chisholm hired Pogue. *Id.* at ¶ 40. Pogue was directly interviewed by Chisholm and hired by Chisholm's Completions Superintendent, Joel Hall. *Id.* at ¶ 65. Pogue worked for Chisholm as a Completions Consultant from approximately July of 2017 until December of 2019. *Id.* at ¶¶ 10, 33. As a Completions Consultant, Pogue's primary job duties included observing drilling operations on the rig and ensuring that the team is following safety protocol. *Id.* at ¶ 35.

- Pogue was required [by Chisholm] to use a staffing company to get paid. *Id.* at ¶ 41. Chisholm through various staffing companies paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. *Id.* at ¶15. Throughout his time with Chisholm, Pogue received a day-rate with no overtime compensation. *Id.* at ¶ 11. Pogue worked well in excess of 40 hours each week while employed by Chisholm. *Id.* at ¶ 36.

- Chisholm treated Pogue (and other oilfield workers it classified as independent contractors) as employees and uniformly dictated the pay practices to which Pogue and its other employees classified as independent contractors were subjected. *Id.* at ¶ 25. Chisholm's misclassification of Pogue as an independent contractor does not alter its status as his employer for purposes of this FLSA collective action. *Id.* at ¶ 26.

- The work Pogue performed was an essential part of Chisholm's core business. *Id.* at ¶ 37. These workers carry out the hands-on, day-to-day production work of Chisholm. *Id.* at ¶ 48.

- During Pogue's employment with Chisholm while he was classified as an independent contractor, Chisholm exercised control over all aspects of his job. *Id.* at ¶ 38. Pogue was required [by Chisholm] to use a staffing company to get paid. *Id.* at ¶ 41. Virtually every job function was pre-determined by Chisholm, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. *Id.* at ¶ 57. Pogue and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. *Id.* at ¶ 58.

- Chisholm determined Pogue's opportunity for profit or loss. *Id.* at ¶ 42. Indeed, Chisholm controlled all the significant or meaningful aspects of the job duties performed by Pogue. *Id.* at ¶ 43. Chisholm ordered the hours and locations Pogue worked, owned and assigned the tools used, and determined the rates of pay he received. *Id.* at ¶ 44. Chisholm controlled all aspects of Pogue's job activities by enforcing mandatory compliance with Chisholm's policies and procedures. *Id.* at 45.

- Chisholm did not require any substantial investment by Pogue for him to perform the work required of him. *Id.* at ¶¶ 39, 46. He worked on Chisholm's well sites and utilized equipment and software provided by Chisholm to perform his job duties on Chisholm's behalf. *Id.* at ¶ 47. Pogue did not provide the equipment he worked with on a daily basis. *Id.* at ¶ 49. Chisholm made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Pogue worked. *Id.* at ¶ 50. Pogue did not incur operating expenses like rent, payroll, and marking. *Id.* at ¶ 51.

- Pogue was economically dependent on Chisholm during his employment. *Id.* at ¶52. Chisholm set Pogue's rates of pay, his work schedule, and prohibited him from

working other jobs for other companies while he was working jobs for Chisholm. *Id.* at ¶ 53. Pogue's earning opportunity was based on the number of days Chisholm scheduled him to work. *Id.* at ¶54.

- Very little skill, training, or initiative was required of Pogue to perform his job duties. *Id.* at ¶ 55. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Chisholm. *Id.* at ¶ 56. Virtually every job function was pre-determined by Chisholm, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. *Id.* at ¶ 57. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college educations or other advanced degree. *Id.* at ¶ 59. Pogue and the Putative Class Members did not have any supervisory or management duties[.]. *Id.* at ¶ 60. Pogue and the Putative Class Members performed routine duties that were largely dictated by Chisholm. *Id.* at ¶ 62.

- Chisholm did not employ Pogue on a project-by-project basis. *Id.* at ¶ 63. Pogue worked for Chisholm as a Completions Consultant from approximately July of 2017 until December of 2019. *Id.* at ¶¶ 10, 33. In fact, while Pogue was classified as an independent contractor, he was regularly on call for Chisholm and was expected to drop everything and work whenever needed. *Id.* at ¶ 64.

**Doc. 34 at 11-13.** The Court agrees that these detailed facts are more than sufficient to state a claim. Factual allegations under Rule 8 need not be hypertechnical. Defendant also disputes these allegations, which is not appropriate under Fed. R. Civ. P. 12(b)(6).

### C. Statute of limitations.

Defendant also argues that Plaintiff's FLSA claim is barred by the statute of limitations. He asserts that Plaintiff failed to adequately plead willfulness, and therefore the applicable statute of limitations is two years and not three years. The Court disagrees.

Here, Plaintiff adequately pled willfulness such that the three-year statute of limitations may apply. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("the allegation of willfulness suffices" where, as here, the complaint alleged the employer had knowledge of the conduct that allegedly violated the FLSA and that an employer's knowledge of the pertinent requirements of the FLSA was plausible); *Judd v. KeyPoint Govt. Solutions, Inc.*, Civ. A. No. 18-

cv-00327-RM-STV, 2018 WL 3057880, at *6 (D. Colo. June 20, 2018) ("Courts have repeatedly

held that at the motion to dismiss stage, the plaintiff's burden to allege a willful FLSA violation is

minimal. Even a 'general averment of willfulness satisfies the requirements of pleading a willful

violation of the FLSA, so as to invoke the three-year statute of limitations' at the pleading stage.")

(citing cases) (internal citations omitted); *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d

892, 903 (9th Cir. 2013) (Denying motion to dismiss for failure to plead sufficient facts to support

willfullness as "at pleading stage, a plaintiff need not allege willfulness with specificity).

## II.   <u>The Court declines to compel arbitration.</u>

Defendant also seeks to compel Plaintiff to arbitrate his claims.  There is no arbitration

agreement between Plaintiff and Defendant.  Nevertheless, Defendant, a non-signatory, seeks to

enforce an arbitration agreement between Plaintiff and DTC.  Defendant asserts it can enforce the

arbitration agreement even though it is a non-signatory through the state-law theories of (1) third-

party beneficiary and (2) equitable estoppel.  The Court disagrees.

The Supreme Court has recognized that "arbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

*Howsam*, 537 U.S. at 83, 123 S.Ct. 588 (2002); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*,

475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("arbitration is a matter of contract.").

"Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine

whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).  "[T]o determine

whether a party has agreed to arbitrate a dispute," the Court applies "ordinary state-law principles

that govern the formation of contracts." *Walker v. BuildDirect.com Techs., Inc*., 733 F.3d 1001,

1004 (10th Cir. 2013).

Generally, agreement or mutual assent is essential to a contract. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). However, "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009). A motion to compel arbitration is treated similarly to a motion for summary judgment. *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014).

**A.      Conflict of laws.**

The parties dispute whether Colorado or New Mexico law applies. The ICA provides that "this agreement shall be construed in accordance with the laws of the State of Colorado without giving effect to principles of conflict of laws." **Doc. 32-1 at 10.** Defendant, a non-signatory to the contract, is attempting to enforce the arbitration provision under contract or equitable theories of law. The Court will therefore apply Colorado law. However, as explained below the result would be the same under New Mexico or Colorado law.

In a diversity action, the Court applies the substantive law of the forum state, including its choice of law rules. *New York Life Ins. Co. v. K N Energy, Inc.,* 80 F.3d 405, 409 (10th Cir.1996). The forum state here is New Mexico.

New Mexico generally enforces choice of law provisions in contracts. *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 108 NM 467, 470 (1989); *See Carl Kelley Const. LLC v. Danco Tech*., 656 F.Supp.2d 1323, 1336 (D. N.M. 2009); *see also Flemma v. Halliburton Energy Servs.*, 303 P.3d 814, 820 (N.M. 2013) ("New Mexico ... has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals."). This includes third party beneficiary claims. *Pepsi-Cola Bottling*

*Co. of Pittsburg v. PepsiCo, Inc.,* 431 F.3d 1241, 1255 (10th Cir. 2005) ("Pittsburg Pepsi's contract claims are premised on the EBAs, which state that the terms and conditions of the EBAs shall be governed and interpreted by New York law, New York law applies to Pittsburg Pepsi's breach of contract and third-party beneficiary claims."), *as amended on reh'g in part* (Apr. 11, 2006).

Here, Plaintiff and DTC expressly agreed that Colorado law controlled their agreement, including their agreement to arbitrate.  Defendant does not argue that the choice of law provision is unenforceable under New Mexico law, but merely that the events took place in New Mexico and the case was filed in New Mexico.

Plaintiff argues that this choice of law provision controls.  Defendant has not shown how the application of this choice of law provision offends New Mexico public policy.  *See Carl Kelley Const. LLC v. Danco Tech*., 656 F.Supp.2d 1323, 1336 (D. N.M. 2009); *see also Flemma v. Halliburton Energy Servs.*, 303 P.3d 814, 820 (N.M. 2013) ("New Mexico ... has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals.").  Therefore, the Court will apply Colorado law, but notes that the result remains the same under New Mexico law.

**B.  Plaintiff did not clearly and unmistakably agree to arbitrate arbitrability with Defendant.**

Defendant argues that the arbitrator must determine the arbitrability of this matter.  The Court disagrees.

Generally, the Court determines whether a matter is subject to arbitration unless the parties clearly and unmistakably agreed to arbitrate "arbitrability."  *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243–44 (10th Cir. 2018).  "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability."

11

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco,* 330 F.3d 1266, 1269 (10th Cir.2003) (quoting *AT & T Techs.,* 475 U.S. at 648, 106 S.Ct. 1415) (internal quotation marks omitted). Although the presence of an arbitration clause generally creates a presumption in favor of arbitration, *see ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995) ("If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains ... broad and sweeping language."), "this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir.2002); *see also Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 779 (10th Cir.1998) ("[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.").

The Court must "first address the gateway question of whether *the parties* have consummated such an agreement at all." *Campbell Invs., LLC v. Dickey's Barbecue Rests., Inc.*, 784 F. App'x 627, 630 n.3 (10th Cir. 2019) (emphasis added); *see also Puchalski v. TCFC HotelCo, LP*, No. 19-CV-00812-DBB, 2020 WL 1891885, at *2 (D. Utah Apr. 16, 2020). This is in accord with the reasoning of other Circuits. *See Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 n.7 (3d Cir. 2020) ("*Henry Schein* 'did not change ... the rule that courts must first decide whether an arbitration agreement exists at all.' "); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n.4 (5th Cir. 2019) (internal citation omitted) ("*Schein* simply rejected the 'wholly groundless' exception to arbitrability delegations. It did not change—to the contrary, it reaffirmed—the rule that courts must first decide whether an arbitration agreement exists at all.").

12

Many courts agree an arbitration clause that does not mention arbitration against third parties does not clearly and unmistakably show a plaintiff agreed to arbitrate the arbitrability of claims against a non-signatory. *See, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293-94 (10th Cir. 2017) (noting the arbitrator should decide arbitrability as to the signatories to an arbitration agreement's claims against each other and simultaneously denying non-signatory defendant's motion to compel arbitration as a "principal" or "agent" of the signatory defendant under theories of equitable estoppel despite the delegation provision); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable."); *Republic of Iraq v. BNP Paribas USA*, 472 Fed. App'x 11, 13 (2d Cir. 2012) ("But evidence of intent to have an arbitrator determine its jurisdiction with regard to disputes 'referred by either Party,' does not clearly and unmistakably demonstrate their intent to have the arbitrator determine its jurisdiction with respect to any dispute raised by a non-party."); *See also In re Paragon Offshore PLC*, 588 B.R. 735, 753-54 (Bankr. D. Del. 2018) (finding "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory" and "even where express contractual language exists to show an intent to arbitrate questions of arbitrability, the Court must consider whether the 'parties' at issue fall within the scope of the delegation language.").

Here, the arbitration clause does not reference at all arbitration with non-signatories, such as DTC's clients.  Therefore, the Court concludes that the arbitration agreement does not clearly and unmistakably delegate arbitration of arbitrability between Plaintiff and the non-signatory Defendant.  Significantly, the Tenth Circuit has compelled arbitration of arbitrability for signatories but did not do so for non-signatories.  *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293

(10th Cir. 2017); *see also Qpro v. RTD Quality Servs. USA, Inc*., 761 F.Supp.2d 492, 497 (S.D. Tex. 2011) (finding whether a delegation clause applied to a signatory's claims with a non-signatory "[i]s a matter for the court to decide."); *First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F.Supp.2d 483, 485 (S.D.N.Y. 2008) (arbitrator could not decide whether a non-signatory defendant was covered by the arbitration agreement because "there is much to be said for determining who are the parties to the arbitration before the arbitrators hear the merits."). Therefore, the Court will determine whether this matter is arbitrable.

### C.     Third Party Beneficiary

Defendant argues it is a third-party beneficiary and therefore entitled to enforce the arbitration provision against Plaintiff. The Court disagrees, as there is no indication that Plaintiff and DTC intended to give DTC's clients the benefit of the arbitration agreement.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco,* 330 F.3d 1266, 1269 (10th Cir.2003) (quoting *AT & T Techs.,* 475 U.S. at 648, 106 S.Ct. 1415) (internal quotation marks omitted). Non-signatories can compel arbitration only if state contract law permits them to enforce the arbitration agreement. *Arthur Andersen*, 556 U.S. at 631. Under Colorado law, "[g]enerally, when the requirement to arbitrate is created by an agreement, it can be invoked only by a signatory of the agreement, and only against another signatory." *N.A. Rugby Union LLC, v. U.S. Rugby Football Union*, 442 P.3d 859, 863 (Colo. 2019).

However, "a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the parties to the contract so intend." *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298 (Colo. App. 2000). Under Colorado law, a "person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to

benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985), quoted in *Bewley v. Semler*, 2018 CO 79, ¶ 17, 432 P.3d 582, 587. "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Schneider v. SRC Energy, Inc.*, 424 F. Supp. 3d 1094, 1100 (D. Colo. 2019) (quoting *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins.*, 874 P.2d 1049, 1056 (Colo. 1994)). "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Copper Mountain Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009).

The Court finds it significant that although the ICA references DTC's clients, it omits any reference to clients in the arbitration provision. Other cases persuasively hold that this omission is "regard[ed] as purposeful and from which we can reasonably infer that the parties did not intend that the [non-signatory] be a beneficiary of the arbitration clause." *Everett v. Dickinson & Co.,* 929 P.2d 10, 14 (Colo. App. 1996); *Flynn*, 2019 WL 6606530, at *4 ("The Court is not persuaded by Sanchez's argument that the Employment Agreement's references to 'customer' in another portion of the contract establishes the parties' intent to arbitrate employee claims against customers," finding "[s]uch language may demonstrate that Sanchez is an incidental beneficiary of the parties' contract but not that the parties intended to grant Sanchez the right to enforce Cypress-TIR's various agreements with its employees.); *see also Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at *14 (D.N.M. July 15, 2020), *report and recommendation adopted,* No. CV 19-1163 WJ/GJF, 2020 WL 5640669 (D.N.M. Sept. 22, 2020) ("To say now that the language is malleable enough to apply to lawsuits against its customers – whom Kestrel kept off the list and out of that section – would permit Kestrel to smuggle an elephant through a keyhole,

a result that Court believes is not warranted[.]").  Here, there is nothing in the arbitration provision indicating that the parties intended that Defendant would be a beneficiary of the arbitration provision or have the right to enforce the arbitration provision.  The Court finds that the omission was likely purposeful. *see Everrett*, 929 P.2d at 14; *Bock*, 2020 WL 3989646, at *14.  DTC and Defendant did not have an arbitration agreement.

This includes cases involving employment agreements where the drafter-staffing company did not include language granting its clients the right to arbitrate.  *Bock v. Salt Creek Midstream LLC*, Civ. No. 19-1163 WJ/GJF, 2020 WL 3989646, at *11 (D. N.M. July 15, 2020) (denying staffing company's motion to compel plaintiff to arbitrate against its customers because "with just a very few keystrokes, [DTC] could have added its *customers* to this list and accorded them the same protection, yet [DTC] for whatever reason chose not to do so," finding "this silence is thunderous given [DTC's] business model."); *Flynn v. Sanchez Oil & Gas Corp*., SA-19-CV-00867-JKP, 2019 WL 6606530, at *5 (W.D. Tex. Dec. 5, 2019), *adopted* at 2020 WL 1082825 (W.D. Tex. Mar. 6, 2020) ("Cypress-TIR, the drafter of the Employment Agreement, could have explicitly required its employees to arbitrate any claims against its customers but it did not do so—neither in the arbitration provision nor in the provision of the Employment Agreement that specifically addresses employee claims against Cypress-TIR's customers.").

The fact that clients are referenced in other parts of the ICA is does not mean that Plaintiff intended to directly benefit clients in the arbitration provision.  *See Gorsuch, Ltd. v. Wells Fargo Nat'l Bank. Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) (the fact an agreement contemplates or references another party does not suffice to render that party a third-party beneficiary).

Moreover, the fact that in *another* agreement DTC may have agreed to indemnify Defendant is not dispositive here of the intent of Plaintiff and Defendant to grant clients the benefit

of arbitration. *Salazar v. People's Choice Home Loan, Inc.*, No. 04-cv-0946 PJK/RLP, 2005 WL 8164260, at *4 (D. N.M. Feb. 4, 2005) (rejecting the notion that a claim for indemnity by a non-signatory defendant against a signatory constituted a direct benefit sufficient to compel arbitration as a third-party beneficiary where the agreement did not clearly state the parties' intention to allow the non-signatory to benefit from the arbitration provision); *BC Tech., Inc. v. Ensil Intern. Corp.*, No. 2:02-CV-700 TS, 2007 WL 2908282, at *4 (D. Utah Oct. 3, 2007) (the existence of an indemnity clause does not give rise to third party beneficiary status). There is no mention of arbitration in DTC's and Defendant's agreement.

This result is the same under New Mexico law. The Tenth Circuit has summarized the relevant New Mexico law as follows:

> Under New Mexico law, "[g]enerally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration." *Horanburg v. Felter,* 136 N.M. 435, 99 P.3d 685, 689 (N.M.Ct.App.2004). However, Defendnat may be able enforce the arbitration agreement as a third-party beneficiary *See, e.g., Fleet Mortg. Corp. v. Schuster,* 112 N.M. 48, 811 P.2d 81, 82 (1991).
>
> "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id.* at 82–83. "The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him." *Tarin's, Inc. v. Tinley,* 129 N.M. 185, 3 P.3d 680, 686 (N.M.Ct.App.1999). "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Fleet Mortg.,* 811 P.2d at 83 (internal quotation marks omitted).

*Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (unpublished). For the same reasons as above, there is no indication that Plaintiff and DTC intended to grant clients or Defendant the right to enforce the arbitration agreement.

**III.**    **The Court will not estop Plaintiff from objecting to arbitration.**

Defendant argues that Plaintiff should be equitably estopped from objecting to arbitration with Defendant, because he relies on other provisions of the agreement with DTC for his FLSA claims.

The Court applies state-law principles in determining whether a non-signatory may compel arbitration, including state law on equitable estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation omitted).[1]  In Colorado, "equitable estoppel is generally understood as arising where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *Santich v. VCG Holdings*, 443 P.3d 62, 65 (Colo. 2019) (citing *V Bar Ranch LLC v. Cotton*, 233 P.3d 1200, 1210 (Colo. 2010)). For a non-signatory to compel arbitration using equitable estoppel, it must make a "clear showing" of the "four traditionally defined elements of the doctrine." *Id.* at 65-66. The elements of equitable estoppel under Colorado law are as follows:

> The party against whom the estoppel is asserted [1] must know the relevant facts; [2] that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; [3] the party claiming estoppel must be ignorant of the true facts; and [4] the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Id.* at 65 (quoting *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992)).  As explained by Plaintiff, Defendant has generally not satisfied these elements.  First, Defendant has not established that Plaintiff knew Defendant would be covered by the arbitration agreement. There is nothing to show that Plaintiff show Pogue knew "the relevant facts" such that he could "induce [Chisholm] to detrimentally change position in reasonable reliance on [Pogue's] actions through words, conduct, or silence." *Santich*, 443 P.3d at 65.

---

[1] The parties do not apply federal law as to equitable estoppel but differ on whether Colorado or New Mexico law should apply.  Therefore, the Court will not consider whether a federal equitable estoppel theory should apply.

Second, there is nothing that persuasively shows that Plaintiff intended for Defendant to believe it was covered by the arbitration agreement.  For example, the ICA did not include DTC's clients under the arbitration agreement or give any other indication that DTC expected Plaintiff to arbitrate with its clients.  There is nothing in the agreement or elsewhere to suggest that Plaintiff intended Defendant to believe it was covered by the arbitration agreement.

Third, Defendant argues it was not aware of the wording of the agreement's arbitration provision. But it also points to nothing that persuasively suggests it believed any claim by Plaintiff would be covered by arbitration. For example, Defendant's contract with DTC does not provide for arbitration with DTC or DTC's contractors such as Plaintiff.  For this reason, Defendant has not persuasively shown that it detrimentally relied on the ICA or any statement by Plaintiff that he would arbitrate with Defendant.   Therefore, Defendant has failed to show that equitable estoppel should apply here under Colorado law.

The results are no better for Defendant under New Mexico law.   In New Mexico, "[g]enerally, a non-signatory to an arbitration agreement cannot compel arbitration." *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.,* 2019 WL 1231408, at \*6 (N.M. Ct. App. Feb. 4, 2019) (citing *Horanburg v. Felter*, 2004-NMCA-121, ¶ 16, 136 N.M. 435, 99 P.3d 685). The doctrine of equitable estoppel, however, provides for two circumstances that allow enforcement by a non-signatory: "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Id*. (citing cases); *see also La Frontera Ctr., Inc. v. United Behavioral Health, Inc.,* 268 F. Supp. 3d 1167, 1218 (D.N.M. 2017) ("The Court concludes

that the Supreme Court of New Mexico would recognize that a nonsignatory to an arbitration agreement may successfully rely on the doctrine of equitable estoppel to compel arbitration.").

Here, Plaintiff need not rely on the terms of the ICA to make his FLSA claim. Plaintiff persuasively argues that he can establish his FLSA claim independent of the ICA. *See* **Doc. 35 at 25.** In determining whether an individual is an independent contractor or an employee for FLSA purposes, the "inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.' " *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (considering and rejecting employer's characterization of rig welders as independent contractors despite parties signing "Agreement with Independent contractor."); *Dole v. Snell*, 845 F.2d 802, 804 (10th Cir. 1989) ("Courts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of 'employee' or 'independent contractor.'"). "It is well settled that the economic realities of an individual's working relationship with the employer—not necessarily the label or structure overlaying the relationship—determine whether the individual is an employee under the FLSA. In determining whether an individual is an employee under the FLSA, the inquiry is not limited to the contractual terminology between the parties or the way they choose to describe the working relationship." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1159–60 (10th Cir. 2018) (internal citations omitted).

Although the ICA may be referenced in this case by Defendant as evidence under the economic realities test, Plaintiff does not rely on that contract in asserting his FLSA claims. *See, e.g., Hiser v. NZone Guidance, L.L.C.*, 799 Fed. App'x 247, 248 (5th Cir. 2020) ("The plaintiffs here are individual workers who signed agreements with RigUp and performed services for NZone. Their claims against NZone arise under the federal Fair Labor Standards Act… Because

the plaintiffs' overtime claims are based on a right conferred by federal law, the plaintiffs do not seek a benefit from their agreements with RigUp[.]"); *Flynn*, 2019 WL 6606530, at \*6 (finding FLSA claims are "statutory and arise under the FLSA, a federal law, and not the contract" and the determination of whether a plaintiff "is ultimately entitled to overtime compensation as an employee under the FLSA does not depend on the terms of [the plaintiff's] employment agreement. Rather it turns on the economic realities of [plaintiff's] relationship with [the defendant]…[b]ut ultimately, no matter what was promised or documented [in the agreement], what will be dispositive under the FLSA will be how the parties in reality behaved."); *Newman v. Plains All Am. Pipeline, L.P.*, No. 7:19-cv-00244-DC-RCG, Doc. 28, at \*7-8 (W.D. Tex. May 12, 2020) (finding an FLSA "Plaintiff's claims are statutory and arise under the FLSA, a federal law, and not the Employment Agreement," thus "while Plaintiff's FLSA claims against Defendant relate to the contract with Cypress, they do not depend on the contract's existence."); *Peck v. Encana Oil & Gas, Inc.*, 224 F.Supp.3d 1181, 1185 (D. Colo. 2016) (analyzing Colorado law and finding "[An FLSA] Plaintiff's claims do not depend on the contract and Plaintiff is not attempting to hold Encana liable for duties imposed by the contract.").

Plaintiff has also not alleged substantial interdependence and concerted misconduct between DTC and Defendant. *See, e.g., Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at \*19 (D.N.M. July 15, 2020), *report and recommendation adopted*, No. CV 19-1163 WJ/GJF, 2020 WL 5640669 (D.N.M. Sept. 22, 2020); *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.*, No. A-1-CA-35852, 2019 WL 1231408, at \*6 (N.M. Ct. App. Feb. 4, 2019).

For the same reasons as above, Defendant cannot estop Plaintiff because the claims allegedly "arise out of" the ICA under either Colorado or New Mexico law. Plaintiff's claims arise

out of the FLSA.  *Peck v. Encana Oil & Gas, Inc.*, 224 F. Supp. 3d 1181, 1184 (D. Colo. 2016) (FLSA claims did not arise out of contract for estoppel purposes), citing *Lenox Maclaren Surgical Corp. v. Medtronic, Inc*., 449 Fed.Appx. 704 (10th Cir. 2011) (unpublished) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a "but-for" relationship with them. The claims must be so intertwined with the agreement that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement.").

Therefore, the Court declines to equitably estop Plaintiff under either Colorado or New Mexico law.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss **(Doc. 31)** and Motion to Compel Arbitration **(Doc. 33)** are **DENIED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**