# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| KELLY POGUE, Individually and on Behalf of All Others Similarly Situated, | **Case No. 2:20-cv-00580-CG-KK** |
| | Jury Trial Demanded |
| v. | Collective Action (29 U.S.C. § 216(b)) |
| CHISHOLM ENERGY OPERATING, LLC d/b/a CEH ENERGY OPERATING, LLC | Class Action (Fed. R. Civ. P. 23) |

## POGUE'S MOTION FOR CONDITIONAL CERTIFICATION

Respectfully submitted,

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Michael A. Josephson
State Bar No. 24014780
Andrew W. Dunlap
State Bar No. 24078444
Richard M. Schreiber
State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**Attorneys for Plaintiff**

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................II

A.      PRELIMINARY STATEMENT ...............................................................1

B.      FACTUAL BACKGROUND ....................................................................1

     1.    Chisholm consultants had similar job duties and pay, and they share a common employment experience. ....................................................................................3

     2.    Chisholm directed, controlled, and supervised its Day Rate Workers. ...............3

     3.    Chisholm's Day Rate Workers did not risk their own investments or have any opportunity for profit or loss from Chisholm's operations. ....................................3

     4.    Chisholm's Day Rate Workers did not require specialized training or unique skill. ..........4

C.      ARGUMENT & AUTHORITIES...............................................................4

     1.    Conditional Certification of the FLSA collective is Appropriate Because the Class is "Similarly Situated." ....................................................................................4

     2.    Courts Within **this** Circuit use a Two-Stage Approach for Class Certification. .................5

     3.    Pogue Has Surpassed the Minimum Burden and Made The Required Showing That Day Rate Workers At Chisholm Are Similarly Situated for Certification Purposes. ...................7

     4.    Merits Based Arguments are not Relevant When Deciding Conditional Certification.......9

     5.    Independent Contractor Misclassification Cases are Well-Suited for Certification. .........10

     6.    Pogue can Proceed Collectively...........................................................................11

     7.    Court-Authorized Notice is Appropriate in this Case. .......................................11

     8.    A Three-Year Notice Period is Appropriate. .....................................................13

     9.    Expedited Disclosure of Names and Contact Information is Imperative...........................13

    10.    Equitable Tolling is Appropriate.........................................................................14

D.      CONCLUSION ......................................................................................15

TABLE OF AUTHORITIES

Page(s)

Cases

*Abrams v. City of Albuquerque,*
   No. 10-0872 MV/RHS, 2013 WL 11336856 (D.N.M. Sept. 24, 2013)............................................14

*Abrams v. City of Albuquerque,*
   No. 10-0872 MV/RHS, 2014 WL 11497810 (D.N.M. June 26, 2014) ...........................................15

*Aguilar. Mgt. & Training Corp.,*
   cv 16-050 WJ/GJF, 2017 WL 4277139 (D.N.M. Jan. 27, 2017) ........................................... 9, 15

*Baldozier v. Am. Family Mut. Ins. Co.,*
   375 F.Supp.2d 1089 (D. Colo. 2005) ........................................................................................5

*Ball v. Dynamic Support Servs., LC,*
   No. 4:15-CV-036, 2015 WL 13751963 (D.N.D. Oct. 13, 2015) ........................................... 6, 9

*Bouaphakeo v. Tyson Foods, Inc.,*
   564 F.Supp.2d 870 (N.D. Iowa 2008) .......................................................................................6

*Brown v. Money Tree Mortg., Inc.,*
   222 F.R.D. 676 (D. Kan. 2004) ................................................................................................8

*Calvillo v. Bull Rogers, Inc.,*
   267 F. Supp. 3d 1307 (D.N.M. 2017) ................................................................................. 5, 12

*Deakin v. Magellan Health, Inc.,*
   328 F.R.D. 427 (D.N.M. 2018)............................................................................................. 6, 7

*Felps v. Mewbourne Oil Co., Inc.,*
   460 F. Supp. 3d 1232 (D.N.M. 2020) .....................................................................................15

*Fontenot v. McNeil Industrial, Inc.,*
   No. 4:17-cv-3113, 2018 WL 5724863 (D. Neb. Sept. 19, 2018)...........................................10

*Foster v. Nova Hardbanding, LLC,*
   No. CV 15-1047 CG/LAM, 2016 WL 4492829 (D.N.M. Apr. 20, 2016) .................................8

*Garner v. G.D. Searle,*
   802 F. Supp. 418 (M.D. Ala. 1991) ..........................................................................................6

*Gee v. Suntrust Mortgage, Inc.,*
   No. C-10- 1509-RS, 2011 WL 722111 (N.D. Cal. Feb. 18, 2011)............................................9

*Geiger v. Z-Ultimate Self Defense Studios LLC,*
   C.A. No. 14-cv- 00240-REB-NW, 2015 WL 1090181 (D. Colo. Mar. 10, 2015) ..................10

*Gieseke v. First Horizon Home Loan Corp.,*
   408 F. Supp. 2d 1164 (D. Kan. 2006).......................................................................................8

*Grayson v. K-Mart Corp.,*
   79 F.3d 1086 (11th Cir. 1996)............................................................................................. 4, 6

*Guarriello v. Asnani,*
   No. 1:19-CV-01184-WJ-CG, 2021 WL 406437 (D.N.M. Feb. 5, 2021).................................12

*Halle v. Galliano Marine Svc., LLC,*
   No. 15-5648, 2018 WL 1757343 (E.D. La. Apr. 12, 2018) .......................................................6

*Hembree v. 3-D Oil Field Servs. & Rental, L.L.C.,*
    No. CIV 20-00343 RB/CG, 2020 WL 7642862 (D.N.M. Dec. 23, 2020)..........................................7

*Hodzic v. Fedex Package Sys., Inc.,*
    No. 15-956, 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016) ..................................................................10

*Hoffmann-La Roche v. Sperling,*
    493 U.S. 165 (1989)..........................................................................................................7, 11, 13, 14

*Jackson v. Synergies3 Tec Svcs., LLC,*
    No. 4:19-cv-00178-SRC, 2019 WL 5579514 (E.D. Mo. Oct. 29, 2019)...........................................10

*Kerr v. K. Allred Oilfield Servs., LLC,*
    No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017 (D.N.M. Nov. 19, 2020) ...........................5, 9, 12

*Landry v. Swire Oilfield Services, L.L.C.,*
    252 F.Supp.3d 1079 (D.N.M. 2017) ....................................................................................7, 12, 13, 14

*LeBlanc v. Halliburton Co.,*
    Civ. No. 17-0718 KG-GJF, 2018 WL 3999567 (D.N.M. Aug. 21, 2018)......................................5, 10

*Lewis v. ASAP Land Exp., Inc.,*
    C.A. No. 07-2226-KHV, 2008 WL 2152049 (D. Kan. May 21, 2008) ..............................................10

*Lewis v. GEO Group, Inc.,*
    No. CIV-08-881-M, 2009 WL 3763821 (W.D. Okla. Nov. 9, 2009) ..................................................5

*May v. E & J Well Service, Inc.,*
    No. 14–cv–00121–RBJ, 2014 WL 2922655 (D. Colo. Jun. 27, 2014) ..........................................5, 10

*McCaffrey v. Mortgage Sources, Corp.,*
    No. 08-2660-KHV, 2009 WL 2778085 (D. Kan. Aug. 27, 2009) .......................................................10

*Nerland v. Caribou Coffee Co., Inc.,*
    564 F.Supp.2d 1010 (D. Minn. 2007) ................................................................................................8

*Olivas v. C & S Oilfield Servs., LLC,*
    349 F. Supp. 3d 1092 (D.N.M. 2018) .................................................................................................9

*Ornelas v. Hooper Homes, Inc.,*
    No. 12-cv-3106 (JAP), 2014 WL 7051868 (D.N.J. Dec. 12, 2014) ....................................................10

*Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.,*
    2005 WL 1799208 (D. Kan.) ...............................................................................................................9

*Pruess v. Presbyterian Health Plan, Inc.,*
    No. CV 19-629 KG/JFR, 2020 WL 6544243 (D.N.M. Nov. 6, 2020) ...........................6, 13, 14, 15

*Russell v. Illinois Bell Tel. Co.,*
    575 F.Supp.2d 930 (N.D. Ill. 2008) ...................................................................................................7

*Sperling v. Hoffmann- La Roche, Inc.,*
    118 F.R.D. 392 (D.N.J. Jan. 5, 1988) ..............................................................................................6, 7

*Tamez v. BHP Billiton Petroleum (Americas), Inc.,*
    No. 5:15-cv-330-RP, 2015 WL 7075971 (W.D. Tex. Oct. 5, 2015)...................................................10

*Tegtmeier v. PJ Iowa, L.C.,*
    208 F. Supp. 3d 1012 (S.D. Iowa 2016) ............................................................................................10

*Thiessen v. Gen. Elec. Cap. Corp.,*
    267 F.3d 1095 (10th Cir. 2001)..............................................................................................4, 5, 7, 8

*Valencia v. Armada Skilled Home Care of NM, LLC,*
    No. CV 18-1071 KG/JFR, 2020 WL 2768977 (D.N.M. May 28, 2020)...................................5, 12, 13

*Vega v. Point Security, LLC,*
    No. A-17- CV-049-LY, 2017 WL 4023289 (W.D. Tex. Sept. 13, 2017) ...........................................12

*Verma v. 3001 Castor, Inc.,*
    No. CV 13-3034, 2016 WL 6962522 (E.D. Pa. Nov. 29, 2016) ...........................................10

*Whitlow v. Crescent Consulting, LLC,*
    322 F.R.D. 417 (W.D. Okla. 2017) ...........................................10

*Wood v. Sundance Prof. Svcs., LLC,*
    No. 08-2391-JAR, 2009 WL 484446 (D. Kan. Feb. 26, 2009) ...........................................10

*Zamora v. Sw. Glass & Glazing, Inc.,*
    No. 1:15-CV-01041-RJ, 2016 WL 10516172, FN 2 (D.N.M. Aug. 23, 2016) ...........................................13

Statutes

29 U.S.C. § 216(b) ........................................................................................................... 4, 5, 14
29 U.S.C. § 255(a) ........................................................................................................... 13

Rules

Fed. R. Civ. P. 23 ........................................................................................................... 5, 6

A.      **PRELIMINARY STATEMENT**

Chisholm Energy Operating, LLC d/b/a CEH Energy Operating, LLC (Chisholm) misclassified its oilfield workers (Rig Clerks, Completions Consultants, and Drilling Consultants) as independent contractors (collectively, the "Day Rate Workers"), to avoid paying them overtime wages required under federal law. Chisholm instead maintained a uniform pay practice of paying these oilfield workers a day rate without any overtime compensation. This practice violates the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA). Therefore, on June 15, 2020 Pogue filed his Complaint (Doc. 1) against Chisholm for violations of the FLSA, which he later amended on August 10, 2020. Doc. 22.

Kelly Pogue seeks to allow his coworkers— all other Day Rate Workers working for Chisholm who were classified as independent contractors and received similar pay—to receive notice of this collective action and stop the statute of limitations from running on their valuable back wage claims. Pogue's evidence meets and surpasses the lenient standard for conditional certification, and the Court should certify this collective action and order notice to be sent to putative class members.

Through Pogue's Complaint, declarations, and documents, Pogue exceeds his low burden on this motion and demonstrates that Chisholm subjected all Day Rate Workers to the same unlawful policies.

B.      **FACTUAL BACKGROUND**

Chisholm is an oil and gas company focused on acquisition and development of petroleum properties in the Delaware Basin. https://www.chisholmenergy.com/project-areas. To complete its business objectives, Chisholm hires "consultants" to perform the necessary work. Over the past three years, Chisholm employed dozens (or more) of individuals – including Pogue and Darrell Kepner – as Day Rate Workers who performed work in the oilfield and were misclassified as independent

contractors. Pogue worked for Chisholm as a Completions Consultant from approximately July of 2017 through approximately December of 2019. Ex. 1, Pogue Decl., at ¶ 2. Similarly, Kepner was a Completions Consultant for Chisholm for roughly a year and a half. Ex. 2, at ¶ 2. Throughout their employment with Chisholm, Pogue and Kepner received a flat day-rate with no overtime compensation for each day he worked. Ex. 1, at ¶ 7; Ex. 2, at ¶ 7; Ex. 3, Pogue Invoices.

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Your Name | | Kelly Pogue | | | Operator | | Chisholm Energy | | | | | |
| Your Company Name (if Applicable) | | JKP Consulting LLC | | | County | | | | | | | |
| Your Address | | | | | State | | Texas | | | | | |
| City, State, Zip Code | | | | | | | | | | | | |
| Date | AFE # | Well Name | Other Info (Optional) | Day Rate | Per Diem | Lodging | Phone | Miles | Rate | Mileage | Misc. | Daily Total |
| 1-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 2-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 3-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 4-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 5-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 6-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 7-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 8-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 9-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 10-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 11-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 12-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 13-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 14-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 15-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |
| 16-Oct | 119100, 119130, 119140 | Minis 1 Fed Com WCA 10H, Minis 1 Fed Com 3BS 6H, Minis 1 Fed Com WCA 15H | | 1,668.50 | | | | | | | | 1,668.50 |

Ex. 3. Pogue's invoices provide evidence of a Chisholm policy that robs Day Rate Workers of significant overtime premiums that they are entitled to under the law. *See generally,* Ex. 3.

Despite the fact that this Court should not consider any merits-based arguments at this juncture, Pogue anticipates that Chisholm will attempt to argue that Pogue and the Day Rate Workers were independent contractors to whom the FLSA does not apply as a basis for its request the Court deny this Motion. At the current stage, this would be incorrect. Furthermore, Chisholm's treatment

of all Day Rate Workers as independent contractors, regardless of job titles, staffing companies, and job duties furthers the argument that they were similarly situated.

> 1. <u>Chisholm consultants had similar job duties and pay, and they share a common employment experience.</u>

Chisholm's Day Rate Workers all share a common employment experience. While treating its Day Rate Workers as employees, Chisholm required them to work anywhere from 60 to 84 hours each week—well in excess of a 40-hour workweek. Ex. 1, Pogue Decl., at ¶ 12; Ex. 2, Kepner Decl., at ¶ 12. Nevertheless, Chisholm paid each of them a day rate with no overtime pay for hours in excess of 40 each week. Ex. 1 at ¶¶ 9, 12, 19-20; Ex. 2 at ¶¶ 9, 12, 20-21.

> 2. <u>Chisholm directed, controlled, and supervised its Day Rate Workers.</u>

Chisholm maintained control of all aspects of its Day Rate Workers' work. Ex. 1 at ¶¶ 5, 6, 13-16; Ex. 2 at ¶¶ 5, 6, 13-17. Chisholm assigned its Day Rate Workers to specific locations and dictated the hours that they would work. *Id.* Chisholm's Day Rate Workers regularly report to supervisors at Chisholm. *Id.*

> 3. <u>Chisholm's Day Rate Workers did not risk their own investments or have any opportunity for profit or loss from Chisholm's operations.</u>

Chisholm's Day Rate Workers made no significant monetary investment to do their work and were not held financially responsible for downtime. Ex. 1, Pogue Decl., at ¶ 17, 18; Ex. 2, Kepner Decl., at ¶ 18. Chisholm provided the oilfield equipment the Day Rate Workers worked on. **Ex. C**, Pogue Decl., at ¶ 18; **Ex. D**, Kepner Decl., at ¶ 18, 19. Day Rate Workers relied on Chisholm to provide them work, and the amount they made was dependent solely on the number of days they worked. Ex. 1, Pogue Decl., at ¶ 17; Ex. 2, Kepner Decl., at ¶ 18; Ex. 3.

     4.     <u>Chisholm's Day Rate Workers did not require specialized training or unique skill.</u>

Chisholm's Day Rate Workers did not require unique skill, a degree, or experience to perform their job duties. Ex. 1, Pogue Decl., at ¶ 15; Ex. 2, Kepner Decl., at ¶ 16. Day Rate Workers' jobs involved observing drilling operations on the rig and ensuring that the team is following safety protocol. Ex. 1, Pogue Decl., at ¶ 4; Ex. 2, Kepner Decl., at ¶ 4. Day Rate Workers had no input into the creation or modification of their job duties and were not empowered with any independent judgment or discretion to deviate from Chisholm's directives. Ex. 1, Pogue Decl., at ¶ 16; Ex. 2, Kepner Decl., at ¶ 17.

**C.**     **ARGUMENT & AUTHORITIES**

     1.     <u>Conditional Certification of the FLSA collective is Appropriate Because the Class is "Similarly Situated."</u>

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under FLSA section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996).

In the instant case, Pogue and the Putative Class Members are similarly situated because they all: (1) received a flat day rate for each day worked, regardless of the hours worked; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed to work for Chisholm; (4) were all employees of Chisholm that it mischaracterized as independent contractors; (5) were never guaranteed a salary; and (6) all performed work for Chisholm in the oilfield. *See generally*, Doc. 22; Ex. 1; Ex. 2; Ex. 3.

Unlike a class action pursuant to Fed. R. Civ. P. 23, an employee in a collective action brought under FLSA § 216(b) is not a class member until he or she affirmatively opts-in to the collective action. 29 U.S.C. § 216(b). Thus, until similarly situated employees file consents to opt-in to this action, the statute of limitations continues to run against them on a daily basis. Therefore, it is critical that similarly situated employees are provided notice and an opportunity to opt-in as soon as possible, before their claims are reduced or extinguished by the passage of time.

       2.     <u>Courts Within **this** Circuit use a Two-Stage Approach for Class Certification.</u>

Courts in this Circuit use a two-step method to assess whether to certify a collective action. *See Thiessen,* 267 F.3d at 1105; *Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *2 (D.N.M. Nov. 19, 2020) (collecting cases). In *Thiessen*, the Tenth Circuit considered the conditional certification standards applicable to the ADEA, which are borrowed from the FLSA's opt-in class mechanism. The Tenth Circuit determined that the use of a two-step process for determining whether individuals were similarly situated was the "best approach" to determine if individuals were similarly situated for conditional certification purposes. 267 F.3d at 1105.

The two-step approach has since been applied to numerous FLSA actions in this Circuit and District. *See e.g., Valencia v. Armada Skilled Home Care of NM, LLC*, No. CV 18-1071 KG/JFR, 2020 WL 2768977, at *2 (D.N.M. May 28, 2020); *LeBlanc v. Halliburton Co.*, Civ. No. 17-0718 KG-GJF, 2018 WL 3999567, at *2 (D.N.M. Aug. 21, 2018); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1310-11 (D.N.M. 2017) *May v. E & J Well Service, Inc.*, No. 14–cv–00121–RBJ, 2014 WL 2922655, at *1-2 (D. Colo. Jun. 27, 2014); *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F.Supp.2d 1089, 1092 (D. Colo. 2005); *see also Lewis v. GEO Group, Inc.*, No. CIV-08-881-M, 2009 WL 3763821, at *1 (W.D. Okla. Nov. 9, 2009) ("The widely accepted procedure for conditional class certification under FLSA's opt-in class

mechanism employs an undefined 'similarly situated' standard, rather than the class action standards of Federal Rule of Civil Procedure 23.").

In the first stage, doing other than deciding whether notice should be issued (which doesn't require substantial allegations that the putative class members were together the victims of a single decision, policy, or plan) would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann- La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. Jan. 5, 1988) ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.' "). It is important to note that the plaintiffs' claims and positions need not be identical to the potential opt-ins', only similar. *Grayson*, 79 F.3d at 1096. "At this initial 'notice' stage for conditional certification, a 'court may consider several factors ... including whether the potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct.'" *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *3 (D.N.M. Nov. 6, 2020) (citing *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433 (D.N.M. 2018)).

Furthermore, the plaintiff need only demonstrate "a reasonable basis" that a class of similarly situated persons exists. *Grayson*, 79 F.3d at 1097; *see also, e.g., Ball v. Dynamic Support Servs., LC*, No. 4:15-CV-036, 2015 WL 13751963 (D.N.D. Oct. 13, 2015) ("The requirement of a plaintiff attempting to conditionally certify a class of plaintiffs under the FLSA is 'merely [to] provide some factual basis from which the court can determine if similarly situated plaintiffs exist.'" (quoting *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 892 (N.D. Iowa 2008) (brackets in original)); *Halle v. Galliano Marine Svc., LLC*, No. 15-5648, 2018 WL 1757343, at *3 (E.D. La. Apr. 12, 2018) (ordering conditional certification with one declaration in support).

In the second stage, "[o]nce the class members have been identified, the Court may reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Hembree v. 3-D Oil Field Servs. & Rental, L.L.C.*, No. CIV 20-00343 RB/CG, 2020 WL 7642862, at *2 (D.N.M. Dec. 23, 2020) (citing *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008)).

Ultimately, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling*, 118 F.R.D. at 406. Once the notice and opt- in period is complete, the court will have the benefit of knowing the actual makeup of the class. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989).

3.    <u>Pogue Has Surpassed the Minimum Burden and Made The Required Showing That Day Rate Workers At Chisholm Are Similarly Situated for Certification Purposes.</u>

In order for notice to be issued, some evidence of "a single decision, policy, or plan" should be presented. *Thiessen*, 267 F.3d at 1102–03. "The court must determine whether the named and potential plaintiffs are "similarly situated" based on the allegations in the complaint, which may be supported by sworn statements. *Deakin*, 328 F.R.D. at 432 (citing *Landry v. Swire Oilfield Services, L.L.C.*, 252 F.Supp.3d 1079, 1114–15 (D.N.M. 2017)). Pogue has made a strong preliminary showing, through his well-pleaded Complaint, declarations, and documents in his possession that Chisholm subjected him and all other Day Rate Workers to the same compensation policies; and that these policies violated the FLSA. Pogue has shown enough to demonstrate a reasonable inference that he and other Day Rate Workers were not paid for their overtime hours.

Here, Pogue is similarly situated to the Day Rate Workers because they were all subject to a common, illegal compensation plan. Specifically, Pogue and the Day Rate Workers are similarly

situated because Chisholm misclassified its oilfield workers as independent contractors and paid them a flat daily rate for all hours worked, regardless of their job titles or staffing company. *See* Ex. 1, Pogue Decl., at ¶ 19; Ex. 2, Kepner Decl., at ¶ 20. This type of pay scheme has been recognized as a violation of the FLSA.

Pogue anticipates that Chisholm will argue that this case is inappropriate for certification by suggesting the inquiry is inherently "individualized" or "fact-intensive." But in evaluating conditional certification, "[i]t is well established that individual questions . . . will not defeat class certification ...." *Foster v. Nova Hardbanding, LLC,* No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *4 (D.N.M. Apr. 20, 2016) (quoting *Brown v. Money Tree Mortg., Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004)). Questions of management issues are for the second stage analysis after discovery. *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006)).

The argument anticipated from Chisholm is undermined by the fact that Chisholm classified all of the Day Rate Workers as independent contractors in one fell swoop, without examining each individual's job duties, pay, staffing company, or other employment provisions. Accordingly, all the Day Rate Workers' overtime claims are based on a "single decision, policy, or plan"—that Chisholm unlawfully misclassified consultants as independent contractors in an effort to avoid paying them overtime, in violation of the FLSA. *Thiessen*, 267 F.3d at 1102–03; *see also Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

8

4.      Merits Based Arguments are not Relevant When Deciding Conditional Certification.

This Could should not deny conditional certification solely based on a disagreement about the merits of Pogue's claims. At this stage, "the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims." *Aguilar v. Mgt. & Training Corp.*, CV 16-050 WJ/GJF, 2017 WL 4277139, at *3 (D.N.M. Jan. 27, 2017) (Fourrat, M.J.); *Kerr*, 2020 WL 6799017, at *4 (rejecting argument that "individualized compensation decisions preclude any single decision, policy, or plan applicable to all contractors" as going to the merits)."These types of inquiries are more appropriately considered in a motion to decertify the class once discovery has been completed." *Ball v. Dynamic Support Servs., LC*, 2015 WL 13751963, at *3.

Chisholm will likely also argue that the evaluation of liability and damages would require inherently individualized inquiries. But "[w]ithout a complete record post-discovery, the Court cannot definitely pass judgment on [such] arguments." *Ball*, 2015 WL 13751963, at *3. Chisholm's likely arguments regarding the class members' titles and supervisory status apply more to a merits-based determination, which is not appropriate at this conditional certification stage. *See Olivas v. C & S Oilfield Servs., LLC,* 349 F. Supp. 3d 1092, 1111 (D.N.M. 2018) ("[T]hat proposed class members held different job titles does not mean that they are not similarly situated."); *Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 2005 WL 1799208, at *4 (D. Kan.) (holding variations in employees' specific job duties did not defeat conditional certification because they shared general duties and injuries arose from employer's failure to pay overtime).

The bottom line is that the merits of Pogue's claims and any anticipated defenses raised by Chisholm can be resolved on a class-wide basis. For example, Pogue anticipates that Chisholm will plead its decisions were undertaken in good faith and were not committed willfully or with reckless disregard of the FLSA. By pleading defenses applicable to all Day Rate Workers as a class, Chisholm

9

will be acknowledging that these issues can be determined as issues common to the class. *See Gee v. Suntrust Mortgage, Inc.*, No. C-10- 1509-RS, 2011 WL 722111, at *3 (N.D. Cal. Feb. 18, 2011) (holding "[u]niform exemption classifications" and other "standardized corporate policies and procedures" represent relevant factors in evaluating class certification, as they may indicate employees' job duties are similar).

     5.    <u>Independent Contractor Misclassification Cases are Well-Suited for Certification.</u>

    Courts in this Circuit have routinely found allegations of misclassification as independent contractors to be a common policy or plan for purposes of conditional certification.[1] Courts throughout the nation have reached the same conclusion.[2]

---

[1] *E.g.*, *LeBlanc*, 2018 WL 3999567, at *2 (all independent contractor directional drillers nationwide); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017) (all drilling consultants nationwide); *Geiger v. Z-Ultimate Self Defense Studios LLC*, C.A. No. 14-cv- 00240-REB-NW, 2015 WL 1090181, at *3 (D. Colo. Mar. 10, 2015) (self-defense class instructors); *May v. E & J Well Srvc., Inc.* C.A. No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. Jun. 27, 2014) (flow testers); *McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at *4-5 (D. Kan. Aug. 27, 2009) (loan officers); *Wood v. Sundance Prof. Svcs., LLC*, No. 08-2391-JAR, 2009 WL 484446, at *2 (D. Kan. Feb. 26, 2009) (construction workers); *Lewis v. ASAP Land Exp., Inc.*, C.A. No. 07-2226-KHV, 2008 WL 2152049, at *1 (D. Kan. May 21, 2008) (delivery drivers).

[2] *E.g.*, *Jackson v. Synergies3 Tec Svcs., LLC*, No. 4:19-cv-00178-SRC, 2019 WL 5579514, at *7 (E.D. Mo. Oct. 29, 2019) (all satellite installation technicians); *Fontenot v. McNeil Industrial, Inc.*, No. 4:17-cv-3113, 2018 WL 5724863, at *4 (D. Neb. Sept. 19, 2018) (all welders), *rep. and rec. adopted by* 2018 WL 5724043 (D. Neb. Nov. 1, 2018); *Hernandez v. Apache Corp.*, No. 4:16- cv-03454, Min. Entry granting Motion to Certify Class (S.D. Tex. Sept. 8, 2017) (all day rate independent contractors, regardless of position); *Verma v. 3001 Castor, Inc.*, No. CV 13-3034, 2016 WL 6962522, at *6 (E.D. Pa. Nov. 29, 2016) (exotic dancers); *Hodzic v. Fedex Package Sys., Inc.*, No. 15-956, 2016 WL 6248078, at *9 (W.D. Pa. Oct. 26, 2016) (delivery drivers); *Parrish v. Premier Directional Drilling, L.P.*, No. 5:16-cv-00417-DAE, ECF No. 28, at *15 (W.D. Tex. Oct. 14, 2016), *adopted by* ECF No. 30 (W.D. Tex. Nov. 7, 2016) (all day rate independent contractor directional drillers); *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1025 (S.D. Iowa 2016) (all delivery drivers across several states); *Ornelas v. Hooper Homes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868, at *5 (D.N.J. Dec. 12, 2014) (paramedical exam providers); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330-RP, 2015 WL 7075971, at *6 (W.D. Tex. Oct. 5, 2015) (all day-rate independent contractors, regardless of job position); *Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015) (centrifuge technicians); *Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) (solids control technicians).

6.      Pogue can Proceed Collectively.

Chisholm will contend this Court should deny conditional certification because Pogue or the Day Rate Workers agreed to arbitrate with it (pursuant to his agreement to arbitrate with Pogue) and that they waived the right to bring any collective action claims. Critically, this Court already rejected Chisholm's attempts to compel Pogue to arbitrate his claims against Chisholm pursuant to his agreement with his staffing company; and prevent Pogue from bringing claims on behalf of other similarly situated workers against Chisholm. Doc. 55. The bottom line is that the merits of Pogue's claims and any anticipated defenses raised by Chisholm can be resolved on a class-wide basis against it.

7.      Court-Authorized Notice is Appropriate in this Case.

In addition to an order conditionally certifying this collective action, Pogue respectfully requests the Court authorized notice be sent by mail, email, and text message to all Day Rate Workers who work or have worked at Chisholm from June 15, 2017 to the present, and set the notice period at 60 days. To facilitate the Notice process and preserve the rights of those who have not yet opted-in, Pogue proposes the attached Notice and Consent Form for approval by the Court. Pogue seeks to notify the following group of putative class members:

> **All oilfield workers employed by or performing work on behalf of Chisholm who were classified as independent contractors and paid a day-rate without overtime during the three years preceding the filing of Plaintiff's Original Complaint.** (the Day-Rate Workers).

While the FLSA does not expressly require courts to authorize the sending of notice to potential opt-in plaintiffs, district courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Hoffman-LaRoche*, 493 U.S. at 169.

11

These methods of distribution are routinely approved by this Court and other courts, and should be approved here.  Email notice has become an accepted—and even embraced—form of notice in FLSA collective actions. *See Landry*, 252 F.Supp.3d at 1128–31 (granting notice by mail, email and text where employees were dispersed to various sites around the country and were away from their homes and addresses of record for weeks or months at a time); *Calvillo*, 267 F. Supp. 3d at 1315; *Valencia*, 2020 WL 2768977, at *4 (same).

Reminder notices are also appropriate. *See Landry*, 252 F. Supp. 3d at 1086 ("reminder [notices] will serve the FLSA's remedial purpose . . . especially in light of the potential Plaintiffs' remote locations at well sites around the country"); *Valencia,* 2020 WL 2768977, at *4 (permitting plaintiffs to send a reminder notice 20 days before the end of the opt in period); *Guarriello v. Asnani*, No. 1:19-CV-01184-WJ-CG, 2021 WL 406437, at *7 (D.N.M. Feb. 5, 2021) (permitting plaintiffs to send a reminder notice 45 days before the end of the opt in period).

Further, we submit that text message notice is appropriate here because the nature of Chisholm's work requires Day Rate Workers to be away from their homes for long periods of time. Ex. 1 at¶  22; Ex. 2, at ¶  23. "[I]n the world of 20[21], email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus [ ] using email and texts to notify potential class members is entirely appropriate." *Vega v. Point Security, LLC*, No. A-17- CV-049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017), *rpt. and rec. adopted* 2017 WL 8774233 (Oct. 12, 2017); *see also Landry*, 252 F. Supp. at 1130. "[N]otice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Kerr*, 2020 WL 6799017, at *6.

Attached as Exhibit 4 is Pogue's proposed Judicial Notice, proposed Email Notice, and Pogue's proposed Text Message Notice.  Accordingly, Pogue respectfully requests that these forms of

12

notice be adopted.

8.      A Three-Year Notice Period is Appropriate.

The FLSA expressly permits a three-year statute of limitations to remedy willful violations of

the Act. *See* 29 U.S.C. § 255(a). This Court routinely approves a three-year notice period. *Zamora v. Sw.*

*Glass & Glazing, Inc.*, No. 1:15-CV-01041-RJ, 2016 WL 10516172, at *3, FN 2 (D.N.M. Aug. 23, 2016)

(permitting plaintiff to send notice to workers employed by defendant up to three years from the date

the notice is issued); *Valencia*, 2020 WL 2768977, at *4 (D.N.M. May 28, 2020); *Landry* 252 F. Supp.

at 1131 (conditionally certifying a class of all of defendant's current and former operators during the

last three years).

9.      Expedited Disclosure of Names and Contact Information is Imperative.

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit,

Pogue requires discovery of the names and contact information for those individuals. Because the

substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely

notice concerning the pendency of the collective action," the FLSA authorizes the Court to manage

the collective action, including the power to authorize notice and monitor preparation and distribution

of the notice. *Hoffman-LaRoche,* 493 U.S. 165 at 169-73. "Court authorization of notice serves the

legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite

disposition of the action." *Id.* at 172. In short, the FLSA empowers and encourages this Court to issue

notice to all potential plaintiffs, and it should do so in this case.

Accordingly, Pogue respectfully requests that the Court direct Chisholm to produce a

computer-readable list of the names, last known addresses, social security numbers, telephone

numbers, e-mail addresses, work locations, and dates of employment for all persons employed by

Chisholm as Day Rate Workers as defined *supra. See Pruess,*, 2020 WL 6544243, at *8 (directing

defendant "to produce the names, job titles, start and end dates, last known addresses, personal e-mail addresses, and telephone numbers for all salaried 'health plan side' CCE employees over the last three years"); *Landry* 252 F. Supp. at 1086 (ordering defendant to produce "the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), and dates of employment for all the class members" within ten days); *Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2013 WL 11336856, at *9 (D.N.M. Sept. 24, 2013) (ordering defendant to produce to plaintiffs a list of the names and last known addresses (in electronic format, if available) of all current and former employees who worked for the City"). In an effort to alleviate privacy concerns, Pogue will request social security numbers only for those individuals whose consent forms are returned undeliverable and enter into a confidentiality agreement with Chisholm regarding social security numbers.

10.     Equitable Tolling is Appropriate.

Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *Pruess*, 2020 WL 6544243, at *8. . Rather, the statute of limitations continues to run on each individual's claim until they file their written consent to join the action with the court. *Id.*; *see also* 29 U.S.C. § 216(b) ("No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the notice process does not stop the statute of limitations, it does, at a minimum, notify the putative collective class members of the case, and that the statute of limitations is running on their claims. *Hoffmann-LaRoche*, 493 U.S. at 170.

14

Should the Court grant the instant motion, Pogue respectfully requests that, to avoid inequitable circumstances, the statute of limitations be tolled until such time that they are able to send notice to potential opt-in plaintiffs. The Tenth Circuit has not addressed whether equitable tolling is warranted under the FLSA. *Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2014 WL 11497810, at *9 (D.N.M. June 26, 2014) (explaining that "Tenth Circuit has not answered the question whether tolling is appropriate during the period in which a court considers a motion to certify a class"). However, "[t]he majority of courts have held that equitable tolling is an available remedy under the FLSA, provided that the circumstances warrant application of the doctrine." *Aguilar*, 2017 WL 4277139, at *11. This Court specifically has previously held that "equitable tolling is an available remedy under the FLSA." *Pruess*, 2020 WL 6544243, at *9 (citing *Felps v. Mewbourne Oil Co., Inc.,* 460 F. Supp. 3d 1232, 1239 (D.N.M. 2020)); *Aguilar*, 2017 WL 4277139, at *11 (explaining that "majority of courts have held that equitable tolling is an available remedy under the FLSA"); *Abrams*, 2014 WL 11497810, at *12 (holding that "doctrine of equitable tolling is available to [p]laintiffs to toll the claims of the putative class members").

## D.   CONCLUSION

For the reasons stated herein, Pogue respectfully requests that the Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) order Chisholm to provide the names, last known addresses, telephone numbers, e-mail addresses (business and personal), work locations, and dates of employment of all putative class members; and (3) equitably toll the statute of limitations for potential opt-in plaintiffs.

Respectfully submitted,

By: _/s/ Richard M. Schreiber_
    Michael A. Josephson
    State Bar No. 24014780
    Andrew W. Dunlap
    State Bar No. 24078444
    Richard M. Schreiber
    State Bar No. 24056278
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

## <u>CERTIFICATE OF CONFERENCE</u>

    I conferred with counsel for Chisholm on multiple occasions (telephonically and via email), including preparation of multiple joint status reports, and Chisholm has been opposed to the relief sought in this Motion since the onset of this litigation.

                                           _/s/ Richard M. Schreiber_
                                         **Richard M. Schreiber**

## <u>CERTIFICATE OF SERVICE</u>

On this day I served all Parties of record via ECF.


<u>*/s/ Richard M. Schreiber*</u>
**Richard M. Schreiber**