UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| KELLY POGUE, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| | § | Case No. 2:20-cv-00580-KWR-KK |
| v. | § § | |
| CHISHOLM ENERGY OPERATING, LLC d/b/a CEH ENERGY OPERATING, LLC | § § § | |
| Defendant. | § § | |

## DEFENDANT CHISHOLM ENERGY OPERATING, LLC'S MOTION TO COMPEL ARBITRATION

Defendant Chisholm Energy Operating, LLC ("**Chisholm**") moves this honorable Court to compel arbitration of Opt-In Plaintiff Darrell Kepner's claims ("**Kepner**"), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*  Kepner entered into a valid and enforceable agreement to arbitrate the very claims brought against Chisholm on an individual basis, and he waived his right to participate in a class or collective action.  Therefore, Chisholm respectfully asks the Court to compel Opt-In Plaintiff Kepner's claims to arbitration on an individual basis.

## I.     INTRODUCTION

Kepner and Ally Consulting, LLC[1] executed a Mutual Agreement to Arbitrate (the "**Arbitration Agreement**").  The Arbitration Agreement covers each of the claims asserted in this action, and none of such claims are subject to any exceptions from arbitrability.  More importantly, even though Chisholm was not a signatory to the Arbitration Agreement, pursuant to well-settled authority, including this Court's Order, Chisholm may enforce the Arbitration Agreement because **Chisholm is a third-party beneficiary per the <u>express terms</u> of the Arbitration Agreement.**

---

[1] Ally Consulting is a wholly-owned subsidiary of Workrise Technologies Inc. (Ex. A, Rhinehart Decl.) Ally Consulting and Workrise Technologies are referred to herein as "**Ally Consulting**".

Moreover, the Arbitration Agreement at issue here broadly delegates issues of arbitrability to the arbitrator.  The Supreme Court of the United States has made clear that such broad delegations include issues concerning whether a non-signatory may enforce an arbitration agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  This is especially true where, here, the Arbitration Agreement mention arbitration against and provides that Chisholm is a third-party beneficiary of the Arbitration Agreement.  Therefore, based upon compelling precedent and the express terms of the Arbitration Agreement, an arbitrator should decide the question of whether Chisholm may enforce the Arbitration Agreement Kepner signed with Ally Consulting. *Id.*

Accordingly, for these reasons more fully explained *infra*, there is overwhelming support for compelling Kepner's claims to arbitration.

## II.      NATURE AND STAGE OF PROCEEDINGS

Plaintiff Kelly Pogue brings this putative class action under the Fair Labor Standards Act ("**FLSA**") and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* ("**NMMWA**") (Doc. No. 22, First Am. Compl. ¶ 1.)  Plaintiff Pogue claims Chisholm classified him and other workers as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation. (*Id.* ¶ 4.)  Plaintiff Pogue filed a Notice of Filing Notice of Consent, attaching a consent form purportedly signed by Kepner. (Doc. Nos. 5, 5-1.)  On August 24, 2020, Chisholm filed its motion to dismiss and motion to compel arbitration with respect to Plaintiff Pogue. (Doc. Nos. 31–33.)  On March 16, 2021, the Court denied the motions.  (Doc. No. 55 (the "**Order**").)  With respect to Chisholm's motion to compel, the Court denied the motion in part because there was nothing in Plaintiff Pogue's "arbitration provision indicating that the parties intended that [Chisholm] would be a beneficiary of the arbitration provision or have the right to enforce the arbitration provision." (*Id.* at 16.)  Thereafter, the Court held a telephonic Initial Scheduling Conference on April 14, 2021. (Doc. No. 56.)  During the Initial Scheduling Conference, the Court ordered Plaintiff Pogue

to file his motion for conditional certification within 45 days.  Counsel for Chisholm also advised the Court that Chisholm intended to file a motion to compel arbitration with respect to Opt-In Plaintiff Kepner following this Court's Order, because unlike Plaintiff Pogue's arbitration agreement, Kepner's Arbitration Agreement expressly contains a third-party beneficiary provision.  Plaintiff Pogue filed his Motion for Condition Certification on June 1, 2021. (Doc. No. 64.)

### III.   FACTUAL BACKGROUND

A.   KEPNER'S ARBITRATION AGREEMENT WITH ALLY CONSULTING.

Kepner is a highly-paid, highly-skilled gas and oilfield consultant working through Ally Consulting, which serves as a staffing company to place consultants, like Kepner, with operators and services providers in the oil and gas industry, and who are clients of Ally Consulting.  One such client is Chisholm.  (*See* **Ex. A**, Rhinehart Decl., ¶¶ 3–5, 7; *see also* **Ex. A-1**, Arbitration Agreement § 17 ("The Parties expressly acknowledge and agree that the Company serves as a staffing company to place You with operators and services providers in the oil and gas industry, who are the clients of the Company ('Clients').").)

On or around December 30, 2018, Kepner executed a Mutual Agreement to Arbitrate with Ally Consulting.  (*See* **Ex. A**, Rhinehart Decl., ¶ 8; *see also* **Ex. A-1**; **Ex. A-2**.)  Kepner provided his "services as an independent contractor."  (**Ex. A-1**, Arbitration Agreement § 15; *see also* **Ex. A**, Rhinehart Decl., ¶¶ 7, 13; **Ex. A-2**.)  The Arbitration Agreement states in relevant part:

> ***Intent of the Agreement.*** You and the Company expressly intend and agree that this Agreement will govern the resolution of all disputes, claims, and any other matters in question ***arising out of or relating*** to the Parties' working relationship or termination of that relationship.  The Parties shall resolve ***all disputes arising out of or relating to*** the Parties' relationship or termination of that relationship exclusively in accordance with the provisions of this Agreement.

(**Ex. A-1**, Arbitration Agreement § 2 (emphasis added); *see also* **Ex. A**, Rhinehart Decl., ¶ 11.)

> ***Mandatory Arbitration.***  The Company and You agree that **any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship, whether based in** contract, tort, **federal, state,** or

municipal **statute**, fraud, misrepresentation, **or any other legal theory**, shall be submitted to binding arbitration before a single arbitrator to be held in Denver, Colorado and administered by the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules (the "AAA Rules") applicable at the time the arbitration is commenced. . . . **Except as otherwise expressly provided in this Agreement, the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of dispute between the Parties.** The Arbitrator's decision shall be final and binding on the Company and You.

(**Ex. A-1**, Arbitration Agreement § 3 (emphasis added).)

> _**Covered Claims.**_ This Agreement to arbitrate covers **all grievances, disputes, claims, or causes of action (collectively, "claims") that otherwise could be brought in a federal, state, or local court or agency under applicable federal, state, or local laws, arising out of or relating to Your employment with the Company, or** the termination of **Your performing services on behalf of the Company, or for any other reasons, . . . . The claims covered by this Agreement include, but are not limited to, . . . claims for wages or other compensation due . . .; claims for violation of any federal, state, local, or other governmental law, statute, regulation, or ordinance, including, but not limited to, all claims arising under . . . the Fair Labor Standards Act, as amended; claims for classification or misclassification of independent contractors or employees; . . . and claims that may arise under the laws of any other applicable state or local government.**

(**Ex. A-1**, Arbitration Agreement § 4 (emphasis added); _see also_ **Ex. A**, Rhinehart Decl., ¶ 11.)

The Arbitration Agreement also expressly <u>waived</u> any right to participate in a class or collective action:

> Except as otherwise required under applicable law, You and the Company expressly intend and agree that: (a) **class action and representative action procedures shall not be asserted**, nor will they apply, in any arbitration pursuant to this Agreement; **(b) each Party will not assert class action or representative action claims against the other in arbitration or otherwise;** and **(c) You and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. Further, You and the Company expressly intend and agree that any claims by You will not be joined, consolidated, or heard together with claims of any other employee, independent contractor or other person. Notwithstanding anything to the contrary in the AAA Rules, and the general grant of authority to the arbitrator in paragraph 3 of the power to determine issues of arbitrability, the arbitrator shall have no jurisdiction or authority to compel any class or collective claim, to consolidate different arbitration proceedings, or to join any other party to an arbitration between the Company and You.**

71576449v.1

(**Ex. A-1**, Arbitration Agreement § 6.a (emphasis added); *see also* **Ex. A**, Rhinehart Decl., ¶ 12.)

More importantly, the parties agreed that Ally Consulting's clients, including Chisholm, are third party beneficiaries of the Arbitration Agreement:

> ***Third Party Beneficiaries.*** **The Parties expressly acknowledge and agree that the Company serves as a staffing company to place You with operators and services providers in the oil and gas industry, who are the clients of the Company ("Clients").** <u>**Clients shall be third-party beneficiaries of this Agreement, and are entitled to the restrictions and limitations contained in this Agreement, including those contained above in Section 6.**</u> Clients directly affected by any claims or disputes under this Agreement may join as a party to arbitration, provided, and on the express condition, such Client agrees in writing to the terms of this Agreement and agrees to be bound by the determinations and award of the arbitrator.

(**Ex. A-1**, Arbitration Agreement § 17 (emphasis added) *see also* **Ex. A**, Rhinehart Decl., ¶¶ 9–10.)

## IV.    ARGUMENT AND CITATION OF AUTHORITY

Congress enacted the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1–14, to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).[2] The Supreme Court has described the FAA "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility*, 563 U.S. at 339 (internal quotation marks and citations omitted). Consistent with these principles, the Court has stated that "courts must place arbitration agreements on equal footing with other contracts," *id.*, and "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Non-signatories to an arbitration agreement may also compel arbitration, *inter alia*, as a third-party beneficiary. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

---

[2] The FAA declares that "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

This Motion should be granted for the following reasons: (A) the Arbitration Agreement is valid and enforceable; (B) all questions of arbitrability should be decided by the arbitrator; (C) Chisholm may enforce the Arbitration Agreement as a third-party beneficiary; and (D) the Arbitration Agreement covers Kepner's claims.

## A.   A VALID ARBITRATION AGREEMENT EXISTS.

It cannot be credibly disputed that the Arbitration Agreement is valid and enforceable, at least with respect to Kepner and Ally Consulting. (*See* **Ex. A**, Rhinehart Decl., ¶ 8; *see also* **Ex. A-1**.)  In New Mexico,[3] for a contract to be legally valid and enforceable it "must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996 NMSC 29, 121 N.M. 728, 731, 918 P.2d 7, 10 (1996) (quotations and citation omitted); *see also Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) ("The elements of a contract are offer, acceptance, and consideration.").  Here, it is clear that all of these elements have been met and the Arbitration Agreement is valid and enforceable under New Mexico contract law.

Accordingly, as the Arbitration Agreement is valid, the only question is whether Chisholm, as a non-signatory, may enforce its provisions vis-à-vis Kepner.

## B.   THE GATEWAY ISSUE OF WHETHER CHISHOLM CAN ENFORCE THE ARBITRATION AGREEMENT MUST BE DECIDED BY THE ARBITRATOR, ESPECIALLY WHEN THE AGREEMENT MENTIONS ARBITRATION AGAINST AND PROVIDES THAT CHISHOLM IS A THIRD-PARTY BENEFICIARY OF THE ARBITRATION AGREEMENT.

The arbitrator, in the first instance, should answer whether Chisholm may enforce the Arbitration Agreement.  The FAA allows parties to "agree to have an arbitrator decide not only the

---

[3] Under a choice of law analysis, the forum's law should apply, where the Arbitration Agreement contains no choice of law provision, as all the alleged underlying conduct and alleged unlawful conduct occurred in New Mexico. *See Bock v. Salt Creek Midstream LLC*, No. 19-1163 WJ/GJF, 2020 U.S. Dist. LEXIS 124531 (D.N.M. July 15, 2020).  Nevertheless, even if this Court were to find that Colorado law applies, Chisholm may still compel arbitration because, as this Court has held, under third-party beneficiary analysis, whether the Court were to apply Colorado or New Mexico law, the result is the same.  (Doc. No. 55 at 10–11, 17.)

merits of a particular dispute but also 'gateway questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

> Here, the Arbitration Agreement delegates any question of arbitrability to the arbitrator:

> The Company and You agree that any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship, whether based in contract, tort, federal, state, or municipal statute, fraud, misrepresentation, or any other legal theory, **shall be submitted to binding arbitration before a single arbitrator to be held in Denver, Colorado and administered by the American Arbitration Association ("AAA") in accordance with the AAA Employment Arbitration Rules** (the "AAA Rules") applicable at the time the arbitration is commenced.

(**Ex. A-1**, Arbitration Agreement § 3 (emphasis added).) The AAA Employment Arbitration Rules, in turn, delegate to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rules and Mediation Procedures, R. 6(a).[4] The language of the Arbitration Agreement, including the incorporation of the AAA rules, constitutes "clear and unmistakable" evidence of intent to delegate authority to the arbitrators to decide all questions of arbitrability, including its validity and scope. *Dish Network LLC v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1198 (D.N.M. 2018); *Border Area Mental Health, Inc. v. United Behavioral Health, Inc.*, 303 F. Supp. 3d 1154, 1159 (D.N.M. 2018). Indeed "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes

---

[4] *Available at* https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf.

clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Richardson v. Coverall N. Am., Inc.*, No. 18-3393, 2020 WL 2028523, at \*2 n.2 (3d Cir. Apr. 28, 2020) (emphasis added); *see also Ins. Newsnet.com, Inc. v. Pardine*, No. 11-cv-286, 2011 WL 3423081, \*3 (M.D. Pa. August 4, 2011) ("The prevailing rule across jurisdictions is that incorporation by reference of rules granting the arbitrator the authority to decide questions of arbitrability—especially the [R]ules—is clear and unmistakable evidence that the parties agreed to submit arbitrability questions to the arbitrators.").[5]

However, if that is not clear and unmistakable enough, the Arbitration Agreement further makes clear that:

> Except as otherwise expressly provided in this Agreement, **the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of dispute** between the Parties.

(**Ex. A-1**, Arbitration Agreement § 3 (emphasis added)); *see Santich v. VCG Holding Corp.*, No. 17-cv-00631-RM-MEH, 2017 U.S. Dist. LEXIS 156984, at \*11–13 (D. Colo. Sept. 26, 2017) (holding that it was clear and unmistakable intent to delegate arbitrability to the arbitrator where the clause provided

**"THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY**

---

[5] *See Petrofac, Inc. v. DyMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("[W]e conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 552, 527–28 (4th Cir. 2017); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015); *Felts v. CLK Mgmt.*, 254 P.3d 124, 133–35 (N.M. Ct. App. 2011) (citing cases); *Zabokritsky v. JetSmarter, Inc.*, No. 19-273, 2019 WL 2563738, at \*4 (E.D. Pa. June 20, 2019) ("Here, the parties' agreement and the incorporated AAA Rules commit the threshold question of arbitrability to the arbitrator, not a court."); *Indocarb Corp. v. Madhavan*, No. 2:19-cv-889, 2020 WL 1610734, at \*6–7 (W.D. Pa. Apr. 2, 2020) (finding that it was not plain error to find that the arbitration provision was clearly and unmistakably delegates arbitrability issues to the arbitrator when the provision provided that "any disagreement arising under this Agreement . . . will be resolved by arbitration in accordance with the rules of the [AAA]").

**DISPUTES OVER THE FORMATION, VALIDITY, INTERPRETATION, AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS.**") (emphasis in the original).

Importantly, in the context of third parties, this Court recently held, "an arbitration clause that does not mention arbitration against third parties does not clearly and unmistakably show a plaintiff agreed to arbitrate the arbitrability of claims against a non-signatory." (Doc. No. 55 a 13). **Here, the Arbitration Agreement does just that—the Arbitration Agreement mentions arbitration against third parties, and per the express terms of the Arbitration Agreement, Chisholm, as a client of Ally Consulting, is a third-party beneficiary of the Arbitration Agreement.** Again, the Arbitration Agreement provides: "Clients shall be third-party beneficiaries of this Agreement, and are entitled to the restrictions and limitations contained in this Agreement, including those contained above in Section 6." In turn, Section 6 likewise provides in relevant part:

> Notwithstanding anything to the contrary in the AAA Rules, and the general grant of authority to the arbitrator in paragraph 3 of the power to determine issues of arbitrability, the arbitrator shall have no jurisdiction or authority to compel any class or collective claim, to consolidate different arbitration proceedings, or to join any other party to an arbitration between the Company and You.

(**Ex. A-1**, Arbitration Agreement § 6.a.)

Thus, the broad delegation applies to the question of whether Chisholm, as a non-signatory, may enforce the agreement:

> [T]o adjudicate whether [plaintiff] is bound to arbitration with parties that she alleges are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein, Inc. v. Archer & White Sales, Inc.* There, the Court opined that once the parties have a delegation clause, "a court possesses *no power* to decide the arbitrability issue," *Henry Schein, Inc.*, 139 S. Ct. at 529 (emphasis added), and that "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530. ***Whether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant.*** The parties agreed to delegate such questions to an arbitrator.

*De Angelis v. Icon Entm't Group Inc.*, 364 F. Supp. 3d 787, 796–97 (S.D. Ohio 2019) (internal citations omitted) (emphasis added).   Likewise, in *Robertson v. Enbridge*, the plaintiffs signed an arbitration agreement with a placement firm but sued the entity with whom they were placed (a non-signatory to the arbitration agreement), alleging violations of the FLSA. No. 19-1080, 2020 U.S. Dist. LEXIS 137375, at *2–3 (W.D. Pa. July 31, 2020).   Relying on *Henry Schein, Inc.*, the court held that the issue of whether the non-signatory could enforce the arbitration agreement against the plaintiffs was a threshold issue of arbitrability that had been delegated to the arbitrator:

> Here, there can be no doubt that the Arbitration Agreements between CIS and Optin Plaintiffs bound its signatories, Plaintiffs, to arbitrate any disputes with the Agreements' other signatory, CIS. In their responsive briefs, Plaintiffs do not dispute that they would be compelled to arbitrate with CIS. Instead, Plaintiffs argue that they cannot be compelled to arbitrate with an entity that was not a party to the Arbitration Agreements. . . . **The question here, however, is whether Enbridge's [customer's] ability, as a non-signatory, to enforce the Arbitration Agreements is an issue pertaining to the "interpretation, applicability, [or] enforceability" of the Arbitration Agreements between Plaintiffs and CIS. The answer to that question is yes.**

*Id.* at 8–9 (emphasis added).   Indeed, "courts repeatedly conclude that **whether a _non-party_ to an arbitration agreement can compel arbitration presents a question of an agreement's scope, not its existence.**" *O.N. Equity Sales Co. v. Rahner*, 526 F. Supp. 2d 1195, 1198 n.4 (D. Colo. 2007) (emphasis added) (collecting cases).

Thus, once the Court determines that a valid contract exists and that it contains a clear and unmistakable delegation clause (such as the Arbitration Agreement at issue here), then the remaining question of a non-signatory's ability to *enforce* the agreement is a question of *arbitrability* for the arbitrator.   Accordingly, the Court should compel arbitration and have the arbitrator decide the gateway issue of arbitrability with respect to Chisholm.[6]   The authorities in favor abound. *See, e.g.,*

---

[6] Should the arbitrator decide, at any point, that it lacks authority over certain of Kepner's claims, Kepner may always move to resume such claims before this Court. *See* 9 U.S.C. § 3; *see also Dougherty v. Bridgestone/Firestone, Inc.*, No. CIV 05-603 RB/LCS, 2006 U.S. Dist. LEXIS 116518, at *21–23

*Santich*, 2017 U.S. Dist. LEXIS 156984 at *11–12; *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714–15 (5th Cir. 2017) (holding that delegation of arbitrability applied to non-signatory defendants because the party seeking to avoid arbitration, the plaintiff, was signatory); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) ("Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability."); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (affirming district court decision concluding that signatory to an arbitration agreement must arbitrate dispute against non-signatory because issue of arbitrability itself is subject to a decision by the arbitrator); *Turner v. PillPack, Inc.*, No. 5:18-cv-66, 2019 WL 2314673, at *6 (W.D. Ky. May 30, 2019) (holding that because arbitration agreement delegated issues of arbitrability to arbitrator, if jury found that plaintiff entered into that agreement with non-party, issue of whether plaintiff must arbitrate claims against non-signatory defendant was to be decided by arbitrator); *Riversa v. L-3 Commc'ns Corp.*, No. 8:09-cv-02447, 2010 WL 11629016, at *2 (M.D. Fla. May 24, 2010) (concluding that whether non-signatories "are ultimately entitled to enforce the arbitration clause is a matter of the agreement's continued existence, validity, and scope which must be decided by the arbitrator").

## C.     CHISHOLM IS ENTITLED TO COMPEL ARBITRATION AS AN INTENDED THIRD-PARTY BENEFICIARY.

Even if this Court does decide whether Chisholm may compel Kepner to arbitrate, it should do so because the Arbitration Agreement makes clear that Chisholm is a third party beneficiary to the Arbitration Agreements because the parties explicitly intended that the benefit of the agreement be conferred to it as Ally Consulting's client.  Under New Mexico law, "a third party may be a beneficiary of a contract, and may, as a beneficiary, have enforceable rights against another party to the contract." *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191, 1215 (D.N.M. 2017) (citing

---

(D.N.M. Jan. 11, 2006) (holding judicial efficiency is best served by staying, rather than dismissing proceeding).

*Fleet Mortgage Corp. v. Schuster*, 1991-NMSC-046, ¶ 4, 811 P.2d at 82); *see also Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999) ("a nonsignatory may enforce an arbitration agreement under a third party beneficiary theory when the parties to the agreement have agreed, upon the formation of their agreement, to confer the benefits thereof to the nonsignatory.")). "'There are two classes of third-party beneficiaries: intended beneficiaries and incidental beneficiaries.'" *Evangelical Lutheran Good Samaritan Soc'y*, 277 F. Supp. 3d at 1215 (quoting *Tarin's Inc. v. Tinley*, 129 N.M. 185, 2000-NMCA-048, ¶ 13, 3 P.3d 680, 685–86). The Supreme Court of New Mexico has explained:

> A third-party may have an enforceable right against an actual party to a contract if the third-party is a beneficiary of the contract. A third-party is a beneficiary if the actual parties to the contract intended to benefit the third-party. The intent to benefit the third-party must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.

*Id.* (quoting *Callahan v. New Mexico Federation of Teachers—TVI*, 2006-NMSC-010, ¶ 20, 2006- NMSC 010, 139 N.M. 201, 131 P.3d 51, 58).

> Only intended beneficiaries can seek enforcement of a contract. The promisor must have had reason to know the benefit was contemplated by the promise as one of the motivating causes for entering the contract. The paramount indicator of a third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries.

*Id.* (quoting *Tarin's Inc.*, 2000-NMCA-048, ¶ 13, 3 P.3d at 686).

In the case at bar, Section 17 of the Arbitration Agreement explicitly provides:

> ***Third Party Beneficiaries.*** <u>The Parties expressly acknowledge and agree that the Company serves as a staffing company to place You with operators and services providers in the oil and gas industry, who are the clients of the Company ("Clients").</u> **<u>Clients shall be third-party beneficiaries of this Agreement, and are entitled to the restrictions and limitations contained in this Agreement, including those contained above in Section 6</u>**. Clients directly affected by any claims or disputes under this Agreement may join as a party to arbitration, provided, and on the express condition, such Client agrees in writing to the terms of this Agreement and agrees to be bound by the determinations and award of the arbitrator.

(**Ex. A-1**, Arbitration Agreement § 17 (emphasis added); *see also* **Ex. A**, Rhinehart Decl., ¶¶ 9–10.)

The Arbitration Agreement clearly and fully spells out that Chisholm, as a "client" of Ally Consulting,

12

is a third party beneficiary to the entire Arbitration Agreement.[7]  Thus, any claims Kepner may have against an Ally Consulting client as a result of his relationship with Ally Consulting must be submitted to binding AAA arbitration and that Ally Consulting's clients are intended third party beneficiaries. As part of his relationship with Ally Consulting, Kepner was assigned by Ally Consulting to work at its client, Chisholm's, site in New Mexico.

From the face of the agreement, both parties intended to confer to clients of Ally Consulting, such as Chisholm, the right to compel arbitration under the terms of the Arbitration Agreement. Because Chisholm belongs to a class of entities granted rights under the Arbitration Agreement, it has a right to compel arbitration as a third-party beneficiary. *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987); *see also Rivera v. Am. Gen. Fin. Servs., Inc.*, 2010 NMCA 46, PP 20–22, 148 N.M. 784, *reversed on other grounds by* 2011-NMSC-33, 150 N.M. 398, 259 P.3d 803 (applying third-party beneficiary doctrine to an arbitration agreement when it held that a non-signatory to an arbitration agreement had a right to compel arbitration against a signatory where the face of the arbitration agreement showed the parties' intent to grant to a class of entities, to which the non-signatory belonged, rights under the arbitration provisions).

Indeed, the arbitration agreement in this case is not unique, and courts across the country presented with similar facts here routinely have concluded that the non-signatory could compel arbitration as a third party beneficiary.  Take for example, this Court's recent holding in *Goldsborough v. Newpark Drilling Fluids, LLC*, where an oilfield "mud" engineer signed an independent contractor agreement with Upstream, a third-party staffing company. No. 2:19-cv-00309, 2020 U.S. Dist. LEXIS

---

[7]  In order to be third-party beneficiary, the contract does not require specifically naming the intended beneficiary. *See Stotlar v. Hester*, 1978-NMCA-067, ¶ 18, 92 N.M. 26, 582 P.2d 403. ("third party beneficiary does not have to be named in the contract").  New Mexico law requires only a showing that parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Valdez*, 1987-NMSC-015, ¶ 34, 105 N.M. 575, 734 P.2d 1258.

24090, at *1–2 (D.N.M. Feb. 10, 2020) (J. Riggs).  That agreement included the engineer's promise to arbitrate any wage claims against Upstream or its clients. *Id.*  As one of Upstream's clients, Defendant Newpark moved as a non-signatory to compel Goldsborough to arbitrate his claims against it. *Id.* at *2–3.  Newpark argued that it was entitled to the relief it sought both as a third-party beneficiary of the agreement and by virtue of equitable estoppel. *Id.* at *3.  This Court granted Newpark's motion on both grounds. *Id.* at *3–13.

In *O'Quinn v. TransCanada USA Servs.*, the court compelled arbitration of opt-in plaintiffs' claims against defendant TransCanada who was a non-signatory to the arbitration agreement, but was found to be a third party beneficiary because the arbitration agreement explicitly benefited signatory System One's client(s).  No. 2:19-cv-00844, 2020 U.S. Dist. LEXIS 113815, at *16 (S.D. W. Va. June 29, 2020). In that case, the Court held:

> The language of the Arbitration Agreements signed by Opt-in[ plaintiffs] plainly state that System One's clients are intended beneficiaries of the contract. As the Fourth Circuit has held, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir.2000). Furthermore, Pennsylvania contract law allows third-party beneficiaries, who are not signatories, to enforce an arbitration agreement, provided that it comports with the parties' intent.  Here, TransCanada is a client of System One.  The Arbitration Agreements explicitly benefit System One's clients.  It is reasonable to infer from the language of the Arbitration Agreements then that Opt-ins knew they were agreeing to arbitrate claims against System One's clients.  TransCan[a]da is a third-party beneficiary to the Arbitration Agreements and can thus enforce relevant provisions.  As part of their employment with System One, these Opt-ins were assigned by System One to work at its client, TransCan[a]da's, site in West Virginia. . . . These Opt-ins' claims arose from work they completed at TransCanada's site in West Virginia. Opt-ins . . . filed notices of consent to join in this case and therefore have failed to arbitrate and are thus in violation of their respective Arbitration Agreements.

*Id.* at *15–16.

Likewise, *Berryman v. Newalta Envtl. Servs.*, the arbitration agreement between the plaintiff and Smith (the plaintiff's direct employer/contractor) expressly covered all claims "arising out of or relating in any way to the services or work [plaintiff] . . . performs for or on behalf of any client of the

Company . . . whether asserted by [plaintiff] against the company and/or . . . against any Company Client." No. 18-793, 2018 U.S. Dist. LEXIS 186789, at *16 (W.D. Pa. Nov. 1, 2018).  Based upon this language, the Court found that "the parties clearly intended a direct benefit" to third party clients of Smith, including the named defendant, NESI. *Id*.[8]

In sum, the Arbitration Agreement explicitly benefits Chisholm, a client of Ally Consulting. As Kepner's claims for overtime against Ally Consulting's clients must be arbitrated and Ally Consulting's "***Clients shall be third-party beneficiaries of this Agreement, and are entitled to the restrictions and limitations contained in this Agreement, including those contained above in Section 6.***"  (**Ex. A-1**, Arbitration Agreement § 17.)[9]  Thus, Chisholm, as a third party beneficiary, has standing to compel Kepner to arbitration on an individual basis.

---

[8] *See also Dunkley v. Mellon Investor Servs./Volt Mgmt.*, No. 06-3501(JAG), 2007 U.S. Dist. LEXIS 76228, (D.N.J. Oct. 15, 2007) (concluding that the nonsignatory client was an intended third party beneficiary as evidenced by the language of the agreement which required arbitration of all disputes, "including disputes arising out of or related to the actions of [the staffing agency's] customers."); *Galvan v. Michael Kors USA Holdings, Inc.*, No. 16-07379-BRO, 2017 BL 18480, 2017 U.S. Dist. LEXIS 9059 (C.D. Cal. Jan. 19, 2017) (finding that Adeco client was third-party beneficiary under Adeco arbitration agreement and plaintiff's employment-related claims brought against this client are subject to arbitration); *Baughman v. KTH Parts Indus.*, No. 3:19-cv-8, 2020 U.S. Dist. LEXIS 63771 (S.D. Ohio Apr. 10, 2020) (same); *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 Tex. App. LEXIS 2461, 2012 WL 1059084, at *20–21 (Tex. App. Mar. 29, 2012) ("In light of the contracts' express contemplation of an arbitration obligation in disputes to which [the employer] is not a party . . ., the benefit conferred on ConocoPhillips—the right to enforce [the employer's] arbitration agreements when sued by [its] employees—is not merely incidental."); *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 777 (Tex. App. 2008) ("Citgo was an intended third-party beneficiary of the dispute resolution agreement because "[a]lthough the contract does not name Citgo specifically, the agreement is sufficiently clear to establish that the parties intended to cover [customers and clients] and the record establishes Citgo is a customer or client."); *German v. Haliburton Co.*, No. 4:18-cv-00100, Doc. 34 (S.D. Tex. March 20, 2019) (in FLSA case, under similar factual allegations as this case, Upstream and the plaintiff intended to benefit defendant well-site operator, Haliburton); *Brown v. Worldpac, Inc.*, No. 17 CV 6396, 2018 U.S. Dist. LEXIS 16372, at *8–11 (N.D. Ill. Feb. 1, 2018) (finding that the defendant's customer could enforce an arbitration agreement as a third-party beneficiary because the arbitration agreement, although it did not explicitly name the defendant's customer, covered all disputes involving the defendant "or its customers.").

[9] Courts have similarly compelled arbitration involving Ally Consulting's non-signatory clients. *See, e.g.*, *West. v. Primexx Energy Partners, Ltd.*, No. 7:20-cv-00098-DC, Doc. No. 23 (W.D. Tex. Mar. 05, 2021) (Order compelling arbitration in FLSA action brought against Ally Consulting's non-signatory client as a third-party beneficiary).

71576449v.1

**D.    KEPNER'S CLAIMS ARE COVERED BY THE ARBITRATION AGREEMENT.**

Since Chisholm is permitted to enforce Kepner's arbitration agreement, the only remaining question is whether Kepner's claims fall within the scope of that arbitration agreement.  The arbitrator should first address this question.  Regardless, Kepner's claims squarely fall within the Arbitration Agreement.

In determining whether Kepner's claims fall within the scope of the arbitration agreement there is a presumption of arbitrability.  In line with its liberal policy favoring arbitration, the Supreme Court has noted that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793 (10th Cir. 1995) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, and thus, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Indeed, the FAA and common law have created a presumption in favor of arbitration. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017); *see also U. Tech. & Resources v. Dar Al Islam*, 1993-NMSC-005, ¶ 11, 115 N.M. 1, 846 P.2d 307, 309 ("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'") (quoting *Dairyland Ins. Co. v. Rose*, 1979-NMSC-021, ¶ 14, 591 P.2d 281, 284, 92 N.M. 527).  The same is true when a party contests an arbitration agreement's scope. *See Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) ("In line with its liberal policy favoring arbitration, the Court has noted that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or

71576449v.1

a like defense to arbitrability.'") (citations omitted); *City & County of Denver v. Dist. Court In & For City & County of Denver*, 939 P.2d 1353, 1363 (Colo. 1997).

  Related to this presumption of arbitrability is the proposition that arbitration clauses should be construed broadly wherever possible. *See Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 799 (10th Cir. 1995); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) ("*Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*") (emphasis in original) (citation omitted); *AT&T Tech., Inc.,* 475 U.S. at 649 (When an arbitration clause is framed this broadly, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.") (internal quotation marks and brackets omitted); *Cummings v. FedEx Ground Package Sys., Inc.,* 404 F.3d 1258, 1261 (10th Cir. 2005) ("Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.") (quoting *Louis Dreyfus Negoce SA. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224 (2d Cir. 2001)). The same applies under New Mexico law:

> When a broad and general arbitration clause is used . . . the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. *When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters.* Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

*K. L. House Constr. Co. v. Albuquerque*, 1978-NMSC-025, ¶ 8, 91 N.M. 492, 576 P.2d 752, 754 (emphasis added).

  The presumption of arbitrability is especially strong where, as here, the Arbitration Agreement is broad—Kepner agreed to arbitrate "all disputes, claims, and any other matters in question arising out of or relating to the Parties' working relationship or termination of that relationship . . ." (**Ex. A-**

71576449v.1

**1**, Arbitration Agreement § 2; *see also id.* ¶ 6; **Ex. A**, Rhinehart Decl., ¶ 11.)  This is the quintessential broad arbitration provision because phrases such as "arising out of or related to" is "broad" language. *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1059 (10th Cir. 2018) (citations omitted).  This creates a presumption in favor of arbitrability. *Id.*[10]

The Arbitration Agreement in this matter is broad, and <u>also</u> expressly includes wage and hour claims, and claims for classification or misclassification of independent contractors or employees. Kepner agreed to arbitrate:

> all grievances, disputes, claims, or causes of action . . . arising out of or relating to Your employment with the Company, or the termination of Your performing services on behalf of the Company, or for any other reasons . . . . ***The claims covered by this Agreement include, but are not limited to, . . . claims for wages or other compensation due; . . . all claims arising under . . . the Fair Labor Standards Act, as amended; claims for classification or misclassification of independent contractors or employees; . . . and claims that may arise under the laws of any other applicable state or local government.***

(**Ex. A-1**, Arbitration Agreement § 4 (emphasis added); *see also* **Ex. A**, Rhinehart Decl., ¶ 11.) Therefore, Kepner's Fair Labor Standards Act and New Mexico Minimum Wage Act claims against Chisholm for its alleged failure to pay overtime wages for work that he performed while he worked under contract with and on behalf of Ally Consulting fall within the scope of the Arbitration Agreement and, therefore, must be submitted to arbitration. *See United States for use of HDR Enterprises, LLC v. MV Indus., Inc.*, No. CIV 09-00437 RB/ACT, 2010 WL 11626661, at *8 (D.N.M. Jan. 12, 2010) (requiring non-signatory to arbitrate certain claims and noting "[i]f the arbitration clause is broad, 'there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'") (citations omitted); *Brophy v. Ament*, No. CV 07-0751 JB/KBM, 2008 WL 11363888, at *8

---

[10] New Mexico case law considering similarly worded clauses have held that such clauses are unlimited arbitration clauses and any claims implicating the contract can be compelled to arbitration. *See Daniels Ins. Agency, Inc. v. Jordan*, 1982-NMSC-148, ¶ 2, 99 N.M. 297, 298, 657 P.2d 624, 625.

(D.N.M. July 9, 2008) ("When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters.") (citing *K. L. House Const. Co. v. City of Albuquerque*, 1978-NMSC-025, ¶ 7, 91 N.M. 492, 494, 576 P.2d 752, 754); *Cooper v. Terminix Int'l Co.*, No. 4:17-CV-3671, 2018 WL 1998973, at *4 (S.D. Tex. Apr. 11, 2018), *report and recommendation adopted sub nom. Cooper v. Terminex Int'l Co.*, No. 4:17-CV-3671, 2018 WL 1997281 (S.D. Tex. Apr. 27, 2018) (holding that the plaintiff's FLSA claims fell "squarely within the scope of the arbitration provision" that covered "all disputes that 'arise out of or are related to [plaintiff's]…employment…,' including but not limited to Fair Labor Standards Act claims"); *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379 (5th Cir. 2008) (holding that loan agreement's language, "[a]ll disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement . . . shall be resolved by binding arbitration" was sufficiently broad to permit a loan servicer to compel arbitration).

Based on these principles, Kepner's claims that he was misclassified as an independent contractor and entitled to, but denied, overtime premiums under the FLSA and NMMWA squarely fall within the ambit of the Arbitration Agreement.

## E.   KEPNER IS ONLY ENTITLED TO INDIVIDUAL ARBITRATION OF HIS CLAIMS.

Kepner "expressly" agreed not to participate in any representative or class action, "in arbitration or otherwise." (**Ex. A-1**, Arbitration Agreement § 6.a; *see also* **Ex. A**, Rhinehart Decl., ¶ 12.) The Supreme Court has ruled that a party may waive his right to class and collective action under the FAA. *Epic Sys. Corp.*, 138 S. Ct. at 1632. Therefore, Kepner's waiver of participation in any class action is enforceable, and his class action claims must be dismissed. *See id.* ("Congress has instructed that arbitration agreements like those before us must be enforced as written."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) ("Class arbitration 'sacrifices the principal advantage of arbitration—its

informality—and makes the process slower, more costly, and more likely to generate procedural

morass than final judgment.'").

## V.      CONCLUSION

For all of the above reasons, the Court should grant this Motion and send Opt-In Plaintiff

Darrell Kepner's claims to arbitration.

Respectfully submitted this 29th day of June, 2021.

**SEYFARTH SHAW LLP**

By:     */s/ Annette A. Idalski*
        Annette A. Idalski, *pro hac vice*
        Texas Bar No. 00793235
        Raed "Ray" Abilmouna, *pro hac vice*
        Texas Bar No. 24080676
        1075 Peachtree Street, N.E.
        Suite 2500
        Atlanta, Georgia 30309-3958
        Telephone:  (404) 885-1500
        Telecopier: (404) 892-7056
        aidalski@seyfarth.com
        rabilmouna@seyfarth.com

**RODEY, DICKASON, SLOAN, AKIN &
ROBB, P.A.**

By:     */s/ Jeffrey L. Lowry*
        Jeffrey L. Lowry
        201 Third Street NW, Suite 2200
        Albuquerque, New Mexico 87102
        Telephone: (505) 766-7541
        Facsimile: (505) 768-7395
        jlowry@rodey.com

***Counsel for Defendant Chisholm Energy
Operating, LLC***

71576449v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of June, 2021, I filed the foregoing motion electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

**SEYFARTH SHAW LLP**

By: _/s/ Raed Abilmouna_
      Raed Abilmouna

71576449v.1