UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| KELLY POGUE, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>CHISHOLM ENERGY OPERATING, LLC d/b/a CEH ENERGY OPERATING, LLC | Case No. 2:20-cv-00580-CG-KK<br><br>Jury Trial Demanded<br><br>Collective Action (29 U.S.C. § 216(b))<br><br>Class Action (Fed. R. Civ. P. 23) |

**POGUE'S REPLY IN SUPPORT OF CONDITIONAL CERTIFICATION**

Respectfully submitted,

| | |
|---|---|
| **Richard J. (Rex) Burch**<br>Texas Bar No. 24001807<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>713-877-8788 – Telephone<br>713-877-8065 – Facsimile<br>rburch@brucknerburch.com | **Michael A. Josephson**<br>State Bar No. 24014780<br>**Andrew W. Dunlap**<br>State Bar No. 24078444<br>**Richard M. Schreiber**<br>State Bar No. 24056278<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>713-352-1100 – Telephone<br>713-352-3300 – Facsimile<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br>rschreiber@mybackwages.com |

**Attorneys for Plaintiffs and Putative Class Members**

**A.     SUMMARY.**

Pogue more than met his minimal burden to provide substantial allegations that he and the putative class members were together victims of a common policy or plan alleged to violate the FLSA. Chisholm wastes its opposition urging the Court to: (1) ignore its improper *ex parte* communications with potential class members to obtain agreements to arbitrate to undermine this class/collective action; (2) disregard the lenient two-step conditional certification method approved by the Tenth Circuit and presume (without any evidence) that individualized differences in job titles and job duties preclude conditional certification; and (3) prematurely analyze the merits, weigh the evidence, and make credibility determinations. *See* Doc. 66. But Pogue substantially alleged he is similarly situated to the day-rate workers he seeks to represent regardless of specific job title, job duties, or any other allegedly individualized factor. The Court should reject Chisholm's arguments, conditionally certify this matter as proposed by Pogue, and approve his notice procedures.

**B.     THE ARBITRATION AGREEMENTS AT ISSUE DO NOT PRECLUDE CERTIFICATION.**

**1.     The Improper Communications Undermine This Class/Collective Action.**

Pogue sued Chisholm Energy Holdings, LLC (CEH) on June 15, 2020, alleging CEH's day-rate compensation plan violated the FLSA and NMMWA. Doc. 1. CEH obtained a two-week extension to respond to Pogue's Complaint. Docs. 6-7. CEH then moved to dismiss Pogue's Complaint on July 27, 2020, claiming he sued the wrong entity. Docs. 16-17. CEH argued it was "a non-operating holding company, with no employees" and that "no universe exists in which" CEH could have employed Pogue or the putative class members. *See* Doc. 17 at 1, 5-6. Pogue then amended his Complaint to name Chisholm as the defendant. Doc. 22.

Unbeknownst to Pogue (and the Court), **Chisholm and CEH improperly communicated with potential class members after the filing of this lawsuit regarding new arbitration agreements with CEH and its subsidiaries**. *See, e.g.*, Doc. 66-1 at Exs. A-Q (arbitration agreements executed by potential class members in July 2020—during the period CEH obtained an extension to

file its responsive pleading—and produced by Chisholm for the first time in opposition to conditional certification). Chisholm provided no information about the substance of the communications Chisholm, CEH, or their attorneys held with these potential class members, or the process utilized to obtain their agreement to arbitrate with CEH. Doc. 66-1. This is especially troubling because Chisholm (and its attorneys) knew these workers: (1) have interests that "have a reasonable possibility of being in conflict with [Chisholm/CEH's] interests[;]"[1] and (2) are individuals Pogue seeks to represent through proper channels and Court-approved communications.

The Court has a duty to protect current and potential class members from improper and misleading communications. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 171 (1989) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties."). Both FLSA Section 16(b) and Rule 23 authorize courts to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* at 170-71; *Valencia v. Armada Skilled Home Care of New Mexico, LLC*, Civ. No. 18-1071-KG/JFR, 2020 WL 4606552, at *5 (D. N.M. July 23, 2020). Once Pogue filed this case, the Court thus became vested with the "managerial responsibility" to oversee the opt-in process and ensure new parties may join the case without the threat of undue influence of either party. *Id.*

While the enforceability of the arbitration agreements at issue is not presently before the Court, Pogue intends to contest their validity and enforceability, if necessary, at the appropriate time. *See Fiser v. Dell Computer Corp.*, 2008–NMSC–046, ¶ 20, 144 N.M. 464, 188 P.3d at 1221 (a contract may be procedurally unconscionable if the contract is one of adhesion between parties with unequal bargaining power); *see also City of Raton v. Arkansas River Power Auth.*, 760 F.Supp.2d 1132, 1154 (D.N.M. 2009) ("In analyzing whether a contract or a term in a contract is procedurally unconscionable, New

---

[1] *See* New Mexico Rules of Professional Conduct 16-403.

Mexico courts consider several factors, including the use of high pressure tactics, the relative scarcity of the subject matter of the contract, and the relative education, sophistication and wealth of the parties."). There is coercion inherent in an employer gathering arbitration agreements from potential class members it employs after a class/collective action is filed (as Chisholm and CEH did here). *Valencia*, 2020 WL 4606552, at *5 ("[T]he context of an existing employment relationship between the parties 'is of particular concern,' as such a relationship 'itself may increase the risk that communications will have a coercive effect.'") (citing *Stransky v. Healthone of Denver, Inc.*, 929 F.Supp.2d 1100, 1109 (D. Colo. 2013)). Indeed, an employment relationship creates a "risk of explicit and implicit coercion" and "can transform suggestions, requests, or observations into directives or threats." *Id.*

Chisholm (and CEH) engaged in inappropriate *ex parte* communications with potential class members, prior to certification, by obtaining arbitration agreements from them to undermine this class/collective action. This is precisely the type of "abusive communication[] warranting court intervention." *Id.* (abusive communications warranting court intervention include "communications that coerce prospective class members into excluding themselves from the litigation[.]"); *Stransky*, 929 F.Supp.2d at 1105; *see, e.g.*, *Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135, 144 (4th Cir. 2018), cert. denied, 138 S. Ct. 2666 (2018) (affirming district court's invalidation of arbitration agreements executed after suit was filed); *Mueller v. Chesapeake Bay Seafood House Assocs., LLC*, No. CV ELH-17-1638, 2018 WL 1898557, at *3-5 (D. Md. Apr. 20, 2018) (refusing to enforce arbitration agreement in an FLSA action because the defendant's imposition of the agreement was an improper class communication); *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2015 WL 9592535, at *1 (S.D. Fla. Dec. 31, 2015) (refusing to enforce post-lawsuit arbitration agreements in FLSA collective action based in part on finding that "Defendants clearly intended to undermine the proper functioning of this litigation."); *Piekarski v. Amedisys Ill., LLC*, 4 F.Supp.3d 952, 956 (N.D. Ill. 2013) (invalidating post-lawsuit arbitration agreements because they were "likely to confuse and mislead potential class members and prevent them from participating in this litigation."); *Balasanyan v. Nordstrom, Inc.*, 11-cv-

260, 2012 WL 760566, at *1-2, 4 (S.D. Cal. Mar. 8, 2012) (same); *Williams v. Securitas Sec. Servs. USA, Inc.*, 10-cv-7181, 2011 WL 2713818, at *3 (E.D. Pa. July 13, 2011) (same); *see also Billingsley v. City Trends, Inc.*, 560 Fed. App'x. 914, 919 (11th Cir. 2014) ("[T]he timing of the arbitration agreement's rollout 'was calculated to reduce or eliminate the number of collective action opt-in Plaintiffs in this case.'").

### 2.   Whether Workers Are Subject to Arbitration Goes to the Merits.

In addition to Chisholm's egregious actions, Chisholm's efforts to exclude these workers from receiving notice because they purportedly agreed to arbitrate is premature. This Circuit (like every other save the Fifth Circuit) uses the two-step method to assess whether to certify a collective action. *See Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *2 (D.N.M. Nov. 19, 2020) (collecting cases). At the initial "notice" stage, this "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. It is not until after discovery, the Court makes a second, stricter determination of "similarly situated." *Id.* at 1103.

Chisholm's request for the Court to exclude **potential** opt-in plaintiffs who executed potentially unenforceable arbitration agreements "asks the Court to fast-forward to the second stage of this case and rule on the merits and enforceability of *potential* arbitration agreements executed by *potential* opt-in plaintiffs—neither of which are presently before the Court." *Judd v. Keypoint Gov't Solutions, Inc.*, Civ. A. No. 18-cv-00327-RM-STV, 2018 WL 7142193, at *4 (D. Colo. Dec. 4, 2018) (emphasis in original). No court has found the arbitration agreements at issue are enforceable and the enforceability of the agreements is not currently before the Court. Moreover, "this case is not at the merits stage yet and the Court [should not] put the proverbial cart before the horse." *Id.*

Courts in this Circuit routinely conditionally certify FLSA collective actions where potential class members may have agreed to arbitrate where, as here, the plaintiff identifies substantial allegations the putative class members were together the victims of a single decision, policy, or plan

4

alleged to violate the FLSA. *See, e.g., id.* at *4-5; *Beattie v. TTEC Healthcare Solutions, Inc.*, Civ. A. No. 1:18-cv-03098-RM-NRN, 2019 WL 4242664, at *2 (D. Colo. Sept. 6, 2019) (conditional certification is not inappropriate "based on the defendant's mere allegation that many of the potential opt-in plaintiffs are precluded from participating in the collective action because they are bound by arbitration agreements."); *Brayman v. KeyPoint Gov't Sols., Inc.*, Civ. A. No. 18-cv-0550-WJM-NRN, 2018 WL 5776373, at *8 (D. Colo. Nov. 1, 2018) ("the existence of an arbitration agreement is irrelevant to conditional certification of a collective action, because the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage."), *reconsideration denied*, 2019 WL 3714773, at *8.[2] That is because the question of whether an arbitration agreement is enforceable is a merits-based determination that is inappropriate at the notice stage. *Id.*

The authority Chisholm relies on is easily distinguishable. For example, in *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F.Supp.2d 1127 (D. Colo. 2011), the plaintiff never sought to issue notice to workers with arbitration agreements found to be previously enforceable.838 F.Supp.2d at 1131.

---

[2] *Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 WL 7133568, at *4 (D. Neb. Dec. 3, 2020), *reconsideration denied,* No. 8:20-CV-193, 2021 WL 106267 (D. Neb. Jan. 12, 2021) ("District courts…even post *In re JPMorgan* and *Bigger*, have granted conditional certification providing notice to potential collective members and deferred the merits-based question of whether the arbitration agreements are valid and enforceable to the second stage.") (collecting cases) (citing *Haworth v. New Prime, Inc.*, 448 F.Supp.3d 1060, 1066 (W.D. Mo. 2020)); *Vallone v. CJS Sols. Grp., LLC*, 437 F.Supp.687, 691-92 (D. Minn. 2020) (finding the "parties may address in the briefing on [a motion to compel arbitration] whether any specific members of the [] collective are subject to valid arbitration agreements" and that "[t]he Court will not deny conditional certification on this basis."); *see also Camara v. Mastro's Rests. LLC*, 340 F.Supp.3d 46, 59 (D.D.C. 2018) ("The majority of district courts to have addressed the issue have determined that the face that some employees have signed arbitration agreements does not preclude conditional certification as to all employees."); *Meyer v. Panera Bread Co.*, 344 F.Supp.3d 193, 206-07 (D.D.C. 2018) ("[C]ourts have generally found that the existence of an arbitration agreement is irrelevant to conditional certification of a collective action" because "the enforceability of such agreements is a merits-based determination better dealt with at the decertification stage.") (collecting cases); *Taylor v. Pilot Corp.*, No. 14-CV-2294-SHL-TMP, 2016 WL 4524310, at *2 (W.D. Tenn. Mar. 3, 2016) (finding it was "premature to consider the issue of arbitration" at the conditional certification stage), *aff'd*, 697 Fed. App'x 854 (6th Cir. 2017); *Woods v. Club Cabaret, Inc.*, 140 F.Supp.3d 775, 783 (C.D. Ill. 2015) ("any issues related to opt-in plaintiffs with arbitration agreements can be addressed at step-two" of the conditional certification analysis); *Saravia v. Dynamex*, 310 F.R.D. 412, 424 (N.D. Cal. 2015) ("the issue of enforceability of arbitration clauses relate[s] to the merits of the case and therefore should be dealt with in phase two."); *Romero v. LaRevise Assocs. LLC*, 968 F.Supp.2d 639, 647 (S.D.N.Y. 2013) ("courts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination.").

Thus, the Court had no occasion to determine whether workers who had not yet joined the lawsuit as opt-in plaintiffs should be excluded from receiving notice based on the existence of an arbitration agreement. Unlike in *Daugherty*, this Court has not found any arbitration agreement to be enforceable and has made no determination as to arbitrability. Moreover, the issue before this Court (e.g., whether to issue notice to individuals who purportedly agreed to arbitrate) was not at issue in *Daugherty*.

In *In re JPMorgan Chase & Co.*, the plaintiffs conceded JPMorgan's longstanding arbitration agreements were valid. 916 F.3d, 494 498 (5th Cir. 2019). Pogue will contest the validity of Chisholm's after-the-fact arbitration agreements that it obtained via *ex parte* communications. *See Beattie*, 2019 WL 4242664, at *1-2 (rejecting employer's reliance on *JPMorgan* to claim potential plaintiffs who signed arbitration agreements should be excluded from receiving notice, finding the "framing of the issue is problematic because Plaintiffs dispute the validity and enforceability of the arbitration agreements."). Finally, in *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020) the Seventh Circuit reasoned:

> [W]hen a defendant opposing the issuance of notice alleges that proposed recipients entered arbitration agreements waiving the right to participate in the action, a court may authorize notice to those individuals unless (1) no plaintiff contests the validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

947 F.3d at 1047. *Bigger* thus found if, like here, "a plaintiff contests the defendant's assertion [concerning the validity of an arbitration agreement]…[t]he employer seeking to exclude employees from receiving notice has the burden to show…the existence of a valid arbitration agreement for each employee it seeks to exclude." *Id.* at 1050. Again, Pogue will contest the validity of the applicable arbitration agreements and Chisholm has not shown the arbitration agreements are enforceable (and indeed resisted discovery aimed at fleshing out any arbitration issues, *see* Exhibit 1, CEH's Discovery Objections and Responses at Interrogatory Nos. 6, 12, 13, 18; RFP Nos. 6, 15).

The purpose of conditional certification is simply to notify potential plaintiffs of their rights. *Brayman*, 2018 WL 5776373, at *6 (citing *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F.Supp.3d

6

1110, 1114 (D. Colo. 2017)). "Though [Chisholm] may have an affirmative defense to litigating opt-in plaintiffs' FLSA claims, such a defense does not negate the right of potential collective action members to join this litigation." *Brayman*, 2019 WL 3714773, at *8. Chisholm's attempt to exclude putative class members who it says are bound to arbitrate (via improperly obtained arbitration agreements) puts the cart before the horse. Such a determination is merits-based and better suited for the second stage, after the potential plaintiffs have the chance to opt-in to this Action and the Court can properly assess whether any opt-in plaintiffs are subject to valid agreements following discovery.

**C.   POGUE AND THE PUTATIVE CLASS MEMBERS ARE SIMILARLY SITUATED.**

**1.   Pogue Met His Minimal Burden for Conditional Certification.**

Pogue provided substantial allegations and evidence (including declarations and payroll documents) showing Chisholm classified and paid its day-rate oilfield workers according to the same plan regardless of any individualized factors. *See, e.g.*, Docs. 22, 64, 64-1 – 64-3. Pogue's submissions establish Pogue and the putative class are similarly situated because they were all: (1) paid a day rate for each day worked without a guaranteed weekly salary; (2) required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) sourced to Chisholm by third parties; and (4) misclassified as independent contractors. *Id.* Pogue's allegations are not "conclusory" as Chisholm claims and more than meet the lenient standard for conditional certification.

Again, Tenth Circuit precedent holds conditional certification is appropriate when there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1105; *Calvillo v. Bull Rogers, Inc.*, 267 F.Supp.3d 1307, 1314 (D.N.M. 2017) ("The 'similarly situated' inquiry…requires only a colorable basis showing the putative class members are victims of a single decision, policy or plan[.]"). "At this initial 'notice' stage for conditional certification, a 'court may consider several factors … including whether the potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same

conduct.'" *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *3 (D.N.M. Nov. 6, 2020) (citing *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433 (D.N.M. 2018)). "It is well established that individual questions…will not defeat class certification...." *Foster v. Nova Hardbanding, LLC,* No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *4 (D.N.M. Apr. 20, 2016). Pogue need only show he is "similarly" situated to the class members—not "identically" situated. *Calvillo*, 267 F.Supp.3d at 1312.

The fact Chisholm treated all putative class members as contractors and paid them a day-rate regardless of where they worked, job duties, which company they were staffed by, or any other individualized factors demonstrates the class is similarly situated. *See Williamson v. Ameriflow Energy Servs., L.L.C.*, Civ. No. 15-878 MCA/GJF, 2016 WL 10179250, at *3 (D.N.M. Sept. 15, 2016) (finding conditional certification was appropriate where the plaintiff showed the defendant "had a practice of classifying [workers] as independent contractors and, on that basis, not paying them overtime wages is sufficient, under the lenient standard applicable to conditional certification, to show the [workers] were victims of the same decision, policy, or plan.").

Chisholm does not dispute it paid the putative class members under the same day-rate plan regardless of their specific job titles, duties, or staffing company.[3] *See* Doc. 66; *Lindsay v. Cutters Wireline Serv., Inc.*, Civ. A. No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *2 (D. Colo. Aug. 27, 2018) ("In light of the absence of any indication that defendants' pay schemes varied, the Court finds plaintiff's allegations are sufficient to show that defendants' wireline operators were subject to a common payment scheme."). This is especially telling because Chisholm maintains control of this information and has not shown any variance in its payroll practices. *Id*. Requiring Pogue to "answer evidence-based challenges to [his] lawsuit before it is off the ground, when all of the evidence to support [his] claims

---

[3] Instead, by rolling out arbitration agreements targeted at workers, like Pogue, who were classified as independent contractors and paid a day rate (to decrease participation), Chisholm concedes a similar group of oilfield workers exists.

is in the hands of [his] employer" would erroneously apply a higher burden at the notice stage. *Turner v. Chipotle Mexican Grill, Inc.*, 123 F.Supp.3d 1300, 1309 (D. Colo. 2015).

### 2. Chisholm Asks the Court to Make Premature Merits Determinations.

Chisholm largely argues Pogue and the putative class members are not similarly situated because they may have worked in different positions, performed different job duties, and were sourced by different staffing companies. Not only is Pogue not required to show his job duties were identical to those performed by the putative class members, but "arguments comparing job duties are [also] premature" and are more appropriately considered at the second stage. *See, e.g., Medrano v. Flowers Foods, Inc.*, Civ. No. 16y-350 JCH/KK, 2017 WL 3052493, at *3 (D.N.M. July 3, 2017) ("Any variation in the putative class members' job responsibilities is a factor to be considered at the second stage of the analysis after completion of discovery."); *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at *6 (D. Kan. Sept. 24, 2013) (identical job duties are not required).

And "[t]o the extent [Chisholm] wishes to raise factual challenges to whether putative plaintiffs hired by various staffing companies are similarly situated, such challenges are appropriately raised at the stricter second stage…after discovery is completed and the evidence is more fully developed." *Hancock v. Lario Oil & Gas Co.*, No. 2:19-CV-2140, 2019 WL 3494263, at *2-3 (D. Kan. Aug. 1, 2019) ("the role of third-party staffing companies is not at issue at this initial notice stage."). Courts routinely conditionally certify nationwide collective actions of workers classified as independent contractors who were staffed to the alleged employer by multiple different staffing companies. *See, e.g., O'Quinn v. TransCanada USA, Servs., Inc.*, 469 F.Supp.3d 591, 607-08 (S.D.W.V. 2020).

In addition, Chisholm claims conditional certification is inappropriate because the Court must first analyze the economic realities factors to determine whether the putative class members were its employees (versus independent contractors). But this goes to the merits of Pogue's claims against Chisholm and "the Court need not determine whether Plaintiffs' claims are meritorious at this stage." *Medrano*, 2017 WL 3052493, at *3; *see also Williamson*, 2016 WL 10179250, at *3 (the court does not

9

consider whether workers were defendant's FLSA "employees" at the conditional certification stage) (citing *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D 631, 647 (D.N.M. 2015) (the court does not decide the merits or resolve factual disputes at the notice stage). "A plaintiff need not prove at this first step in the certification process that they were actually misclassified as independent contractors. Rather, it is sufficient that they demonstrate they have been treated alike by the same employer for similar reasons." *Medrano*, 2017 WL 3052493, at *3.

### 3. Chisholm Prematurely Seeks to Weigh Evidence and Determine Credibility.

Chisholm attacks Pogue's evidence as "conclusory" and, essentially, untruthful. Again, the Court does not weigh evidence, make credibility determinations, or resolve factual disputes at this stage. *See Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *4 (D.N.M. Nov. 19, 2020) (citing *Felps v. Mewbourne Oil Co., Inc.,* 460 F. Supp. 3d 1232, 1235-46 (D.N.M. 2020)). Courts do not weigh the value of declarations "to determine the facts, determine the credibility of deponents, and resolve legal contentions." *Kerr*, 2020 WL 6799017, at *5. In fact, courts in this District "routinely credit allegations based on observations and discussions with fellow workers" even if their claims later "turn out to be meritless or all plaintiffs turn out not to be similarly situated as the employer claimed. *Id.* at *4; *see, e.g.*, *Calvillo*, 267 F.Supp.3d at 1313; *Foster*, 2016 WL 4492829, at *1, *4.

It is well-established employees "have some personal knowledge of conditions and events during [their] employment." *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F.Supp.2d 832, 846 (S.D. Tex. 2011); *Adeyinka v. Yankee Fiber Control, Inc.*, 564 F.Supp.2d 265, 277 (S.D.N.Y. 2008). The fact the declarations may describe certain conditions "in generalized terms" is also no impediment to conditional certification. *See Salinas-Rodriguez v. Alpha Svcs., LLC.*, No. 3:05-CV-44-WHB-AGN, 2005 WL 3557178, at *3 (S.D. Miss. Dec. 27, 2005) ("Plaintiffs cannot be expected to have an elaborate knowledge of the circumstances facing other [potential class members]. If the Court required more proof at this notice stage, it would be overlooking the purpose behind the two-stage inquiry.").

Pogue and opt-in plaintiff Darrell Kepner provide detailed declarations based on their own personal knowledge gained from their time working for Chisholm. *See* Docs. 64-1 – 64-2. The fact the declarations may describe certain conditions generally does not defeat conditional certification. Both workers expressly indicate their personal knowledge that Chisholm paid the putative class members under the same day-rate compensation plan based on their experience working for Chisholm. Doc. 64-1 at ¶ 19; ("Based on my personal knowledge drawn from my experience and observations working for Chisholm, conversations with other Day Rate Workers classified by Chisholm as independent contractors and paid a day rate, and my familiarity with Chisholm's payroll practices and policies, I know that other Day Rate Workers were subjected to the same pay practices, regardless of rate of pay, or any other individualized factor, such as job titles or job duties."); Doc. 64-2 at ¶ 20 (same). This is more than sufficient.

**D.   POGUE'S PROPOSED NOTICE FORMS AND DISSEMINATION PROCESS ARE PROPER.**

Pogue will confer with Chisholm regarding the content of the Notice and Consent forms in the event the Court grants conditional certification. Pogue proposes the Parties submit any revised forms to the Court within five business days of any order granting conditional certification. However, Pogue cannot agree to limit the notice period to 30 days nor to issuing notice solely by a single mailed notice. The putative class members work in remote locations for extended periods of time, making it extremely difficult for them to regularly receive mail. Doc. 64-1 at ¶ 22; Doc. 64-2 at ¶ 23.

Courts in this District routinely order the production of email addresses and telephone numbers in addition to the last-known mailing address. *See, e.g.*, *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F.Supp.3d 1079, 1129 (D.N.M. 2017) (ordering production of all known addresses, telephone numbers, and email addresses (work and personal)); *Valencia*, 2020 WL 2768977, at *4 (D.N.M. May 28, 2020) (same); *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *8 (D.N.M. Nov. 6, 2020) (same); *LeBlanc v. Halliburton Co.*, No. CV 17-0718 KG-GJF, 2018 WL 3999567, at *3 (D.N.M. Aug. 21, 2018) (same).

Courts also routinely authorize notice via email and text message (in addition to mail). *See, e.g., Calvillo*, 267 F.Supp.3d at 1315 ("notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved"); *Landry*, 252 F.Supp.3d at 1129 (notice by text message will "increase the chance of the class members receiving and reading the notice."); *Felps*, 460 F.Supp.3d at 1241 ("courts within this district routinely approve notice by mail, email message, *and* text message"); *Valencia*, 2020 WL 2768977, at *4 (authorizing notice by email and text); *Pruess*, 2020 WL 6544243, at *8 (same); *LeBlanc*, 2018 WL 3999567, at *3 (same). In fact, email and text message have become accepted—and even preferred—forms of notice in FLSA collective actions. *Landry*, 252 F.Supp.3d at 1129-30 ("Indeed, given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional, first-class mail.").

Similarly, a reminder notice and 60-day opt-in period is equally appropriate. *See, e.g.*, *Landry*, 252 F.Supp.3d at 1129 (authorizing 75-day opt-in period and two mailings of the notice and consent form via regular mail, email, and text message); *Valencia*, 2020 WL 2768977, at *4 (authorizing 75-day opt-in period and reminder notice); *LeBlanc*, 2018 WL 3999567, at *3 (authorizing 60-day opt-in period and reminder notice). A reminder notice "serves the FLSA's broad remedial purpose by ensuring that 'as many potential plaintiffs as possible [are informed] of the collective action and their right to opt-in.'" *Landry*, 252 F.Supp.3d at 1130. Courts recognize reminder notices are particularly beneficial for potential plaintiffs who work away from home to ensure they receive notice. *Id.*

**E.    CONCLUSION.**

As set forth above and in Pogue's Motion (Doc. 64), the Court should grant Pogue's Motion and conditionally certify this Action as a collective action as proposed by Pogue.

Respectfully submitted,

By: */s/ Richard M. Schreiber*
   Michael A. Josephson
   State Bar No. 24014780
   Andrew W. Dunlap
   State Bar No. 24078444
   Richard M. Schreiber
   State Bar No. 24056278
   **JOSEPHSON DUNLAP LLP**
   11 Greenway Plaza, Suite 3050
   Houston, Texas 77046
   713-352-1100 – Telephone
   713-352-3300 – Facsimile
   mjosephson@mybackwages.com
   adunlap@mybackwages.com
   rschreiber@mybackwages.com

   **AND**

   Richard J. (Rex) Burch
   Texas Bar No. 24001807
   **BRUCKNER BURCH PLLC**
   11 Greenway Plaza, Suite 3025
   Houston, Texas 77046
   713-877-8788 – Telephone
   713-877-8065 – Facsimile
   rburch@brucknerburch.com

## **CERTIFICATE OF SERVICE**

On July 15, 2021, I served all Parties of record via ECF.

                                          */s/ Richard M. Schreiber*
                                                **Richard M. Schreiber**