**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

KELLY POGUE,
*Individually and on Behalf of all others*
*Similarly situated*,

        Plaintiff,

    v.                             No. 2:20-cv-00580-KWR-KK

CHISHOLM ENERGY OPERATING, LLC,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

    **THIS MATTER** is before the Court on Plaintiff's Opposed Motion for Conditional Certification (**Doc. 64**), filed June 1, 2021. Defendant filed a response to the Motion for Conditional Certification on July 1, 2021 (**Doc. 66**) and Plaintiff filed a reply in support of its motion on July 15, 2021 (**Doc. 69**). Then, on October 15, 2021, Defendant filed a notice to correct certain statements in its response (**Doc. 87**; **Doc. 87, Ex. A**), and with leave of the Court, Defendant filed a surreply on November 3, 2021 (**Doc. 92**). Having reviewed the parties' briefs and the applicable law, the Court finds that Plaintiff's motion is **WELL-TAKEN** in part and, therefore, is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

    This is a putative class and collective action under the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA"). *See* **Doc. 22, at 1 ¶ 1**. Defendant Chisholm Energy Operating is an oil and gas company focused on acquisition and development of petroleum properties in the Delaware Basin. *See* **Doc. 22, at 4 ¶ 27**. Plaintiff Kelly Pogue was employed by

Defendant as a "Completions Consultant"[1] from July 2017 to December 2019.  *See* **Doc. 64, at 1–2**; **Doc. 22, at 2 ¶ 10**.  Plaintiff's job responsibilities included "observing drilling operations on the rig and ensuring that the [work] team is following safety protocol."  *See* **Doc. 22, at 5 ¶ 35**.  Plaintiff alleges that he regularly worked between 60 to 84 hours a week, yet Defendant only paid Plaintiff a "day-rate." *See* **Doc. 64, at 3**; **Doc. 22, at 2 ¶ 11**.  Plaintiff alleges that he was hired by Defendant but was "required to use a staffing company to get paid."  *See* **Doc. 22, at 5 ¶¶ 40–41**.  Plaintiff further alleges that Defendant misclassified its workers as independent contractors in order to avoid paying Plaintiff and other similarly situated individuals overtime wages.  *See* **Doc. 22, at 2 ¶¶ 4–5**; **Doc. 64, at 1**.

Plaintiff asks the Court to grant conditional certification of this putative collective action because its members are similarly situated.  **Doc. 64, at 4**.  Plaintiff also asks the Court to issue his proposed notice and consent to join forms to the putative members.  *Id.* **at 11**.  Defendant argues that conditional certification is improper, first, because the putative collective agreed to arbitrate their claims, and second, because Plaintiff cannot show that the collective action members are similarly situated.  *See* **Doc. 66, at 5, 8**.  Defendant also requests that the Court reject Plaintiff's proposed order, notice, and consent form.  *Id.* **at 19**.

## DISCUSSION

### I.   <u>Conditional Certification is Appropriate at this Notice Stage.</u>

The FLSA requires employers to pay covered employees who work longer than 40 hours in a given workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  Any employer violating the minimum wage or

---

[1] Plaintiff appears to use "completions consultant" and "drilling consultant" interchangeably.  *Compare* **Doc. 22, at 5 ¶ 35** ("Pogue worked for Chisholm as a **Completions Consultant** from approximately July 2017 until December 2019.") *with* **Doc. 22, at 2 ¶ 10** ("Pogue worked for Chisholm as a **Drilling Consultant** from approximately July of 2017 until December of 2019.").

maximum hours section of the Act "shall be liable to the employee or employees affected in the amount of the unpaid minimum wages or their unpaid overtime compensation," and any additional damages. *See* 29 U.S.C. § 216(b).

Under the FLSA, an employee may bring a collective action on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). The purpose of an FLSA collective action is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged…activity." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The term "similarly situated" is not defined in the statute; however, the Tenth Circuit has approved a two-tier ad hoc methodology to determine on a case-by-case basis whether members of a class are similarly situated. *See Thiessen v. General Electric Capital Corp*., 267 F.3d 1095, 1102–05 (10th Cir. 2001).

In the first stage, also called the "notice stage," a court must make an initial determination of whether the plaintiffs are similarly situated. *Id.* at 1102–03. The court must make this determination based on the allegations in the complaint, which may be supported by sworn statements. *See Landry v. Swire Oilfield Services, L.L.C.*, 252 F. Supp. 3d 1079, 1114–15 (D.N.M. 2017). At this stage, courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (internal quotations and citation omitted); *Landry*, 252 F. Supp. 3d at 1114–15 ("A plaintiff need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."). Thus, the burden at the notice stage is light or lenient. *See Medrano v. Flowers Foods, Inc.*, No. CV 16-350 JCH/KK, 2017 WL 3052493, at *3 (D.N.M. July 3, 2017) (explaining that while the "similarly

situated" standard requires substantial allegations, the standard is "fairly loose initially, until discovery is completed").

Conditional certification at the notice stage, however, is by no means automatic—at least some evidence beyond unsupported factual assertions must be presented. *See Eagle v. Freeport-McMoran, Inc.*, No. 2:15-CV-00577-MV-SMV, 2016 WL 7494278, at *2 (D.N.M. Aug. 3, 2016) (citation and quotation marks omitted). If a court conditionally certifies the collective based on a plaintiff's allegations, notice may be sent providing for the opportunity to join the collective action.

Once a court has conditionally certified the collective, the parties engage in discovery. After the close of discovery, a defendant may file a motion for decertification. *See Thiessen*, 267 F.3d at 1102. In this second stage, a court applies a "stricter standard of 'similarly situated.'" *Id.* at 1102–03. "[T]he court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1310 (D.N.M. 2017) (internal quotations omitted) (quoting *Heckler v. DK Funding, LLC et al.*, 502 F.Supp.2d 777, 779 (N.D.Ill. 2007)). To make this determination, the court must consider factors such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required." *See Thiessen*, 267 F.3d at 1103.

Here, the Court's initial inquiry is limited to the first step of the process, in which it applies a lenient test to determine whether the putative plaintiffs are similarly situated—that is, Plaintiff must provide some evidence to establish a colorable basis showing the putative collective members are victims of a single decision, policy or plan. "In making the initial similarity determination,

courts evaluate several factors, such as whether potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of wage calculation; and (iv) allege FLSA violations based on the same conduct." *Landry*, 252 F. Supp. 3d at 1116. "In general, if proposed class members are employees with similar positions, courts hold that allegations that the defendants engaged in a pattern or practice of not paying overtime are sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan." *Id.* at 1118 (internal quotations and alterations omitted). Therefore, a court may determine whether the proposed collective members are similarly situated by examining whether the collective includes individuals with similar positions and whether plaintiffs were victims of a single decision, policy, or plan. *Id.* "The record need only be 'sufficiently developed' to allow court-facilitated notice based upon 'substantial allegations or some factual support.'" *See Calvillo*, 267 F. Supp. 3d at 1312 (quoting *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004)).

### A. Plaintiff has Sufficiently Alleged that a Proposed Collective of Completions and Drilling Consultants, but not "All Oilfield Workers," are Members with Similar Positions.

Here, Plaintiff alleges that the proposed class consists of: "All oilfield workers employed by or performing work on behalf of Chisholm who were classified as independent contractors and paid a day-rate without overtime during the past three years. (the Day-Rate Workers)." *See* **Doc. 22, at 2 ¶ 16** (emphasis omitted). Plaintiff asserts that the putative class members are similarly situated because the workers:

> (1) received a flat day rate for each day worked, regardless of the hours worked; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed to work for Chisholm; (4) were all employees of Chisholm that it mischaracterized as independent contractors; (5) were never guaranteed a salary; and (6) all performed work for Chisholm in the oilfield.

*See* **Doc. 64, at 4**.

Defendant maintains that the putative collective members are not similarly situated because (1) "they are subject to binding arbitration agreements, have different titles and job duties and responsibilities, and Chisholm did not have a uniform pay practice of paying oilfield workers a day rate (let alone that Chisholm was responsible for compensating these workers)," and (2) "Plaintiff's allegations are too generalized and unsupported." *See* **Doc. 66, at 9**.

Defendant asserts that "Plaintiff cannot show how he and the putative collective members are similarly situated with respect to job requirements and pay provisions." *Id.* **at 9**. More specifically, Defendant contends that "the term 'oilfield worker' is 'so broad that it could include nearly any worker performing some manual labor at a well site, even if that worker had vastly different job duties than those of the Plaintiff." *Id.* **at 11**. Defendant argues that Plaintiff's Complaint "identifies at least four different positions that encompass 'oilfield workers,' including 'Rig Clerks, Completions Supervisors, Completion Consultants, Drilling Consultants, etc.' and whose job duties differed significantly – none of whom actually bear the title 'oilfield worker.'" *Id.* **at 11** (internal citation omitted). Defendant asserts that "Plaintiff's declarations do not even attempt to overcome this deficiency by explaining how the job duties and experiences of these 'oilfield workers' could possibly be similar to his own," nor can Plaintiff show how "all completions consultants – let alone 'all oilfield workers' – shared a common experience." *Id.* **at 10**. Defendant's arguments are not persuasive.

Defendant relies on a number of cases to support its position, however, upon close review, the Court finds that these cases pertain to the second stage of the two-step analysis which involves a stricter standard. Here, Defendant's arguments "overemphasizes similarity of job duties instead of focusing on the alleged wrongful policy." *See Robinson v. RWLS, LLC*, No. SA-16-CA-00201-OLG, 2017 WL 1535073, at *4 (W.D. Tex. Jan. 11, 2017), *report and recommendation adopted*,

2017 WL 1536065 (W.D. Tex. Feb. 6, 2017). "Different job classifications and responsibilities of members of the putative class are not materially relevant differences under the first stage of the two-step certification process." *Id.*

Notably, at this stage, Plaintiff need only show that his position is "similar, not identical, to the positions held by the putative class members." *See Calvillo*, 267 F. Supp. 3d at 1312. The Court concludes that Plaintiff has sufficiently alleged that a putative collective of **completions or drilling consultants** are similarly situated, but Plaintiff has not alleged that the collective of "day-rate workers" includes individuals with similar positions.

Here, Plaintiff has provided a declaration in which he states that "as a completions consultant, [his] work involved the following job duties: observing completions operations, managed coil tubing operations, ensuring that the team is following safety protocol, completing paperwork, and ordering oilfield supplies." *See* **Doc. 64-1, Ex. 1 ¶ 4**. Plaintiff further explains that his "primary job duties included observing drilling operations on the rig and ensuring that the team is following safety protocol[.]" *See* **Doc. 22, at 5 ¶ 35**; *see also* **Doc. 66-1, Ex. 1, at 5 ¶ 28** (declaration of Brad Grandstaff, Vice President of Operations for Chisholm Energy Operating, LLC) (explaining that "drilling consultants provide onsite supervision of day-to-day drilling operations. Drilling consultants ensure the safety of all personnel on location while successfully executing the operator's drilling plan"). Additionally, another employee, Darrell Kepner, provided a declaration in which he states that "as a completions consultant, [his] work involved the following job duties: managing fracs, cool tubing operations, making sure the jobs were completed throughout each stage, and to make sure that the team is following safety protocol." *See* **Doc. 64-2, Ex. 2 ¶ 4**.

Thus, contrary to Defendant's assertion, the Court does not find these job functions dissimilar. At minimum, despite the different job titles, the Amended Complaint and declarations submitted by Plaintiff indicate that oilfield workers employed as "completions consultants" or "drilling consultants" performed similar or comparable job duties or responsibilities. Nevertheless, at this stage, some variation in the specific job duties or titles of putative collective members does not prevent conditional certification. *See Landry*, 252 F. Supp. 3d at 1120 ("Here, operators in the proposed classes had a shared responsibility to rig up, monitor, maintain, and rig down water transfer and chemical blending equipment at oil well sites…That the operators' specific job duties at the well sites varied somewhat does not prevent the Court from finding them similarly situated."); *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *4 (D.N.M. Nov. 6, 2020) ("[S]ome variation in the plaintiffs' specific job duties will not destroy a similarly situated designation."); *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *3 (D.N.M. Apr. 20, 2016) ("Although there may be some variation in the duties of each job, it is sufficient for conditional certification if class members have similar positions."). Defendant will have an opportunity to seek to decertify the class following discovery, when the question before the Court is whether any opt-in plaintiffs are, in fact, similarly situated.

Still, the Court agrees with Defendant that Plaintiff has failed to provide support for the proposed collective of "all oilfield workers." Based on the record, Plaintiff has made the requisite showing that despite different job titles, Plaintiff and completions or drilling consultants have similar positions. However, Plaintiff has not provided sufficient factual support in the record for the Court to conclude that a collective of "all oilfield workers" or the "day-rate workers" includes individuals with similar positions. Plaintiff's Amended Complaint does not allege, for example,

8

that the putative collective members performed the same or similar job duties.  *Cf. Kerr v. K. Allred Oilfield Servs.*, LLC, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *3 (D.N.M. Nov. 19, 2020) ("Plaintiff alleges that Kaos pays a distinct group of workers a day rate without overtime, misclassifies them as independent contractors, and asks them to perform similar job duties… Kaos operators 'performed the same basic job functions,' which mainly consisted of manual labor duties such as setting up, taking down and operating the equipment."); *Medrano*, 2017 WL 3052493, at *3 (concluding that plaintiffs had satisfied the similarly situated standard where they "alleged that they are [bakery] distributors with similar job duties, that they have all signed similar Distributor Agreements regarding their employment, [and] that Defendants have exercised complete control over all the material aspects of the distributors' business"); *Jackson v. Powersat Commc'ns (USA) LP*, No. 2:20-CV-486 KRS/GJF, 2021 WL 2953129, at *3 (D.N.M. July 14, 2021) ("Plaintiffs allege they and the proposed class have identical job titles, responsibilities, and work schedules[,] and Plaintiffs have alleged a common policy of classification and pay for all Field Technicians. The Court finds this is sufficient to meet the first-tier requirement for conditional class certification.").  Therefore, the Court finds that there is insufficient support in the record to conclude that Plaintiff's proposed putative collective members of all "day-rate workers" are similarly situated.  Plaintiff must amend the proposed collective to state the completions and/or drilling consultant titles.[2]

Next, Defendant argues that Plaintiff is unable to show that he is similarly situated when the "economic realities test" is applied to his claims to determine whether the putative plaintiffs are employees or independent contractors.  *See* **Doc. 66, at 15**.  "Importantly, in deciding whether to certify an FLSA collective action, the court **does not decide the merits of the underlying**

---

[2] The Court's determination is without prejudice, and with opportunity to renew, if the discovery process yields evidence that would render a broader certification appropriate.

**claims or resolve factual disputes**." *Pruess*, 2020 WL 6544243, at *2 (emphasis added) (internal quotations and alterations omitted) (quoting *Bustillos v. Bd. Of Cnty. Comm'rs*, 310 F.R.D. 631, 647 (D.N.M. 2015)).    Defendant's argument regarding the "economic realities" and the "individualized" determination for each employee goes to either the second stage of the analysis or to the merits of the case. *See Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1002–03 (D. Kan. 2018) (applying the "economic realities" test at the second stage of the two-step process where defendant had filed a motion to decertify after the conclusion of discovery).    Thus, the Court rejects this argument.

> **B.  Plaintiff has Sufficiently Alleged that the Proposed Collective was Subject to a Single Decision, Policy, or Plan.**

Next, the Court must determine whether these workers are subject to a single decision, policy or plan.  Defendant asserts that there is "no evidence" of Defendant's pay practices, and instead, "the record evidence demonstrates that Pogue and the putative collective members were paid by third party companies, not Chisholm." *See* **Doc. 66, at 12–13**.  Defendant maintains that "[t]he only thing all of these individuals had in common was the fact that the entity that paid them entered into a contract with Chisholm, which is not enough to support conditional certification." *Id.* **at 13–14**.  The Court disagrees.

Here, first, Plaintiff alleges that the putative collective members have the same employer; each was employed by Chisolm. *See* **Doc. 22, at 4 ¶¶ 27–29**.  Plaintiff also alleges that the putative collective members are subject to the same employer practices.  Plaintiff pleads that "Chisholm employed dozens of individuals" and "classified these workers as independent contractors." *Id.* **at 4 ¶¶ 29, 31**.  Plaintiff further alleges that the potential class suffered the same method of wage calculation.  Plaintiff pleads that Defendant "uniformly failed to pay them overtime for hours worked in excess of 40 in a workweek." *Id.* **¶ 32**.  Plaintiff alleges that himself and other

misclassified workers were always paid a day-rate "regardless of the number of hours worked in that workweek." *Id.* ¶ **31**.

In support of his claims, Plaintiff provided invoices of his day-rate payments from Defendant, and declarations from himself and Mr. Kepner, a similarly paid completions consultant. *See, e.g.*, **Doc. 64-3, Ex. 3**; **Doc. 64-2, Ex. 2 ¶¶ 8–9** (Kepner declaration) ("Specifically, I was paid $1,360.00 per day for every day that I worked. When I worked more than 40 hours in a week, I was paid at the same day rate I received for the hours I worked under 40 hours that same week."). Plaintiff also asserts that:

> Based on my personal knowledge drawn from my experience and observations working for Chisholm, conversations with other Day Rate Workers classified by Chisholm as independent contractors and paid a day rate, and my familiarity with Chisholm's payroll practices and policies, I know that other Day Rate Workers were subjected to the same pay practices, regardless of rate of pay, or any other individualized factor, such as job titles or job duties.

*See* **Doc. 64-1, Ex. 1, at 3 ¶ 19**; *see also* **Doc. 64-2, Ex. 2** (same).  Thus, at this stage, the Court concludes that Plaintiff has met his burden to show that putative plaintiffs were subject to a single decision, policy, or plan.  *See Williamson v. Ameriflow Energy Servs. L.L.C.*, No. CV 15-878 MCA/GJF, 2016 WL 10179250, at *3 (D.N.M. Sept. 15, 2016) ("Under these circumstances, that Defendants had a practice of classifying flow testers as independent contractors and, on that basis, not paying them overtime wages is sufficient, under the lenient standard applicable to conditional certification, to show that the flow testers were victims of the same decision, policy, or plan.").

Yet, Defendant argues that Plaintiff "fails to provide admissible evidentiary support for certification." *See* **Doc. 66, at 17**.  Defendant asserts that Plaintiff's declarations are "contradicted" by the Amended Complaint, and that Plaintiff's assertions are "not based on personal knowledge, [are] speculation about other workers, and conclusory allegations about policies, practices and procedures." *Id.*  Here, too, Defendant's arguments are not persuasive.

Plaintiff has made specific allegations regarding Defendant's conduct and practices based on his personal experience, knowledge, and interactions with others. *See, e.g.*, **Doc. 64-1, Ex. 1, at 3 ¶¶ 19–21**. Plaintiff has also provided supporting evidence through declarations and pay invoices. The allegations in the Amended Complaint, together with Plaintiff's proffered exhibits are sufficient as a basis for the Court to grant conditional certification. *See Kerr*, 2020 WL 6799017, at *4 (noting that courts in the District of New Mexico "routinely credit allegations based on observations and discussions with fellow workers and supervisors")

In sum, the "similarly situated" inquiry requires only a showing that the putative class members are victims of a single decision, policy or plan, and Plaintiff has satisfied this lenient test. The putative collective of completions or drilling consultants worked for the same employer, performed similar duties, and their allegations of FLSA violations are derived from the same alleged practice of classifying workers as independent contractors, paying a "date rate," and not paying for overtime hours. Therefore, there is a sufficient basis for the Court to grant conditional certification.

## C. The Arbitration Agreements Do Not Preclude the Issuance of Notice to Members of the Proposed Collective.

Additionally, Defendant has invoked the existence of arbitration agreements to preclude certain employees from receiving formal notice of this collective FLSA action. Defendant alleges that the putative plaintiffs entered into arbitration agreements with Defendant in which they waived "their right to class, collective and representative actions." *See* **Doc. 66, at 4–5**. Defendant relies on two cases, *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) and *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020), to support its position that "notice should not issue to putative collective members with arbitration agreements." *Id.* at 5. Defendant has attached copies of arbitration agreements it alleges preclude certain proposed members of the collective from

receiving notice.  *See* **Doc. 66, Ex. A, C–I, K–M, O–Q**; *see also* **Doc. 87, at 1** ("With the exception of Plaintiff Pogue, opt-in Plaintiff Kepner, Billy Montgomery, Dale Johnston, Gary Gillette, Kirk Roper, Richard Bayard, and Jim Essman, all completions and drilling consultants placed on Chisholm projects through Consultancy Firms in the three years prior to the date of Chisholm's response brief are subject to binding arbitration agreements with Chisholm's parent company preventing them from joining this collective action.").

In response, Plaintiff alleges that Defendant "improperly communicated with potential class members" and executed the arbitration agreements in question during the pendency of this suit.  *See* **Doc. 69, at 1**.  Plaintiff asserts that the arbitration agreements were "executed by potential class members in July 2020—during the period [Defendant] obtained an extension to file its responsive pleading—and produced by Chisholm for the first time in opposition to conditional certification."  *Id.* **at 1–2**.  Plaintiff argues that Defendant has "provided no information about the substance of the communications [Defendant] or their attorneys held with these potential class members, or the process utilized to obtain their agreement to arbitrate."  *Id.* **at 3**.

Plaintiff represents that he intends to dispute the validity and enforceability of the arbitration agreements "at the appropriate time," *see* **Doc. 69, at 2**, but Defendant's effort "to exclude these workers from receiving notice because they purportedly agreed to arbitrate is premature" and not necessary for the Court to address at this stage.  *Id.* **at 4**; *see also* **Doc. 69, at 6** ("Pogue will contest the validity of Chisholm's after-the-fact arbitration agreements that it obtained via *ex parte* communications.").  Defendant counters that despite Plaintiff's assertions, (1) Plaintiff does not dispute that the putative plaintiffs entered into arbitration agreements, (2) Plaintiff has no standing to contest the arbitration agreements of other putative members, and (3) that there exists no procedural or substantive unconscionability surrounding the arbitration

13

agreements.  *See* **Doc. 92, at 4–5**.  Defendant also maintains that there were no improper communications with potential opt-in plaintiffs.  ***Id.* at 5**.

Here, although the Court finds the timing of the execution of these arbitration agreements atypical, Plaintiff has not provided any evidence for the Court to conclude that improper communications regarding these agreements took place between Defendant or defense counsel and potential opt-in plaintiffs.  *See, e.g.*, *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 603–06 (S.D.N.Y. 2020) (concluding that arbitration agreements executed during the pendency of an FLSA conditional certification motion were not enforceable against putative plaintiffs because defendant's communications with putative plaintiffs were improper and misleading where defendant (1) "did not disclose that by signing the Arbitration Agreements, putative plaintiffs would lose their right to participate in this lawsuit," (2) "management asked [putative plaintiffs] to return the Arbitration Agreements within two business days of when they were sent," and (3) putative plaintiffs "understood that refusing to sign the Arbitration Agreement could have a negative impact on their employment relationship").

Thus, the Court must determine whether notice should exclude employees who signed arbitration agreements.  Whether the validity and enforceability of arbitration agreements must be resolved before sending notice of a pending FLSA collective action to employees who are parties to such agreements is unsettled.  *Compare Bigger*, 947 F.3d at 1050 (holding that "a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action" because "the notice may serve only to prompt futile attempts at joinder or the assertion of claims outside the collective proceeding") *and JPMorgan Chase*, 916 F.3d at 501 (holding that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would

prohibit that employee from participating in the collective action" because "alerting those who cannot ultimately participate in the collective 'merely stirs up litigation'") *with e.g.*, *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, No. 218CV00979APGNJK, 2020 WL 2114353, at *7 (D. Nev. May 1, 2020) ("[W]ithholding notice because of the existence of an arbitration agreement presupposes the enforceability of the agreement and the existence of an arbitration agreement goes to an aspect of defendant's defense."), *Herrera v. EOS IT Mgmt. Sols.*, Inc., No. 20-CV-01093-LHK, 2020 WL 7342709, at *9 (N.D. Cal. Dec. 14, 2020) ("[T]he Court's inquiry at the notice stage is on whether there is a common policy or plan that connects the claims of the putative collective action. An arbitration agreement goes to Defendants' defenses, not the common policy, and therefore the enforceability of the arbitration agreements is better reserved for the step two determination."), *and Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 535 (D. Mass. 2019) ("The more sensible approach is for Plaintiff to send notice to the Arbitration Workers who were paid a day rate. Any that wish to join this action may challenge the validity and/or enforceability of their Arbitration Agreements through individualized arbitration proceedings. If their agreements are found to be either invalid or unenforceable, they may then join the collective action.").

Although the Court of Appeals for the Tenth Circuit has not yet decided whether district courts should consider the existence of arbitration agreements during the conditional certification stage, the current weight of law in this Circuit holds that a collective may be conditionally certified, and notice given, notwithstanding that some of the prospective members of the collective may have signed arbitration agreements. *See, e.g.*, *Judd v. Keypoint Gov't Sols., Inc.*, No. 18-CV-00327-RM-STV, 2018 WL 7142193, at *4 (D. Colo. Dec. 4, 2018) ("Defendant asks the Court to fast-forward to the second stage of this case and rule on the merits and enforceability of *potential*

arbitration agreements executed by *potential* opt-in plaintiffs—neither of which are presently before the Court. But this case is not at the merits stage yet and the Court does [not] wish to put the proverbial cart before the horse."); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-03098-RM-NRN, 2019 WL 2866559, at *1 (D. Colo. July 3, 2019) ("The fact that some Plaintiffs will be compelled to arbitrate their claims individually does [not] establish grounds for denying them notice."). "Neither the FLSA nor the Tenth Circuit require that notice be withheld from potential class members merely because they signed an arbitration agreement." *Judd*, 2018 WL 7142193, at *5.

Further, as observed by the court in *Romero v. Clean Harbors Surface Rentals USA, Inc.*, granting Defendant's request to prevent the issuance of notice to putative plaintiffs who had signed arbitration agreements

> would incentivize defendants to raise any number of individualized defenses at the notice stage of an FLSA collective action to filter out potential group members who cannot ultimately participate in the collective action. That would inevitably delay the litigation…and run counter to the majority's warning in *Hoffmann-La Roche* [493 U.S. 165 (1989)] that courts should steer clear of merits issues in facilitating FLSA notice.

404 F. Supp. 3d 529, 533–34 (D. Mass. 2019) (cleaned up) (noting that "Nowhere in the [*Hoffmann-La Roche*] majority's opinion did it suggest that trial courts were required to make sure that the only workers receiving notice of an FLSA collective action were those actually capable of joining the action."); *see also Gonzalez*, 2020 WL 2114353, at *7 ("The Fifth and Seventh Circuits' approach raises potential standing and due process concerns and creates practical difficulties. Those courts would have [plaintiff] Gonzalez litigate the enforceability of other putative plaintiffs' arbitration agreements without notice to them or an opportunity to respond."). Therefore, the Court finds that it is within its discretion to facilitate notice to the putative collective members, even though some of them may be prohibited from joining this collective action because they are subject

to valid, enforceable arbitration agreements.[3]  *See generally Hoffmann-La Roche Inc.*, 493 U.S. at 171–74.

**II.**   **The Court Authorizes Notice and Modifies the Parties Proposed Notice and Consent to Join Forms.**

Unlike Federal Rule of Civil Procedure 23 class actions, putative class members under the FLSA must consent in writing and opt-in to the class rather than opt out.  *See Thiessen*, 267 F.3d at 1102; 29 U.S.C. § 216(b).  Accordingly, employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *See Hoffmann-La Roche*, 493 U.S. at 170.  The Court has the discretion to approve the content of FLSA notices.  *Id.* at 170–72.

Plaintiff asks the Court to exercise its discretion to approve his proposed notice and consent form.  *See* **Doc. 64-4**, **Ex. 4**.  Defendant, however, objects to both the form and the substance of Plaintiff's proposed order, notice and consent form.  The Court addresses each objection below.[4]

**A.  Notice by Mail, Email, and Text Message.**

First, Defendant argues that Plaintiff should be prohibited from sending notice via mail, email, and text message.  *See* **Doc. 66, at 19**.  Defendant argues that "first-class mail is the preferred method of distributing notice," and other forms of notice are "premature…until Plaintiff establishes that specific mailings were returned as undeliverable."  *Id.* **at 19–20**.  The Court finds that mail, email, and text message are appropriate methods to distribute the notice.  "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these

---

[3] Putative collective members who are bound by arbitration agreements are facially ineligible but **might** be eligible if the arbitration agreement is invalid or unenforceable.  Whether that is so is a decision that must be made, by the appropriate decisionmaker, if and when the issue is raised by the appropriate parties.  The question of the enforceability of these agreements is not presently before the Court.

[4] The Court finds that Plaintiff's Proposed Order (**Doc. 64-5**) is rendered moot by its resolution to Defendant's objections addressed herein.

methods of communication may offer a more reliable means of reaching an individual." *See Calvillo*, 267 F. Supp. 3d at 1315; *Landry*, 252 F. Supp. 3d at 1129 (permitting notice by email, text message, and mail); *Pruess* v, 2020 WL 6544243, at *8 (same). Thus, Defendant's objection is overruled.

### B. Reminder Notices.

Second, Defendant argues that duplicate or reminder notices are improper because it suggests the Court's endorsement of Plaintiff's claims. *See* **Doc. 66, at 21**. The Court finds that a reminder notice is appropriate. The proposed notice expressly states: "The Court has taken no position regarding the merits of the claims or defenses at issue." *See* **Doc. 64-4, Ex. 4, at 2**. Additionally, a reminder notice "serves the FLSA's broad remedial purpose by ensuring that as many potential plaintiffs as possible are informed of the collective action and their right to opt-in." *See Landry*, 252 F. Supp. 3d at 1130 (internal quotations and alterations omitted) (permitting a follow-up notice 30 days into the opt-in period). Thus, Plaintiff may send one reminder notice 30 days before the end of the opt-in period, and Defendant's objection is overruled.

### C. Production of Information.

Third, Defendant argues that Plaintiff's request that "Chisholm provide names, addresses, social security numbers, phone numbers, e-mail address, work locations, and dates of employment of the putative collective within 10 days" is overly burdensome and overbroad. *See* **Doc. 66, at 22**. Defendant argues instead that it should have a minimum of 30 days to gather this information, and further, that Plaintiff's request for email addresses, phone numbers, and social security numbers "needlessly intrudes on the collective members' privacy rights." *Id.* **at 22–23**. The Court sustains Defendant's objection in part.

The Court agrees that it is not necessary to disclose social security numbers nor the work location of putative plaintiffs. *See, e.g.*, *Pruess*, 2020 WL 6544243, at *8 (directing defendants to

produce only the names, job titles, start and end dates, last known addresses, personal e-mail addresses, and telephone numbers for putative collective members).  However, based on the Court's approval of notice via text message and email, Defendant must disclose phone numbers and email addresses.  Additionally, the Court concludes that Defendant's request for additional time to produce information from third parties is reasonable.  Defendant shall have 45 days to compile and produce the names, addresses, phone numbers, e-mail address, and dates of employment for the putative collective.  *See Pruess*, 2020 WL 6544243, at *8 (noting that courts in this district "ordinarily afford a defendant ten days to produce potential plaintiffs' names and known contact information").

### D.  The Lookback Period.

Fourth, Defendant argues that the substance of Plaintiff's proposed notice should be rejected, and makes three primary objections.  *See* **Doc. 66, at 23–24**; **Doc. 66-2, Ex. 2**.  Defendant first argues that "the lookback period for the notice must be measured from the date the notice is issued, not the date the lawsuit was filed."  *See* **Doc. 66, at 23**.  The Court agrees.

An FLSA action is "commenced with respect to the named plaintiff[] on the date [his] complaint was filed, but [] the action is commenced with respect to the unnamed opt-in plaintiffs when their opt-in consent is filed."  *See Zamora v. Sw. Glass & Glazing, Inc.*, No. 1:15-CV-01041-RJ, 2016 WL 10516172, at *3 n.2 (D.N.M. Aug. 23, 2016); 29 U.S.C. § 256.  Thus, "based on the statute of limitations, class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court."  *See Zamora*, 2016 WL 10516172, at *3 n.2.  Because the date of approval of notice is determinative for purposes of establishing the collective period, Plaintiff shall revise the propose notice to measure the three-year limitations period from the date of the Court's issuance of this Order.  *See Kerr*, 2020 WL

6799017, at *7 (conditionally certifying "Current and former workers employed by, or working on behalf of, K. Allred Oilfield Services, LLC as independent contractors in the United States at any time from «3 years prior to date of certification»"); *Hembree v. 3-D Oil Field Servs. & Rental, L.L.C.*, No. CIV 20-00343 RB/CG, 2020 WL 7642862, at *2 (D.N.M. Dec. 23, 2020) (conditionally certifying "Current and former 3-D Oil Field Services & Rental, L.L.C., workers who were classified as employees and performed work on behalf of 3-D in the three years prior to the date the Court grants conditional certification").

**E.  References to Costs.**

Next, Defendant argues that because Plaintiff's proposed class is "small," this Court "should find that the potential for plaintiffs to owe costs to Chisholm is not so minimal to justify excluding any reference to this possibility." *See* **Doc. 66, at 23**.  The Court concludes that a reference to costs is reasonable.  "[B]ecause costs possibly could be awarded to the prevailing party, fairness and accuracy require that potential class members be informed of that possibility." *See Landry*, 252 F. Supp. 3d at 1128 (internal quotations and alterations omitted).  However, to avoid "chill[ing] participation," the parties must clarify that costs and expenses do not include Defendant's attorneys' fees.  *Id.*; *see also Pruess*, 2020 WL 6544243, at *7 (directing plaintiffs to modify the notice to state "if the Care Coordination Employees lose, they could be responsible for paying court costs and expenses (not including the Company's attorney fees)"); *Aguilar v. Mgmt. & Training Corp.*, No. CV 16-050 WJ/GJF, 2017 WL 4277139, at *9 (D.N.M. Jan. 27, 2017), *report and recommendation adopted*, 2017 WL 4534874 (D.N.M. Feb. 15, 2017) (same).

**F.  The Case Caption.**

Defendant also argues that "the case caption should not be included on the notice because it creates a needless risk that the notice will be perceived as a judicial endorsement of the merits

of case." *See* **Doc. 66, at 24**.  The Court overrules this objection.  The Court is "cognizant of the need to both: (1) communicate its neutrality, and (2) convey that the notice itself is a court document," and based on the Court's review of the proposed notice by Plaintiff, the Court concludes that "the inclusion of a case caption achieves the latter without risking the former."  *See Aguilar*, 2017 WL 4277139, at *7; *see also* **Doc. 64-4, Ex. 4, at 2** (stating "The Court has taken no position regarding the merits of the claims or defenses at issue").

      **G.  The Length of the Opt-In Period.**

      Additionally, Defendant argues that Plaintiff's proposed 60-day opt-in period is lengthy, and Plaintiff "has not put forth any evidence justifying the need to deviate from the normal 30-day period."  *See* **Doc. 66, at 24**.  The Court finds that a 60-day opt-in period is reasonable.  *See Landry*, 252 F. Supp. 3d at 1131 (noting that courts within this Circuit authorize opt-in periods of up to 90 days, and permitting a 75-day period due to the "potential class members' remoteness"); *Saenz v. Rod's Prod. Servs., LLC*, No. 2:14-CV-00525 RB-GBW, 2015 WL 12866985, at *2 (D.N.M. Mar. 6, 2015) (authorizing a 70-day opt-in period); *Zamora*, 2016 WL 10516172, at *4 (permitting a 60-day opt-in period).  Thus, Defendant's objection is overruled.

      Finally, Plaintiff and Defendant appear to concede that before notice be issued to putative plaintiffs, the parties should be required to meet and confer to attempt to reach a resolution regarding the specific content of the notice.  *See* **Doc. 66, at 19 n.17**; **Doc. 69, at 11**.  The Court reminds the parties that the local rules require that they make a good-faith request for concurrence **prior** to filing a motion.  *See* D.N.M.LR-Civ. 7.1(a).  Nevertheless, the Court directs both parties to meet and confer regarding the outstanding content of the proposed notice.

**III.**     <u>**Equitable Tolling is Unwarranted in this Case.**</u>

Finally, Plaintiff requests equitable tolling in this case.  Plaintiff argues that "equitable tolling is an available remedy under the FLSA," and "to avoid inequitable circumstances, the statute of limitations be tolled until such time that [Plaintiff is] able to send notice to potential opt-in plaintiffs."  *See* **Doc. 64, at 15**.  Defendant makes no argument on this point.  *Cf.* **Doc. 66; Doc. 92**.

"Equitable tolling permits courts to extend statutes of limitations on a case-by-case basis to prevent inequity." *Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2014 WL 11497810, at *3 (D.N.M. June 26, 2014).  Federal courts "have typically extended equitable relief only sparingly." *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990).  Thus, equitable tolling may be an available remedy under the FLSA, provided that the circumstances warrant application of the doctrine.  *See Abrams*, 2014 WL 11497810, at *3; *see also Pruess*, 2020 WL 6544243, at *8.  "The Tenth Circuit has held that equitable tolling of time limitations is appropriate where the circumstances of the case rise to the level of actual deception, where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts, or where a plaintiff has in some extraordinary way been prevented from asserting his or her rights." *See Abrams*, 2014 WL 11497810, at *3 (internal quotations and citations omitted).  The decision to invoke equitable tolling in a particular case "lies exclusively within the sound discretion of the trial court." *See Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012).

Here, the Court concludes that Plaintiff has provided little support for equitable tolling. Plaintiff does not argue that there has been deception by Defendant or that Plaintiff has been prevented from asserting his rights; nor does Plaintiff argue that there has been an "undue delay" in the resolution of this motion.  *See, e.g.*, *Abrams*, 2014 WL 11497810, at *3; *Felps v. Mewbourne*

*Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1239 (D.N.M. 2020). Plaintiff makes a conclusory allegation that tolling is appropriate "to avoid inequitable circumstances," but makes no showing or argument in support of what those circumstances are in this case. Thus, the Court finds that there is insufficient support in the record to warrant tolling the statute.

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff's Motion for Conditional Certification is **GRANTED IN PART AND DENIED IN PART**. This action is conditionally certified as a collective action under the FLSA. **IT IS THEREFORE ORDERED AS FOLLOWS:**

(1) The parties **SHALL AMEND** the proposed notice and consent to join form in conformance with this Order.

(2) Defendant **SHALL SEND** Plaintiffs the approved information for the putative collective members no later than forty-five (45) days from entry of this Order.

(3) Plaintiff and Defendant **SHALL CONFER** regarding the proposed notice and consent form within fourteen (14) days of the date of this Order. If the revised notice and consent form is acceptable to both parties, the parties shall file a joint proposed notice and notice should be issued as soon as practicable. Before bringing any objections to the Court, the parties must first attempt to resolve their disputes in a reasonable and timely manner.

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**